IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RIKI O'HAILPIN; NINA ARIZUMI; ROBERT ESPINOSA; ERWIN YOUNG; PUANANI BADIANG; SABRINA FRANKS; RONALD LUM; DAN SAIKI; BRANDEE AUKAI, | ) ) ) ) ) ) | CIV. NO. 22-00532 HG-WRP |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HAWAIIAN AIRLINES, INC.; HAWAIIAN HOLDINGS, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO COUNTS I AND IV FOR PLAINTIFF NINA ARIZUMI (ECF No. 197)**

Plaintiff Nina Arizumi was formerly employed as a flight attendant with Defendant Hawaiian Airlines, Inc.

In August 2021, Defendant Hawaiian Airlines, Inc. and its parent company, Defendant Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy in the midst of the worldwide COVID-19 pandemic.

Plaintiff Nina Arizumi requested to be exempt from the COVID-19 vaccination policy on two separate grounds.

First, Plaintiff requested to be exempt from vaccination based on her Shinto religious beliefs.

Second, Plaintiff requested to be exempt from vaccination

1

based on her medical condition, as she claims she had a mitral valve prolapse.

The Hawaiian Defendants denied Plaintiff's requests for exemptions from the vaccination policy.

Plaintiff Arizumi, along with eight other individual Plaintiffs, filed suit against the Hawaiian Defendants.

The Hawaiian Defendants seek to dismiss Plaintiff Nina Arizumi's failure-to-accommodate claims pursuant to Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act of 1990. The Hawaiian Defendants argue that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate claims.

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claims require interpretation of the existing Collective Bargaining Agreement that applied to Plaintiff as a flight attendant. The Hawaiian Defendants argue that the Court may not review such claims pursuant to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA"). The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes. See 45 U.S.C. § 184.

Defendants' Motion for Partial Dismissal as to Plaintiff Nina Arizumi's Title VII and ADA claims for failure-to-

2

accommodate (ECF No. 197) is **GRANTED**.

Counts I and IV of the Complaint as to Plaintiff Nina Arizumi are **DISMISSED WITH PREJUDICE** as the Court lacks subject-matter jurisdiction to consider them.

### PROCEDURAL HISTORY

On December 22, 2022, Plaintiff Nina Arizumi and eight other individual Plaintiffs filed the Complaint.  (ECF No. 1).

On August 14, 2023, Plaintiffs filed a Motion to Certify Classes and Appoint Counsel.  (ECF No. 50).

On December 12, 2023, District Judge Otake issued an ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASSES AND APPOINT COUNSEL.  (ECF No. 101).

On January 18, 2024, the case was reassigned from Judge Otake to Judge Gillmor.  (ECF No. 103).

On March 5, 2025, the Court held a Status Conference and Defendants requested leave of court to file a Motion to Dismiss for lack of subject-matter jurisdiction pursuant to the Railway Labor Act, which was granted.  (ECF No. 190).

On March 19, 2025, Defendants filed their Motion for Partial Dismissal for Lack of Jurisdiction Pursuant to the Railway Labor Act as to Plaintiff Nina Arizumi.  (ECF No. 197).

On April 2, 2025, Plaintiff Nina Arizumi filed her Opposition.  (ECF No. 206).

On May 5, 2025, without leave of Court, Plaintiffs filed a document entitled, "PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION TO DISMISS UNDER THE RAILWAY LABOR ACT."  (ECF No. 252).

The Court elects to decide the Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

Plaintiff Nina Arizumi alleges in the Complaint that she was a flight attendant employed by Defendant Hawaiian Airlines, Inc. and based out of Honolulu, Hawaii.  (Complaint at ¶¶ 22, 133, ECF No. 1).  Plaintiff states that she worked as a flight attendant for approximately 11 years.  (Id. at ¶ 133).

### Plaintiff's Collective Bargaining Agreement

Plaintiff Arizumi was subject to a Collective Bargaining Agreement entitled, "Agreement Between Hawaiian Airlines, Inc. and the Flight Attendants in the Service of Hawaiian Airlines, Inc. as Represented by the Association of Flight Attendants-CWA." (Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., at ¶¶ 3-7, ("Doane Decl."), ECF No. 197-2; Collective Bargaining Agreement attached as Ex. 1 to Def.'s Motion, ECF No. 197-10).  The Collective Bargaining Agreement is commonly referred to as the "CBA."  It was in effect

4

from April 3, 2020 through April 2, 2025.  (Id.)

The Collective Bargaining Agreement governed the working relationship between flight attendants, including Plaintiff, and the Hawaiian Defendants.  (Doane Decl. at ¶8, ECF No. 197-2). The CBA sets forth the terms and conditions of the flight attendants' employment.  (Id.)  The CBA provides detailed rules governing the performance of flight attendant duties including scheduling, route assignments, seniority, benefits, and retirement.  (Id. at ¶ 11).

The seniority and bidding provisions of the CBA cover all Hawaiian flight attendants' work assignment routes, schedules (including locations, dates, duration, and layovers), and aircraft types.  (Id. at ¶ 9; CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," attached as Ex. 1 to Def.'s Motion, ECF No. 197-10).

Seniority and bidding procedures also affect work conditions, tasks, pay rates, and compensation.  (CBA at Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 197-10).

The Collective Bargaining Agreement contains a provision mandating that any disputes concerning interpretation or application of any of the terms of the CBA be resolved through

5

arbitration by the System Board of Adjustment whose decision is final and binding on the parties as provided by the Railway Labor Act, 45 U.S.C. § 151 <u>et</u> <u>seq.</u>  (CBA at 1-15, attached as Ex. 1 to Def.'s Motion, ECF No. 197-10; Doane Decl. at ¶ 17, ECF No. 197-2).

**<u>The Hawaiian Defendants' Vaccination Policy</u>**

According to the Complaint, in August 2021, in the midst of the worldwide COVID-19 pandemic, Defendants Hawaiian Airlines, Inc. and its parent company Hawaiian Holdings, Inc. ("Hawaiian Defendants") announced a vaccination policy.  (Complaint at ¶ 43, ECF No. 1).  Plaintiff alleges that the Hawaiian Defendants required all of their employees to receive a COVID-19 vaccine or receive approval of exemptions for religious or medical reasons. (<u>Id.</u> at ¶¶ 43, 54).

The Complaint asserts that on September 17, 2021, the Hawaiian Defendants published the vaccination policy and required proof of vaccination by January 30, 2022.  (<u>Id.</u> at ¶ 45).

**<u>Plaintiff's Religious Accommodations Request For Exemption From The Vaccination Policy</u>**

Plaintiff alleges that on August 9, 2021, she submitted a request for exemption from the Hawaiian Defendants' vaccination policy based on her religious beliefs.  (<u>Id.</u> at ¶ 136). Plaintiff claims she submitted a second form in support of her

6

request on September 29, 2021.  (<u>Id.</u>)  Plaintiff states that she
practices the Shinto religion and that this practice formed the
basis for her religious accommodation request.  (<u>Id.</u>)

     The Complaint alleges that on October 14, 2021, the Hawaiian
Defendants denied Plaintiff's request for religious exemption
from the vaccine mandate, stating that Plaintiff's basis for
seeking an exemption was a "personal preference and not a
generally applicable religious opposition."  (<u>Id.</u> at ¶ 137).

**<u>Plaintiff's Medical Accommodations Request For Exemption From The
Vaccination Policy</u>**

     According to Plaintiff, in August and September of 2021, she
also submitted a request for exemption from the vaccination
policy based on medical disability.  (<u>Id.</u> at ¶ 141).

     Plaintiff asserts that she has a mitral valve prolapse which
she claims impacts her circulatory system.  (<u>Id.</u>)  The Complaint
alleges that on November 1, 2021, Plaintiff's doctor submitted a
form to Defendants in support of Plaintiff's request for a
medical exemption from the vaccination policy.  (<u>Id.</u> at ¶ 142).

     The Complaint asserts that on November 4, 2021, the Hawaiian
Defendants denied Plaintiff's request for a medical exemption
from the vaccine mandate because her condition was not considered
a "contraindication to receiving a COVID-19 vaccine."  (<u>Id.</u> at ¶
143).

     Plaintiff alleges that on an unspecified date the Hawaiian

Defendants terminated Plaintiff "when she was unwilling to accept the company's unreasonable 'accommodation' of unpaid leave." (<u>Id.</u> at ¶ 22).

**<u>Plaintiff's Causes of Action</u>**

On December 22, 2022, Plaintiff filed a Complaint, along with eight other Plaintiffs, asserting the following five causes of action against the Hawaiian Defendants:

> **<u>COUNT I:</u>** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **<u>Failure-To-Accommodate</u>**

> **<u>COUNT II:</u>** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **<u>Disparate Impact</u>**

> **<u>COUNT III:</u>** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **<u>Retaliation</u>**

> **<u>COUNT IV:</u>** Violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., **Disability Discrimination** Based On **<u>Failure-To-Accommodate</u>**

> **<u>COUNT V:</u>** Violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., **Disability Discrimination** Based On **<u>Retaliation</u>**

**<u>The Hawaiian Defendants' Motion to Dismiss Pursuant To the Railway Labor Act</u>**

The Hawaiian Defendants have filed a Motion for Partial Dismissal.  The Hawaiian Defendants' Motion is limited to Plaintiff Arizumi and to the claims she brings for failure-to-

8

accommodate as stated in Counts I and IV in the Complaint.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review Plaintiff's failure-to-accommodate causes of action because such claims are precluded from court review pursuant to the Railroad Labor Act, 45 U.S.C. § 151, et seq.

## STANDARD OF REVIEW

A plaintiff has the burden of proving that subject-matter jurisdiction exists. Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979). The Court must dismiss any claims for which it lacks subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1); Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction. Id. A facial challenge therefore mirrors a traditional motion to dismiss analysis. The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor." Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

9

In a factual attack, the party challenging jurisdiction
argues that the facts in the case, notwithstanding the
allegations in the Complaint, divest the Court of subject-matter
jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir.
2000).  No presumptive truthfulness attaches to the Complaint's
allegations.  Id.  The party challenging jurisdiction presents
"affidavits or other evidence properly brought before the court"
indicating that subject-matter jurisdiction is lacking.  Savage
v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir.
2003).  The burden then shifts to "the party opposing the motion
[to] furnish affidavits or other evidence to satisfy its burden
of establishing subject matter jurisdiction."  Id.  Failure to
present suitable evidence establishing subject-matter
jurisdiction necessitates dismissal.  Moore v. Maricopa Cnty.
Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction
pursuant to the Railway Labor Act is properly considered as a
motion bringing a factual attack on subject-matter jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(1).  Soper v. United Airlines,
Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and
other relevant evidence to determine whether it has subject-
matter jurisdiction pursuant to the Railway Labor Act.  Hinant v.
American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5,

10

2024).

## **ANALYSIS**

## I.    **The Railway Labor Act**

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., was
enacted to provide a comprehensive framework for resolving labor
disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the
airline industry.  Hawaiian Airlines, Inc. v. Norris, 512 U.S.
246, 248 (1994); see 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)   representation disputes.

Haralson v. United Airlines, Inc., 224 F.Supp.3d 928, 934 (N.D.
Cal. 2016).

First, "major disputes" relate to the formation of
collective bargaining agreements or the efforts of the parties to
secure rights under the collective bargaining process.  Consol.
Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302
(1989).  Major disputes look to the acquisition of rights for the
future, and they do not involve disputes about rights that were
vested in the past.  Id.  Major disputes require the parties to
undergo lengthy bargaining, mediation, and arbitration processes.
Id.

11

Second, "minor disputes" seek to enforce existing contractual rights as embodied in an existing collective bargaining agreement. Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc). Minor disputes require the existence of a collective bargaining agreement already in effect and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an exclusive dispute resolution mechanism for the prompt and orderly settlement of such claims. Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major dispute is that a minor dispute requires interpreting an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights. Id. at 265. Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement. Id.

Third, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and selection of the employee representative for collective bargaining. Herrera v. Command Sec. Corp., 837 F.3d 979, 989 (9th Cir. 2016). Representation disputes are within the

12

exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims.  Id.

## II.  Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit.  See 45 U.S.C. § 184.  Courts lack subject-matter jurisdiction over minor disputes within the meaning of the RLA.  Norris, 512 U.S. at 253.

### A.   Two-Step Test For Preclusion Of Minor Disputes

Courts in the Ninth Circuit apply a two-step test to evaluate if a plaintiff's claim is preempted or precluded from court review by the RLA.  Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, 23 F.4th 836, 841-42 (9th Cir. 2022).

First, the court examines if the plaintiff's claim seeks purely to vindicate a right or duty created by the collective bargaining agreement itself.  Id. at 843.  If so, the claim is preempted or precluded from review.  If not, the court proceeds to the second step.

Second, even if the claim does not seek to vindicate a right created by the CBA, the court evaluates if the plaintiff's claim is substantially dependant on analysis and interpretation of the

CBA.  Id.  If so, the claim is precluded from review.

**B.    Plaintiff's Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Precluded From Court Review Under The RLA**

Under step two, a court is without subject-matter jurisdiction to review a plaintiff's claim that concerns interpretation of the "duties and rights created or defined by the collective bargaining agreement." Alaska Airlines, Inc. v. Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting Norris, 512 U.S. at 258).  Such disputes must be resolved only through the RLA mechanisms, and not by a court.  Id.

The RLA exclusivity provision was enacted to ensure that disputes regarding existing collective bargaining agreements are governed by a uniform set of principles rather than conflicting substantive interpretations under competing legal systems in the federal and state courts. Schurke, 898 F.3d at 919.

**C.    Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Precluded From Court Review**

Consultation of the collective bargaining agreement alone is insufficient to trigger application of the RLA. Livadas v. Bradshaw, 512 U.S. 107, 124 (1994).  In order to qualify as a minor dispute pursuant to the RLA, the dispute must require interpretation of the terms of a collective bargaining agreement.

14

Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the RLA if there is no disagreement as to the meaning of all of the terms of the collective bargaining agreement.  Schurke, 898 F.3d at 927.  "Reliance on and reference to CBA-established or CBA-defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment."  Id.

For example, a claim for damages dependent on a CBA's undisputed wage provisions is not preempted by the RLA because the claim is not dependent on interpretation of a CBA term. Livadas, 512 U.S. at 125.

**III.  Plaintiff's Failure-To-Accommodate Claims Require Interpretation Of The Existing Collective Bargaining Agreement**

The Hawaiian Defendants assert that Plaintiff's failure-to-accommodate claims are precluded from review because they are "minor disputes" about the terms of the existing collective bargaining agreement.  The Hawaiian Defendants argue that Plaintiff's claims regarding the availability of accommodations from the vaccine mandate require interpretation of various provisions of the existing CBA.

> **A.    Plaintiff's Requested Accommodation Requires Interpretation Of The Seniority, Bidding, And Assignment Provisions Of The Collective Bargaining Agreement**

The United States Supreme Court ruled in <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 67 (1977), that it was an undue hardship to force an employer to violate an existing collective bargaining agreement in order to provide an employee with her requested accommodation.  <u>See</u> <u>Groff v. DeJoy</u>, 600 U.S. 447, 470 (2023) (clarifying that undue hardship requires more than de minimis cost); 29 C.F.R. § 1605.2(e)(2) (stating that in addition to cost, "Undue hardship would also be shown where a variance from a bona fide seniority system is necessary in order to accommodate an employee's religious practices when doing so would deny another employee his or her job or shift preference guaranteed by that system").

The Hawaiian Defendants assert that granting Plaintiff's requested accommodation to fly unvaccinated or to fly only on specific routes would have forced it to violate the CBA's terms, including its seniority system and bidding process.  The Hawaiian Defendants cite numerous provisions of the Collective Bargaining Agreement in support of their position that Plaintiff's accommodation request requires interpretation of the existing Collective Bargaining Agreement.  The Hawaiian Defendants argue that accommodating Plaintiff would have substantially disrupted

not only their business operations but would have violated numerous terms of the existing CBA, including its seniority provisions, bidding process for routes, and scheduling of flight attendants. See Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

In 2021, Plaintiff Nina Arizumi was a reserve flight attendant who primarily flew in the Defendants' International Operation. (Declaration of Nina Arizumi at ¶ 4, ("Arizumi Decl.") attached to Pl.'s Opp., ECF No. 206-2). Plaintiff testified in her deposition that she flew multiple international routes from Honolulu, including routes to Japan, China, South Korea, Australia, and New Zealand. (Deposition of Nina Arizumi at p. 36, attached as Ex. 6 to Def.'s Motion, ECF No. 197-15). Plaintiff states that she purposely bid to be a "reserve" flight attendant because it provided a minimum guarantee of 75 hours pay. (Arizumi Decl. at ¶ 4, ECF No. 206-2). A reserve flight attendant in the Defendants' International Operation is not awarded a particular route but is available to be assigned to fly anywhere in the International Operation. (Doane Decl. at ¶¶ 11, 15-16, ECF No. 197-2).

The Hawaiian Defendants assert that, according to their interpretation of the CBA, the assignment of flights to a reserve flight attendant is done in seniority order, taking into consideration flight attendant preferences. (Id. at ¶ 16).

17

The Hawaiian Defendants assert that allowing Plaintiff to fly unvaccinated, as Plaintiff requested, would have conflicted with the seniority-based bidding process for reserve flight attendants set forth in the CBA.  (CBA at Section 9B-3 at p. 9-1, attached as Ex. 1 to Def.'s Motion, ECF No. 197-10; Doane Decl. at ¶¶ 20-23, ECF No. 197-2).  The Hawaiian Defendants point to the various provisions of the CBA governing seniority and route bidding in support of their position.  (CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," see also Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 197-10).

The Hawaiian Defendants argue that complications in assignments arose on the route from Honolulu to Sydney, Australia, during the COVID-19 pandemic.  The Australian Government in New South Wales, where Sydney is located, implemented restrictions for unvaccinated flight crew arriving in the jurisdiction.  (See Public Health (COVID-19 Air Transportation Quarantine) Order (No 4) 2021, issued by the New South Wales Government, attached as Ex. 11 to the Declaration of Kathleen Mainerd, Senior Manager, South Pacific, Airport Operations for Defendant Hawaiian Airlines, Inc., ECF No. 197-20).

18

The Australian restrictions included fines for employers whose employees failed to follow protocols.  (Id.; Declaration of Jon Baron, Director, In-Flight Policies, Procedures & Compliance for Defendant Hawaiian Airlines, Inc., at ¶¶ 3-4, attached to Def.'s Motion, ECF No. 197-6).

The Hawaiian Defendants assert that they elected to place only vaccinated flight attendants on the route from Honolulu to Sydney to avoid penalties and/or fines to unvaccinated employees for violating the Australian regulations.  (Mainerd Declaration at ¶¶ 3-5, attached to Def.'s Motion, ECF No. 197-5).

The Hawaiian Defendants explain that because Plaintiff was a reserve flight attendant who had regularly flown international routes, including to Sydney, Australia, accommodating Plaintiff's request would have displaced the bids of other Hawaiian flight attendants and impinged on their seniority rights in violation of the terms of the CBA.

Plaintiff disagrees with the Defendants' interpretation of the terms of the CBA.  Plaintiff relies on her own interpretation of the terms of the CBA and also makes arguments based on practice, usage, and custom.  Plaintiff claims that granting her accommodation request and her schedule preferences would not have violated the CBA terms.  (Arizumi Decl. at ¶¶ 9, 13, 17, attached to Pl.'s Opp., ECF No. 206-2).  Plaintiff argues that the Hawaiian Defendants could have altered the bidding process,

despite the terms of the CBA, claiming it had been done on other occasions based on practice, custom, and usage. (Id.)  Plaintiff also claims that she could have still been assigned to the Sydney route despite the Australian regulations in place. (Id. at ¶ 13).  Plaintiff claims that she could have personally paid any fine imposed on Hawaiian Airlines by the Australian government. (Id.)

The question of whether Plaintiff's requested accommodations would have been permitted by the CBA is the exact type of dispute that the Court lacks subject-matter jurisdiction to review.  The disputes about whether the CBA would have allowed the Hawaiian Defendants to alter the bidding process or to schedule unvaccinated flight attendants on the route to Sydney where the employees could have been subject to legal consequences and/or fines imposed by the Australian government are unclear.

There is also a question pursuant to the terms of the CBA if the Hawaiian Defendants could have granted an accommodation to Plaintiff alone or whether they would have been required to provide the same accommodation to the other 268 flight attendants who requested exemption from the vaccine policy. (Declaration of Willard Jackson, Senior Director, Leave Management for Defendant Hawaiian Airlines, Inc. at ¶ 10, attached to Def.'s Motion, ECF No. 197-3).  The disputed questions concerning seniority and the bidding process for other flight attendants are central to

Plaintiff's failure-to-accommodate claims.  The disputed question
of whether the CBA would have required the Hawaiian Defendants to
provide identical accommodations to all 268 flight attendants
requesting exemption is inextricably intertwined with the
Hawaiian Defendants' undue hardship defense.  These crucial
questions hinge on interpretation of the CBA's terms and must be
decided by an arbitrator.

Disagreements about the interpretation, scope, or
applicability of specific terms of an existing CBA are the types
of disputes subject to preclusion pursuant to the RLA.  Hinant v.
American Airlines, Inc., 2024 WL 4988391, at *3 (D. Ariz. Dec. 4,
2024) (citing Int'l Ass'n of Sheet Metal Air, Rail, & Transp.
Workers v. Union Pac. R.R. Co., 2019 WL 6499212 (C.D. Cal. July
25, 2019); Pritchard v. American Airlines, Inc., 708 F.Supp.3d
861, 867 (N.D. Tex. 2023)).

The disputes about the CBA terms are necessary to resolve
Plaintiff's failure-to-accommodate claims because they directly
impact the evaluation of the reasonable accommodations available
and the undue hardship defense.  Hardison, 432 U.S. at 79; 29
C.F.R. § 1605.2(e)(2).

### B.    Plaintiff's Claims Are Distinguishable From Intentional Discrimination Causes Of Action

Plaintiff primarily relies on cases that have ruled that
intentional discrimination causes of action are not precluded or

preempted by the RLA.

In <u>Felt v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 60 F.3d 1416, 1420 (9th Cir. 1995), as a matter of first impression, the Ninth Circuit Court of Appeals ruled that Title VII religious discrimination claims are generally not precluded by the RLA because these types of claims exist entirely independent of the collective bargaining agreement and usually do not require interpretation of CBA terms.

The Ninth Circuit Court of Appeals has similarly ruled that discrimination claims brought pursuant to the Americans With Disabilities Act of 1990 are generally not subject to RLA preclusion because unlawful termination of an employee based on disability discrimination generally does not require interpretation of a collective bargaining agreement. <u>Saridakis v. United Airlines</u>, 166 F.3d 1272, 1277 (9th Cir. 1999).

Plaintiff's causes of action in Counts I and IV, however, are not intentional discrimination claims. Rather, Counts I and IV of the Complaint are premised on Plaintiff's argument that she believes the Defendants could have provided her with her requested accommodation within the confines of the terms of the existing Collective Bargaining Agreement. Plaintiff alleges that the Defendants' offered accommodation of leave without pay was insufficient. (Complaint at ¶ 22, ECF No. 1). Plaintiff claims that she requested that she be permitted to fly unvaccinated but

when her proposed accommodation request was refused, she elected to be terminated instead of taking leave without pay as offered by the Defendants.  (Id.)

Plaintiff has not asserted a direct or intentional discrimination claim, but instead has brought failure-to-accommodate claims where she has placed the interpretation of multiple provisions of the Collective Bargaining Agreement in dispute.  See Sjoberg v. United Airlines, Inc., 2024 WL 4219736, at *4 (S.D. Tex. Sept. 17, 2024) (quoting Pavlova v. United Airlines, Inc., 2024 WL 1514962, at *3 (S.D. Tex. Mar. 5, 2024), holding that the RLA bars court review of discrimination claims where "Plaintiff puts interpretations of provisions of the [collective bargaining agreement] at the center of this dispute").

The questions here concerning the availability of the Plaintiff's requested accommodations based on disputed interpretations of the seniority, bidding, reserves, and scheduling provisions distinguishes Plaintiff's causes of action from Felt and Saridakis.

**C.  Plaintiff's Failure-To-Accommodate Claims Require More Than Mere Reference To The Terms Of The Collective Bargaining Agreement**

Courts have ruled that a plaintiff's claim is not precluded by the RLA when the court need simply review a term in the CBA or

read the provisions of the CBA to determine its basic provisions.
Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir.
2007); Angeles v. U.S. Airways, Inc., 2013 WL 622032, *6 (N.D.
Cal. Feb. 19, 2013); but see McKinley v. Southwest Airlines Co.,
680 Fed. Appx. 522, 524-25 (9th Cir. 2017) (finding rate of
overtime pay required interpretation of the CBA because plaintiff
disputed the amount due under the terms of the CBA).

Here, Plaintiff's claims do not merely require the Court to
look to the CBA or reference its terms.  Instead, Plaintiff's
failure-to-accommodate claims require interpretation of the
complex collective bargaining agreement and various provisions
governing scheduling, bidding, and seniority for flight
attendants.  Plaintiff's failure-to-accommodate claims are
"inextricably intertwined" with the CBA's terms.  Edelman v.
Western Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989).

Plaintiff's own interpretation of the CBA also relies on her
beliefs as to the practice, usage, and custom of the parties
regarding the CBA.  (Arizumi Decl. at ¶9, ECF No. 206-2).

In Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n, 491
U.S. 299, 311 (1989), the United States Supreme Court ruled that
interpretation of collective bargaining agreements often depend
on practice, usage, and custom.  Interpretation of CBA terms
based on practice, usage, and custom is one of the primary
reasons that the RLA dictates that CBA interpretation must be

before a specialized arbitrator and not the court system.

Plaintiff relies on alleged past practices of the Hawaiian Defendants and their effect on the terms of the CBA in support of her claim that her preferred accommodation was permitted under the CBA. (Arizumi Decl. at ¶¶ 17-19, attached to Pl.'s Opp., ECF No. 206-2). The United States Supreme Court ruled that these types of disputes cannot be reviewed by the court because the RLA precludes review over claims where the parties disagree about the effect of past practices on the interpretation of CBA terms. Consol. Rail Corp. 49 U.S. at 320 (holding that the court lacked jurisdiction to review the employees' claims because there were disputes about the effect of the employer's past practices regarding drug testing and whether its drug testing practices were justified under the terms of the CBA).

Just as here, the RLA precludes review of Plaintiff's failure-to-accommodate claims given the disputes regarding the effect that past practice, usage, and custom may have on the terms of the existing CBA. Id.; see also Hinant, 2024 WL 4988391, at *3; Flanary v. USAIR, Inc., 1997 WL 364090, *3 (S.D. Cal. Mar. 27, 1997) (finding the flight attendant's claim was preempted under the RLA because of questions about the effect of practice, custom, and usage on the existing collective bargaining agreement, even though no specific section of the CBA directly addressed plaintiff's claim).

**D.    Plaintiff's Failure-To-Accommodate Claims In The Context Of The COVID-19 Pandemic**

The Sixth Circuit Court of Appeals recently ruled, on very similar facts, that a group of pilots' failure-to-accommodate discrimination claims were precluded from court review pursuant to the RLA.

In <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024), the plaintiff pilots elected not to vaccinate for COVID-19 and requested exemptions from their employer air carrier's mandatory vaccine requirement imposed during the global pandemic. <u>Id.</u> at 531.  The plaintiff pilots proposed an accommodation of limiting their flying routes to countries that did not impose vaccine requirements.  <u>Id.</u>  The employer denied their requests for exemption and accommodations.  <u>Id.</u>

The pilots sued their air carrier employer, asserting various claims including Title VII and ADA claims for failure-to-accommodate the unvaccinated pilots based on their religious beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-accommodate claims were precluded from court review pursuant to the RLA.  <u>Id.</u>

On appeal, the Sixth Circuit Court of Appeals affirmed.  <u>Id.</u> at 531-32.  The Appellate Court ruled that the plaintiff's failure-to-accomodate claims required interpretation of the

26

existing collective bargaining agreement, specifically with respect to seniority, bidding, and scheduling of the pilots' routes.  Id.  The Sixth Circuit Court of Appeals ruled that the courts lacked subject-matter jurisdiction over the pilots' failure-to-accommodate claims and that such claims were precluded from review pursuant to the RLA.  Id. at 531-32.

Here, Plaintiff Arizumi requested that the Hawaiian Defendants allow her to fly unvaccinated and only on specified routes.  She argues that her requested accommodation would not have violated the terms of the CBA, that she likely would not have interfered with seniority or bidding on the route to Sydney, and that alternatively she could have personally paid any fine imposed by the Australian government.

Plaintiff's failure-to-accommodate claims require interpretation of the existing CBA with respect to seniority, bidding, and scheduling.  The question of what accommodations were available pursuant to the terms of the existing CBA in the midst of the COVID-19 pandemic is precluded from court review pursuant to the RLA.  Such claims require interpretation of existing terms in the collective bargaining agreement before an arbitrator.

Other District Courts have ruled that similar failure-to-accommodate claims against transportation carriers in the context of the COVID-19 pandemic are precluded from court review.  The

District Courts have found that plaintiffs' failure-to-accommodate claims implicate CBA provisions regarding scheduling, bidding, routes, and compensation.  Such claims require interpretation of collective bargaining agreements for which the courts lack subject-matter jurisdiction.  Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); see also Saliba v. American Airlines, Inc., 2022 WL 4131485, at *5 (D. Ariz. Sept. 12, 2022).

The Court agrees with the reasoning in Odell, 107 F.4th at 532, Whitford, 2024 WL 4216050, at *6 , and Grindling, 2024 WL 4164234, at *3.  Plaintiff's failure-to-accommodate claims are precluded from court review pursuant to the RLA.

## IV. Plaintiff's Request For Jurisdictional Discovery And For Leave To Amend The December 22, 2022 Complaint

### A.   Jurisdictional Discovery Is Not Warranted

In Plaintiff's Opposition, she requests jurisdictional discovery for the first time, despite the discovery deadline being closed.  (Pl.'s Opp. at p. 31, ECF No. 206; see Minute Order, ECF No. 182).

Plaintiff has not established good cause to amend the scheduling order to allow for additional discovery.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992)

(explaining that good cause is required to amend the Rule 16
scheduling order).  Jurisdictional discovery is not warranted.

The Ninth Circuit Court of Appeals has explained that it is
not for the courts to determine whether a claim actually violates
a term of the collective bargaining agreement.  The task of the
Court is merely to determine if interpretation of the CBA is
required to adjudicate Plaintiff's claim or whether a provision
in a CBA arguably disposes of the Plaintiff's claim.  Schurke,
898 F.3d at 924.  It is not for the Court to decide if
Plaintiff's requested accommodation was reasonable or if the
Hawaiian Defendants would have faced undue hardship if they would
have provided Plaintiff with her requested accommodation.

**B.    Plaintiff's Supplemental Brief Is Untimely And Does Not
Alter The Court's Evaluation**

On May 5, 2025, Plaintiff filed a Supplemental Brief without
leave of court.  (ECF No. 252).  The Local Rules for the District
of Hawaii prohibit supplemental briefing to be filed without
leave of court.  District of Hawaii Local Rule 7.2.  Unpermitted
filings may be disregarded or stricken from the record.  Id.

For the sake of completeness, the Court declines to strike
the Supplemental Brief.  The Court admonishes Plaintiff that any
further failure to comply with the Federal Rules of Civil
Procedure and/or the Local Rules for the District of Hawaii may
result in sanctions.

Just as in her Opposition, Plaintiff's Supplemental Brief attempts to argue about custom, usage, and practice, and to put forward a factual dispute about the available accommodations at the time.  Plaintiff requests that the Court make findings about the Hawaiian Defendants and the availability of her requested accommodations and ignore the need to interpret the terms of the CBA.

Plaintiff's Supplemental Brief misunderstands the standard for evaluating whether the RLA precludes review of Plaintiff's claim.  <u>Schurke</u>, 898 F.3d at 924.  Here, the Court is faced with resolving a legal question concerning the need to interpret the CBA.

The Supplemental Brief does not alter the Court's finding that based on the allegations in the Complaint and the Court's review of the existing CBA, Plaintiff's failure-to-accommodate claims in Counts I and IV are precluded from Court review.  They are proper for the arbitrator to review pursuant to the dispute resolution provisions in the RLA and the existing CBA.

**C.   Leave To Amend The Complaint Is Not Warranted**

In Plaintiff's Opposition, she also requests leave to amend the December 22, 2022 Complaint to add a claim for intentional discrimination.  (Pl.'s Opp. at p. 31, ECF No. 206).

Plaintiff's request for leave to amend the Complaint is

untimely.  The Complaint in this case was filed two and a half years ago on December 22, 2022.  The deadline for seeking amendment to the Complaint closed more than 20 months ago on August 8, 2023.  The Rule 16 Scheduling Order has been altered numerous times and Plaintiff never sought to reopen the deadline to amend the Complaint.

Plaintiff's counsel has been aware of the potential applicability of the RLA in this case since well before the filing of Defendants' Motion, for which Defendants were given leave of Court.  (ECF No. 190).  Plaintiff's counsel, John C. Sullivan, was counsel for plaintiffs in <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024), cited above, which was argued on March 21, 2024, and decided by the Sixth Circuit Court of Appeals on July 9, 2024.

Plaintiff characterizes Defendants' RLA Motion as "late-filed," but defenses based on lack of subject-matter jurisdiction, such as preclusion under the RLA, can be raised at any time and can never be waived or forfeited by the parties. <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006); <u>Pearson v. Northwest Airlines, Inc.</u>, 659 F.Supp.2d 1084, 1088 n.3 (C.D. Cal. 2009).

Plaintiff has not established good cause required to amend the scheduling order to assert a new cause of action after more than two and a half years of litigation.  <u>Johnson</u>, 975 F.2d at

608 (explaining that a plaintiff must first establish good cause pursuant to Fed. R. Civ. P. 16(b) to amend the scheduling order prior to seeking amendment of a pleading pursuant to Fed. R. Civ. P. 15(a)).

**CONCLUSION**

Defendants' Motion for Partial Dismissal as to Plaintiff Nina Arizumi's Title VII and ADA claims for failure-to-accommodate (ECF No. 197) is **GRANTED.**

Counts I and IV of the Complaint as to Plaintiff Nina Arizumi are **DISMISSED WITH PREJUDICE.**

Plaintiff's request for jurisdictional discovery is **DENIED.**

Plaintiff's request for leave to amend the December 22, 2022 Complaint (ECF No. 1) is **DENIED.**

IT IS SO ORDERED.

DATED: May 6, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Riki O'Hailpin; Nina Arizumi; Robert Espinosa; Erwin Young; Puanani Badiang; Sabrina Franks; Ronald Lum; Dan Saiki; Brandee Aukai vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00532 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO COUNTS I AND IV FOR PLAINTIFF NINA ARIZUMI (ECF No. 197)**