IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RIKI O'HAILPIN; NINA ARIZUMI;     )   CIV. NO. 22-00532 HG-WRP
ROBERT ESPINOSA; ERWIN YOUNG;     )
PUANANI BADIANG; SABRINA          )
FRANKS; RONALD LUM; DAN SAIKI;    )
BRANDEE AUKAI,                    )
                                  )
            Plaintiffs,           )
                                  )
       vs.                        )
                                  )
HAWAIIAN AIRLINES, INC.;          )
HAWAIIAN HOLDINGS, INC.           )
                                  )
                                  )
            Defendants.           )
_____  )

**ORDER ON PLAINTIFFS ROBERT ESPINOSA AND DAN SAIKI'S MOTIONS IN
LIMINE NOS. #2-#6 (ECF Nos. 247, 248, 249, 250 and 251)**

Plaintiffs Robert Espinosa and Dan Saiki filed suit against
Defendant Hawaiian Airlines, Inc. and its parent company
Defendant Hawaiian Holdings, Inc. ("Hawaiian Defendants").

Plaintiffs' suit claims the Hawaiian Defendants failed to
reasonably accommodate their religious beliefs in violation of
Title VII of the Civil Rights Act of 1964.

Plaintiff Robert Espinosa is a First Officer who is
currently employed by Defendant Hawaiian Airlines, Inc.
Plaintiff Espinosa alleges that he was placed on leave without
pay status for approximately nine months between February 2022
and November 2022.  Plaintiff Espinosa claims he was placed on
leave without pay status because he refused to comply with the

1

airline's mandatory vaccination policy imposed during the
worldwide COVID-19 pandemic.  Plaintiff Espinosa claims he
refused to comply with the policy on religious grounds as a
Christian.

Plaintiff Dan Saiki was employed as a Captain by Defendant
Hawaiian Airlines, Inc.  Plaintiff Saiki alleges that he was
forced to take an early retirement in December 2021 because he
refused to comply with the mandatory vaccination policy on
religious grounds as a member of the Church of Jesus Christ of
Latter-day Saints.

Plaintiffs Espinosa and Saiki have filed six Motions in
Limine.

This Order addresses Plaintiffs' Motions in Limine Nos. 2
through 6 (ECF Nos. 247-251).

## **ANALYSIS**

**PLS' MOTION IN LIMINE NO. 2**:  **RE: To Preclude Advice Of Counsel
                                 Defense At Trial (ECF No. 247)**

Plaintiffs Robert Espinosa and Dan Saiki filed their Motion
in Limine No. 2, seeking to preclude Defendants Hawaiian
Airlines, Inc. and Hawaiian Holdings, Inc. ("Hawaiian
Defendants") from raising an advice of counsel defense at trial.

The Hawaiian Defendants do not oppose.  The Hawaiian
Defendants state that they do not intend to raise an advice of

2

counsel defense at trial, but they clarify that they may introduce evidence of consultation with their legal department.

Plaintiffs' Motion in Limine No. 2 to preclude an advice of counsel defense (ECF No. 247) is **GRANTED.**

Defendants, however, are not precluded from introducing evidence that they implemented their vaccination policy, in part, based on concerns about violating local, state, or federal laws or mandates regarding the COVID-19 pandemic. The information is relevant for the availability of reasonable accommodations and undue hardship. Bhatia v. Chevron U.S.A., Inc., 734 F.2d 1382, 1383-84 (9th Cir. 1984) (per curiam); Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 830 (9th Cir. 1999); see Lowe v. Mills, 68 F.4th 706, 720 (1st Cir. 2023); Brown v. South Shore Univ. Hospital, 762 F.Supp.3d 191, 210 (E.D. N.Y. Jan. 10, 2025).

**PLS' MOTION IN LIMINE NO. 3**:  **RE: To Bar Any Reference To The Federal Contractor Mandate And/Or Request For Judicial Notice And Instruction To The Jury (ECF No. 248)**

Plaintiffs Robert Espinosa and Dan Saiki filed their Motion in Limine No. 3, seeking to bar the Hawaiian Defendants from referencing the Federal Contractor Mandate at trial.

### A.    Federal Contractor Mandate

On August 9, 2021, the Hawaiian Defendants announced their

vaccination policy.

Following the announcement of the Hawaiian Defendants'
vaccination policy, on September 14, 2021, President Biden issued
Executive Order 14042 ("Federal Contractor Mandate," attached as
Ex. E to Def.'s Opp., ECF No. 270-7).

The Federal Contractor Mandate directed executive agencies
to include a clause in procurement agreements that required
federal contractors to comply with certain workplace safety rules
designed to respond to the COVID-19 pandemic. Georgia v.
President of the United States, 46 F.4th 1283, 1289 (11th Cir.
2022). One of the requirements included a mandate that employees
who work on or in connection with a covered contract, or share a
workplace with another employee who does, be fully vaccinated
against COVID-19. Id.

On September 17, 2021, the Hawaiian Defendants published
their vaccination policy.

The Hawaiian Defendants assert that they knew of the Federal
Contractor Mandate and were required to comply with it because
they had contracts with the Department of Defense, the United
States Postal Service, and the General Services Administration.
(Def.'s Opp. at pp. 3-4, ECF No. 270).

The Hawaiian Defendants intend to introduce a PowerPoint
Presentation that was presented to their management in November
2021 regarding the Federal Contractor Mandate requirements. (Id.

4

at pp. 4-5).  Defendants assert that Willard Jackson, their
Director of Leave Management during the implementation of their
vaccination policy, discussed the Federal Contractor Mandate, the
accommodations that could be provided in light of the Mandate,
and its impact on the safety of the Defendants' other employees
and clients.  (Id. at p. 5).  The Federal Contractor Mandate was
relevant when the Hawaiian Defendants were reviewing requests for
accommodations from their vaccination policy and is admissible at
trial.

**B.    The Federal Contractor Mandate Is Relevant At Trial**

The Federal Contractor Mandate is highly relevant to the
case.  Contrary to Plaintiffs' position, concerns about violating
local, state, or federal laws or mandates regarding COVID-19 are
relevant and probative as to the availability of reasonable
accommodations and undue hardship.  Bhatia, 734 F.2d at 1384;
Sutton, 192 F.3d at 830.

Plaintiffs argue that the Federal Contractor Mandate is
irrelevant because a District Judge in the Southern District of
Georgia issued a preliminary injunction staying its
implementation on December 7, 2021, Georgia v. Biden, 574
F.Supp.3d 1337 (S.D. Ga. 2021), which was later affirmed in part
and vacated in part in Georgia v. President of the United States,
46 F.4th 1283, 1289 (11th Cir. 2022), on August 26, 2022.

The fact that the Federal Contractor Mandate was issued and
considered by the Hawaiian Defendants is highly relevant even if
the Mandate was enjoined.  Here, there was a lack of clarity as
to the effect of the Georgia court's enjoinment decision on
entities in Hawaii.  Courts have struggled to determine the
efficacy of nationwide preliminary injunctions and appellate
stays of such injunctions in recent years.  See Trump v.
International Refugee Assistance Project, 582 U.S. 571, 572
(2017) (staying preliminary injunctions that prevented
enforcement of executive orders).

A stay and an injunction are two separate legal concepts.  A
preliminary injunction is not a preliminary adjudication on the
merits but a device for preserving the status quo before the
entry of judgment whereas a stay prevents further case
development and allows the reviewing court time to rule on an
issue of law.  East Bay Sanctuary Covenant v. Biden, 993 F.3d
640, 661 (9th Cir. 2021).

Here, the fact that the Hawaiian Defendants assert they made
a good faith effort to comply with the Federal Contractor Mandate
given the evolving legal battles about its implementation is
relevant for the case.  The Hawaiian Defendants argue that the
Federal Contractor Mandate was one of many considerations and
factors at issue with respect to their implementation of their
vaccination policy and their review of Plaintiffs' requests for

accommodations.  (Declaration of Willard Jackson at ¶¶ 3-4,
stating compliance with the Federal Contractor Mandate's
guidelines was entirely consistent with Hawaiian's efforts to
best protect its employees against COVID-19, ECF No. 270-1).

The Federal Contractor Mandate is admissible at trial and
subject to judicial notice.  Pursuant to Federal Rule of Evidence
201, the Court may take judicial notice of laws and executive
orders that are matters of public record.  Pranger v. Oregon
State Univ., 672 F.Supp.3d 1088, 1097 (D. Or. 2023) (taking
judicial notice of executive orders as they are matters of public
record); Denis v. Ige, 538 F.Supp.3d 1063, 1068-69n.3 (D. Haw.
2021) (taking judicial notice of public health statements and
emergency proclamations relating to the COVID-19 pandemic).

Plaintiffs' Motion in Limine No. 3 to bar any reference to
the Federal Contractor Mandate (ECF No. 248) is **DENIED**.

**The Federal Contractor Mandate may be introduced at trial.
The Hawaiian Defendants may provide testimony, evidence, and
argument as to what effect, if any, the Federal Contractor
Mandate had on their implementation of their vaccination policy
and their review of Plaintiffs' requests for reasonable
accommodations.**

**PLS' MOTION IN LIMINE NO. 4**:  **RE: To Bar Any Reference To Employee Deaths "From COVID" (ECF No. 249)**

Plaintiffs Robert Espinosa and Dan Saiki filed their Motion in Limine No. 4, seeking to bar at trial any reference, testimony, or evidence that employees of the Hawaiian Defendants died as result of contracting COVID-19.

Plaintiffs cite to multiple depositions of the Hawaiian Defendants' employees who testified that they were made aware that three of their employees died as a result of contracting COVID-19.

Plaintiffs argue that testimony from Defendants stating they were informed that three Hawaiian employees died as a result of COVID-19 is inadmissible hearsay. Plaintiffs fundamentally misunderstand hearsay evidence.

An out-of-court statement is only hearsay if it offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c)(2). An out-of-court statement is not hearsay if admitted to show the effect on the listener. United States v. Payne, 944 F.2d 1458, 1472 (9th Cir. 1991). An out-of-court statement is not hearsay if it is offered to show the reason the party took action. United States v. Castro, 887 F.2d 988, 1000 (9th Cir. 1989). In addition, an out-of-court statement may be introduced to prove that the person to whom the statement was communicated had notice of something. Patterson v. Miller, 451

8

F.Supp.3d 1125, 1141 (D. Ariz. 2020), aff'd, 2021 WL 3743863 (9th Cir. Aug. 24, 2021).

The Hawaiian Defendants explain in their Opposition that the statements concerning employees' deaths are not hearsay because they are not offered for the truth of the matter.  The statements are being offered to explain the effect they had on the Hawaiian Defendants' management.  Defendants assert that information about the dangers of COVID-19 infection and communications about their employees' deaths formed part of the basis for their implementation of the COVID-19 vaccination policy.  The statements are admissible to demonstrate the effect on the Hawaiian Defendants and their attempt to protect employees and ensure their clients' safety.

The effect that the COVID-19 pandemic had on every member of society, including the fact that it caused thousands of deaths, is central to this case and not prohibited from being referenced.

Plaintiffs' Motion in Limine No. 4 to bar any reference to employee deaths from COVID-19 (ECF No. 249) is **DENIED.**

**Statements made to the Hawaiian Defendants that three of their employees died as a result of contracting COVID-19 are admissible to demonstrate the effect on the listener, notice, and if it played a part in implementing a vaccination policy.**

9

**PLS' MOTION IN LIMINE NO. 5**:  **RE: To Bar Any Reference To A
Hypothetical Hospital Bed Shortage
(ECF No. 250)**

Plaintiffs Robert Espinosa and Dan Saiki filed their Motion in Limine No. 5, seeking to bar Defendants from referencing "a hypothetical hospital bed shortage" in Hawaii.

### A.   News Articles Are Admissible To Show The Effect On The Listener And Are Subject To Judicial Notice

Once again, the question of hearsay is raised.  Defendants' Chief Operating Officer Jon Snook testified that there were news reports raising concerns about possible hospital bed shortages in Hawaii given the COVID-19 global pandemic.  Mr. Snook also testified to concerns about lack of resources, ventilators, and nurses.  (Def.'s Opp. at p. 3, ECF No. 265).  Mr. Snook testified that the information formed part of the reason why Defendants implemented their vaccination policy.  The information is admissible to show the effect on the listener.  Payne, 944 F.2d at 1472.

Defendants cite to various news articles in their Opposition regarding hospital bed shortages from July and September 2021. The news articles themselves are admissible pursuant to judicial notice.  Courts may take judicial notice of information published in newspapers, magazines, books, and other publications to understand what information was in the public realm at the time.

10

<u>Von Saher v. Norton Simon Museum of Art at Pasadena</u>, 592 F.3d 954, 960 (9th Cir. 2010).

**The publications are not admissible to demonstrate the truth of the matter, but to show the effect the information may have had on the public and the Parties.   <u>Id.</u>**

**The realities of the healthcare system in Hawaii are matters about which the jurors themselves will be aware.   The Hawaiian Defendants may testify as to what effect this information had on their decision-making with respect to their vaccination policy.**

> **B.   The Parties May Only Rely On Medical Evidence And Information Available To The Employer At The Time Of Reasonable Accommodations And Undue Hardship Evaluations**

Concerns about the effects COVID-19 may have had in the community between 2020 and 2021 are particularly relevant.   The analysis as to available reasonable accommodations and undue hardship is confined to the information available to the employer when it made such decisions.

In determining if a requested accommodation would pose an undue hardship, the jury can only consider the evidence and information available to the employer at the time.   <u>Lavelle-Hayden v. Legacy Health</u>, 744 F.Supp.3d 1135, 1152 (D. Or. 2024). A jury cannot second-guess an employer's decision with the benefit of hindsight but must consider the evolving nature of a

11

situation and the type and quality of information available at
the time.  Id.  The fact that numerous news articles raised
concerns about the impact COVID-19 may have had on the Hawaii
healthcare system, before and during the time Defendants
implemented their vaccination policy, is relevant and admissible.

Plaintiffs' Motion in Limine No. 5 to bar any reference to
hypothetical hospital bed shortages in Hawaii (ECF No. 250) is
**DENIED.**

**Information and testimony about news articles raising
concerns about the effect the COVID-19 pandemic may have had on
the Hawaii healthcare system and the availability of resources
are admissible.  The information is not hearsay because it is not
admitted for the truth of the matter but to show the effect the
information had on Defendants and the implementation of their
vaccination policy.**

**PLS' MOTION IN LIMINE NO. 6**:   **RE: To Exclude After-Acquired
                                Evidence And To Prohibit
                                Questioning On The Validity Of
                                Plaintiffs' Religious Beliefs (ECF
                                No. 251)**

Plaintiffs Robert Espinosa and Dan Saiki filed their Motion
in Limine No. 6, seeking to bar Defendants from cross-examining
them about the sincerity of their religious beliefs.

12

### A.    Plaintiffs Have The Burden Of Proof At Trial

Plaintiffs cite cases in the context of a defendant's motion for summary judgment or a motion to dismiss where courts have ruled that a plaintiff's assertion of a sincerely held religious belief is entitled to deference.  The deference exists in such contexts because at the summary judgment stage, the record is construed in a light most favorable to a plaintiff.  Similarly, in a motion to dismiss, the allegations in the complaint are assumed to be true for purposes of the motion.  This is not so at trial.  At trial, the plaintiffs have the burden of proof to prove their case.

Plaintiffs misunderstand their burdens at trial.  Plaintiffs rely on the burden-shifting framework for Title VII causes of action at the summary judgment stage.  The burden-shifting framework does not apply at trial.

In <u>Costa v. Desert Palace, Inc.</u>, 299 F.3d 838, 855-56 (9th Cir. 2002), <u>aff'd</u>, 539 U.S. 90 (2003), the Ninth Circuit Court of Appeals, sitting <u>en banc</u>, ruled that the burden-shifting frameworks for analyzing Title VII causes of action at the summary judgment stage of litigation do not apply at trial.

The Ninth Circuit Court of Appeals has similarly ruled that the burden-shifting framework for failure-to-accommodate causes of action under the ADA also does not apply at trial.  <u>Snapp v. United Transportation Union</u>, 889 F.3d 1088, 1100 (9th Cir. 2018).

13

In <u>Snapp</u>, the Ninth Circuit Court of Appeals reviewed confusion in lower courts about the burdens of proof at trial for failure-to-accommodate claims.  The Appellate Court ruled that it "is neither appropriate nor necessary to extend the [caselaw establishing the ADA failure-to-accommodate] burden shifting framework to trial.  <u>Id.</u>  "[B]urden shifting is best confined to summary judgment."  <u>Id.</u>

**The Ninth Circuit Court of Appeals held that it is the plaintiff's burden of proof at trial to prove his need for an accommodation and to demonstrate the existence of a reasonable accommodation that would have enabled the plaintiff to perform the job.  <u>Snapp</u>, 889 F.3d at 1102-03 (citing <u>Dark v. Curry Cnty.</u>, 451 F.3d 1078, 1088 (9th Cir. 2006)).**

At trial, Plaintiffs have the burden of proof to demonstrate that Defendants violated Title VII of the Civil Rights Act of 1964 by failing to accommodate their sincerely held religious beliefs.  It is the Plaintiffs' burden to establish each element of their case.  This includes demonstrating that their need for an accommodation was based on sincerely held religious beliefs that are protected by Title VII.  Political opinions are not entitled to protection under Title VII.

In addition to proving that their claims are protected by Title VII of the Civil Rights Act, it is each Plaintiff's burden at trial to demonstrate that a reasonable accommodation to his

14

sincerely held religious belief was necessary, that there were
reasonable accommodations available, and that Defendants failed
to offer them any reasonable accommodation.  See E.E.O.C. v.
Abercrombie & Fitch Stores, Inc., 575 U.S. 768, 772 n.2 (2015)
(explaining that an employee or applicant must show his need for
a religious accommodation and that his need for an accommodation
was a motivating factor in the employer's adverse employment
decision).

## B.   Plaintiffs' Credibility Is A Key Issue At Trial

Title VII of the Civil Rights Act of 1964 protects sincerely
held religious beliefs, but it does not protect medical, social
or political views or personal preferences.  Tiano v. Dillard
Dep't Stores, Inc., 139 F.3d 679, 682 (9th Cir. 1998); Bordeaux
v. Lions Gate Ent., 703 F.Supp.3d 1117, 1133 (C.D. Cal. 2023),
aff'd, 2025 WL 655065 (9th Cir. Feb. 28, 2025).

**The Hawaiian Defendants assert that Plaintiffs Espinosa and
Saiki did not object to vaccination on religious grounds, but
rather Defendants claim that the Plaintiffs actually refused to
get vaccinated based on medical opinions or political beliefs
that are not protected by Title VII.**

### 1.   Evidence Regarding Plaintiff Espinosa

Defendants assert that on September 29, 2021, Plaintiff

Espinosa requested an exemption based on his purported Christian
religious views, but the month before, Plaintiff Espinosa had
already sent an e-mail to Hawaiian CEO Peter Ingram criticizing
the vaccine as unsafe and ineffective and infringing on
individuals' freedoms.  (E-mail from Espinosa to Ingram, dated
August 13, 2021, attached as Ex. 5 to Def.'s Opp., ECF No. 263-
6).  The August 13, 2021 e-mail is not after-acquired but
occurred prior to the exemption request.

Defendants argue the e-mail is relevant because the e-mail
does not assert Plaintiff Espinosa's opposition based on
religion.  Instead, Defendants argue, the e-mail objects on
political grounds and based on Plaintiff's "God-given
constitutional rights."  (Id.)

Defendants further state that when asked about the basis for
his religious objection during his deposition, Plaintiff Espinosa
was not able to articulate any specific reason why the Bible
verses he cited in his request for religious exemption supported
his position.  (Espinosa Deposition at pp. 168-171, attached as
Ex. 6 to Def.'s Opp., ECF No. 263-7).  Defendants seek to cross-
examine Plaintiff Espinosa about these perceived inconsistencies.

## 2.    Evidence Regarding Plaintiff Saiki

Defendants state that Plaintiff Saiki sought exemption based
on his asserted faith as a member of the Church of Jesus Christ

of Latter-day Saints.  Defendants argue, however, that there is
evidence that Plaintiff Saiki actually objected to the vaccine on
political grounds and for medical reasons rather than religious
ones.  Plaintiff Saiki testified he declined the vaccine based on
"free agency."  (Saiki Deposition at p. 92, attached as Ex. 2 to
Def.'s Opp., ECF No. 263-3).  Defendants assert that Plaintiff
Saiki admitted during his deposition that the official position
of the Church of Jesus Christ of Latter-day Saints was to be
vaccinated for COVID-19.  (Id.; see Ex. 3 attached to Def.'s
Opp., ECF No. 263-4).  Plaintiff Saiki testified that he did not
regularly attend church services and that he did not follow the
church's practices all the time.  (Saiki Deposition at pp. 54,
91-92, attached as Ex. 2 to Def.'s Opp., ECF No. 263-3).
Plaintiff Saiki testified that he prayed about it and felt it and
his family should not get vaccinated.  (Id. at p. 82).  At the
same time, Plaintiff Saiki testified that he had numerous
concerns about the medical safety of the vaccine.  (Id. at pp.
81-84).

Defendants assert that Plaintiff Saiki wrote letters to his
children's school seeking vaccination exemptions based on medical
concerns, not religion.  (Saiki Letters attached as Ex. 1 to
Def.'s Opp., ECF No. 263-2).  Defendants assert that such
evidence supports their theory that Plaintiff Saiki actually
sought exemption on secular grounds, not religious grounds.

17

The Hawaiian Defendants additionally wish to cross-examine Plaintiff Saiki about purported inconsistencies between his deposition and his religious exemption request. (Def.'s Opp. at p. 10, ECF No. 263). Defendants also state that Plaintiff Saiki testified that he avoids medicines for religious reasons but testified in his deposition that he regularly takes blood-pressure medication, has taken antibiotics, has had multiple shoulder surgeries, and had neck surgery in Germany under general anesthesia in October 2021, the same month he requested religious exemption from the vaccine policy. (Id.)

> **3.   Defendants May Cross-Examine Plaintiffs About The Sincerity Of Their Religious Beliefs And The Bases For Which They Sought Exemption From The Vaccination Policy**

The Hawaiian Defendants wish to cross-examine Plaintiffs Espinosa and Saiki about their stated religious bases for their refusals to be vaccinated. This issue is central to the case because medical concerns, political opinions, and social views are not protected under Title VII of the Civil Rights Act.

**Plaintiffs' credibility, the sincerity of Plaintiffs' religious beliefs, whether their religious beliefs actually conflicted with the vaccination policy, and whether that conflict was the actual reason that Plaintiffs declined vaccination are all questions of fact for the jury.**

18

It is the Plaintiffs' burden of proof at trial to
demonstrate that the employment duties conflicted with their
sincerely held religious beliefs and that there were reasonable
accommodations that were available that would have avoided the
conflict.  See Abercrombie, 575 U.S. at 772 n.2; Snapp, 889 F.3d
at 1100; Yonemoto v. McDonald, 114 F.Supp.3d 1067, 1117 (D. Haw.
2015) (explaining that at trial, it is the plaintiff's burden to
establish the need for a reasonable accommodation).

### C.  After-Acquired Evidence Is Admissible As To A Plaintiff's Credibility

After-acquired evidence of employee misconduct is not
admissible to justify an employer's termination of the employee
if the employer did not know about the misconduct at the time.
McKennon v. Nashville Banner Publishing Co., 513 U.S. 352, 355
(1995).  That is not the case here.  Defendants do not seek to
introduce evidence to support their own motivation.  Neither
Plaintiff was terminated from employment.  Rather, the Hawaiian
Defendants offered Plaintiffs leave without pay in lieu of
vaccination.  Plaintiff Saiki elected to retire and Plaintiff
Espinosa went on leave without pay status for approximately nine
months.  The Hawaiian Defendants are not seeking to justify the
bases for offering Plaintiffs leave without pay based on after-
acquired evidence.  Instead, the Hawaiian Defendants seek to

cross-examine Plaintiffs with evidence that is highly relevant to Plaintiffs' credibility and outweighs any prejudice under Fed. R. Evid. 403.  See Vichare v. AMBAC, Inc., 106 F.3d 457, 467-68 (2d Cir. 1996) (affirming admission of after-acquired evidence to attack the employee's credibility); Zhou v. State Univ. of N.Y. Inst. of Tech., 2013 WL 2237842, *4-*5 (N.D. N.Y. May 21, 2013) (permitting defendant to use after-acquired evidence to impeach the plaintiff's credibility in an employment discrimination suit); Zeigler v. Ala. Dept. of Human Res., 2010 WL 2490018, *2 (M.D. Ala. June 16, 2010) (permitting after-acquired evidence of employee's false statements to be introduced as they were probative of a lack of credibility and outweighed any prejudice).

Plaintiffs must establish that their claims are properly subject to protection pursuant to Title VII of the Civil Rights Act of 1964 in order to be entitled to relief.

**Defendants seek to cross-examine Plaintiffs as to the sincerity of their beliefs for which Plaintiffs have the burden of proof at trial.  The evidence is necessary for the jury to assess the Plaintiffs' credibility.**

Plaintiffs' Motion in Limine No. 6 to exclude after-acquired evidence and to prohibit questioning on the validity of Plaintiffs' religious beliefs (ECF No. 251) is **DENIED.**

**Plaintiffs must establish their case-in-chief at trial and establish that their claims are protected pursuant to Title VII**

20

of the Civil Rights Act of 1964. **Defendants are permitted to cross-examine Plaintiffs. Questions concerning the sincerity of Plaintiffs' religious beliefs, whether their religious beliefs actually conflicted with the Defendants' vaccination policy, and whether that conflict was the actual reason that Plaintiffs declined vaccination are questions of fact for the jury.**

<u>CONCLUSION</u>

**Plaintiffs' Motion in Limine No. 2** to preclude an advice of counsel defense (ECF No. 247) is **GRANTED.**

Defendants, however, are not precluded from introducing evidence that they implemented their vaccination policy, in part, based on concerns about violating local, state, or federal laws or mandates regarding the COVID-19 pandemic.

**Plaintiffs' Motion in Limine No. 3** to bar any reference to the Federal Contractor Mandate (ECF No. 248) is **DENIED.**

The Federal Contractor Mandate may be introduced at trial. The Hawaiian Defendants may provide testimony, evidence, and argument as to what effect, if any, the Federal Contractor Mandate had on their implementation of their vaccination policy and their review of Plaintiffs' requests for reasonable

accommodations.

**Plaintiffs' Motion in Limine No. 4** to bar any reference to employee deaths from COVID-19 (ECF No. 249) is **DENIED.**

Statements made to the Hawaiian Defendants that three of their employees died as a result of contracting COVID-19 are admissible to demonstrate the effect on the listener, notice, and if it played a part in implementing a vaccination policy.

**Plaintiffs' Motion in Limine No. 5** to bar any reference to hypothetical hospital bed shortages in Hawaii (ECF No. 250) is **DENIED.**

Information and testimony about news articles raising concerns about the effect the COVID-19 pandemic may have had on the Hawaii healthcare system and the availability of resources is admissible.  The information is not hearsay because it is not admitted for the truth of the matter but to show the effect the information had on Defendants and the implementation of their vaccination policy.

**Plaintiffs' Motion in Limine No. 6** to exclude after-acquired evidence and to prohibit questioning on the validity of Plaintiffs' religious beliefs (ECF No. 251) is **DENIED.**

Plaintiffs must establish their case-in-chief at trial and

establish that their claims are protected pursuant to Title VII
of the Civil Rights Act of 1964.  Defendants are permitted to
cross-examine Plaintiffs.  Questions concerning the sincerity of
Plaintiffs' religious beliefs, whether their religious beliefs
actually conflicted with the Defendants' vaccination policy, and
whether that conflict was the actual reason that Plaintiffs
declined vaccination are questions of fact for the jury.

        IT IS SO ORDERED.

        DATED: May 30, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Riki O'Hailpin; Nina Arizumi; Robert Espinosa; Erwin Young;
Puanani Badiang; Sabrina Franks; Ronald Lum; Dan Saiki; Brandee
Aukai vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-
cv-00532 HG-WRP; **ORDER ON PLAINTIFFS ROBERT ESPINOSA AND DAN
SAIKI'S MOTIONS IN LIMINE NOS. #2-#6 (ECF Nos. 247, 248, 249, 250
and 251)**