IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RIKI O'HAILPIN; NINA ARIZUMI; ROBERT ESPINOSA; ERWIN YOUNG; PUANANI BADIANG; SABRINA FRANKS; RONALD LUM; DAN SAIKI; BRANDEE AUKAI,<br><br>           Plaintiffs,<br><br>      vs.<br><br>HAWAIIAN AIRLINES, INC.; HAWAIIAN HOLDINGS, INC.<br><br>           Defendants. | CIV. NO. 22-00532 HG-WRP |

**ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EXHIBITS NOT PRODUCED IN DISCOVERY (ECF No. 246)**

Plaintiffs' Motion in Limine No. 1 seeks to exclude exhibits that they claim were not timely disclosed by Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. ("Hawaiian Defendants").

The Court ordered the Parties to meet and confer to see if an agreement could be reached regarding the information in dispute.

The trial was continued from June 2025 to November 2025, which afforded the Parties an opportunity to remedy any possible prejudice to Plaintiffs.

The Court ordered the Parties to brief their positions on

1

the issue of prejudice caused by the alleged late disclosure.

## **PROCEDURAL HISTORY**

On May 1, 2025, Plaintiffs filed a Motion in Limine, entitled, "PLAINTIFFS' MOTION IN LIMINE NO. 1 AND MOTION PURSUANT TO FRCP 16(f), FRCP 26(a), AND (e), AND FRCP 37(b)(2)(A)(ii) AND (c) TO EXCLUDE EXHIBITS THAT DEFENDANTS DID NOT, BUT SHOULD HAVE, PRODUCED IN DISCOVERY."  (ECF NO. 246).

On May 8, 2025, Defendants filed their Opposition.  (ECF No. 269).

On May 29, 2025, the Court held a hearing and ordered the Parties to meet and confer regarding the exhibits subject to Plaintiffs' Motion.  (ECF No. 318).

On June 4, 2025, the Court held a further hearing.  (ECF No. 325).

On June 18, 2025, Plaintiffs filed a BRIEF REGARDING NEW EXHIBITS NOT DISCLOSED IN DISCOVERY (ECF No. 330).

On June 25, 2025, Defendants filed DEFENDANTS' RESPONSE TO PLAINTIFFS' BRIEF REGARDING NEW EXHIBITS NOT DISCLOSED IN DISCOVERY (ECF No. 332).

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 26 governs the duty to disclose both during discovery and after the close of discovery.

See Fed. R. Civ. P. 26.  Rule 26(a) governs initial disclosures, while subsection (e) governs supplementing such disclosures.  Fed. R. Civ. P. 26(a), (e).  Discoverable information is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Information within the scope of discovery need not be admissible in evidence to be discoverable."  Id.

When a party believes that the opposition has failed to timely comply with the requirements of disclosure pursuant to Rule 26, the party may move for sanctions under Rule 37(c).  Rule 37 "gives teeth" to the disclosure requirements of Rule 26(e).  Yeti by Molly, Ltd. V. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001).

The party requesting discovery sanctions bears the initial burden of establishing that the opposing party failed to comply with the disclosure requirements.  Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 241-242 (D. Nev. 2017).  If the movant satisfies its burden, the court must first, using its discretion, determine whether the failure to comply with the initial disclosure requirements was either substantially justified or harmless.  Id.  The burden then shifts to the party facing sanctions to show that substantial justification or harmlessness exists.  Id.

The Ninth Circuit Court of Appeals has ruled that District

3

Courts are entrusted with wide latitude in exercising their discretion to impose Rule 37(c) sanctions. Yeti by Molly, Ltd., 259 F.3d at 1106. When deciding whether to impose exclusion sanctions, Courts look at various factors, including the risk of prejudice to the other parties and the availability of less drastic sanctions. See Lanard Toys Ltd. v. Novelty, Inc., 375 Fed. Appx. 705, 713 (9th Cir. 2010). Exclusion sanctions are not required and should be imposed only in limited instances. Jackson v. United Artists Theatre Circuit, Inc., 278 F.R.D. 586, 594 (D. Nev. 2011).

## ANALYSIS

A party seeking to exclude untimely disclosed evidence pursuant to Fed. R. Civ. P. 26 and 37 bears the burden of demonstrating that the opposing party failed to comply with its discovery obligation. Silvagni v. Wal-Mart Stores, Inc., 320 F.R.D. 237, 241-242 (D. Nev. 2017). The party facing sanction bears the burden of proving that the untimely disclosure was harmless or substantially justified. Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1107 (9th Cir. 2001).

A late disclosure is harmless if the party against whom the evidence is offered had notice that the opposing party was relying on the information and that information was publicly available and not in their possession. Rigsbee v. City & Cnty.

of Honolulu, 2019 WL 984275, *5 (D. Haw. Feb. 28, 2019); Adams v. Teck Cominco Alaska, Inc., 231 F.R.D. 578, 581 (D. Alaska 2005) (finding that information the defendant obtained from an Environmental Protection Agency ("EPA") publication was not required to be disclosed and not subject to sanctions because it was not in defendant's possession and was equally available to all parties); see Lanard Toys Ltd. v. Novelty, Inc., 375 Fed. Appx. 705, 713 (9th Cir. 2010).

Plaintiffs argue that after the close of discovery, the Hawaiian Defendants provided exhibits for trial that contained previously undisclosed information that Plaintiffs argue should be excluded.  Alternatively, Plaintiffs argue that they should be entitled to reopen discovery to address the new information.

I.   **The Hawaiian Defendants Made Timely Disclosures Regarding The Transitional Period Testing Program ("TPTP")**

The first category of information Plaintiffs claim was new and prejudicial to them involved information regarding the Hawaiian Defendants' Transitional Period Testing Program.  The Program was implemented by the Hawaiian Defendants in November 2021.  The Program allowed employees who had not been vaccinated to be tested in order to continue to work prior to the January 2022 vaccination mandate.

5

### A. Prior To The Discovery Deadline, The Hawaiian Defendants Disclosed The Existence, Purpose, And Processes Of The Transitional Period Testing Program

Plaintiffs have been on notice that the Transitional Period Testing Program has been central to this case from its inception. Plaintiffs' Complaint (ECF No. 1) specifically references the testing program.

The Hawaiian Defendants disclosed data, e-mails, correspondence, and exemplar spreadsheets about the program. There was discovery into the Transitional Period Testing Program, the purpose of the Program, the timing of the Program, and issues related to compliance with the Program. Plaintiffs now argue that they did not receive all of the data and seek to exclude spreadsheets that contain data regarding employee compliance with the Program. The exhibits contain minimal new information as the majority of the information was previously disclosed to Plaintiffs in discovery. Sample spreadsheets were disclosed prior to the discovery deadline and none of the information provided in the new exhibits can be a surprise or cause prejudice to Plaintiffs.

### B. The Hawaiian Defendants Timely Disclosed Correspondence, E-mails, And Data About The Testing Program

The Hawaiian Defendants disclosed ample information about the Transitional Period Testing Program during discovery

6

including information and sample spreadsheets containing compliance data.

Beginning in June 2023, the Hawaiian Defendants disclosed correspondence and e-mails about the Transitional Period Testing Program, including information about testing compliance, including screenshots of tracking data. (Rhee Decl. at ¶ 10, ECF No. 332-1; Ex. E attached to Def.'s Response, ECF No. 332-6).

Prior to the discovery deadline, the Hawaiian Defendants disclosed to Plaintiffs numerous documents about their Transitional Period Testing Program. (Exhibits A-D attached to Def.'s Opp., ECF No. 332). These disclosures included detailed spreadsheets containing testing data concerning pilots and flight attendants. (Id.)

### C. The Hawaiian Defendants Timely Disclosed Information Concerning Compliance And Administration Of The Transitional Period Testing Program

Years prior to the close of discovery, the Hawaiian Defendants produced documents and notified Plaintiffs about their claimed difficulty administering the testing program.

As early as September 2023, the Hawaiian Defendants informed Plaintiffs that they believed the Transitional Period Testing Program was too difficult to administer and was not an available employment accommodation. Defendants filed a Declaration from Robin Kobayashi nearly two years ago on September 14, 2023,

7

explaining Defendants' administration of the Transitional Period Testing Program.  (Declaration of Robin Kobayashi, attached to Opp. to Motion to Certify Class, ECF No. 67-4).  Ms. Kobayashi set forth the program in her Declaration:

> [The Transitional Period Testing Program] proved to be burdensome to administer and to ensure that employees complied with testing.  The substantial additional costs to Hawaiian included not just obtaining a suitable vendor and a sufficient supply of tests during COVID-19 surges, but also the expense of hiring additional people to ensure compliance.  In order to maintain accurate and legitimate test results, Hawaiian required proctored testing...Maintaining compliance with the testing program created operational disruptions...**Over half of the employees participating in the TPTP failed to test on time at some point; Hawaiian issued over 150 noncompliance letters** (emphasis added).

(Id. at ¶¶ 13-14).

Plaintiffs cannot meaningfully argue that they are surprised or prejudiced about information regarding compliance with the Transitional Period Testing Program that they were made aware of nearly two years ago.  The Hawaiian Defendants have made the Program central to their undue burden defense and their claimed inability to properly administer the testing program as part of the basis for their vaccination mandate.

>  D.   **Plaintiffs Had Notice About The Testing Program, Conducted Depositions About The Program, And Could Have Deposed Others About The Program During The Discovery Period**

Plaintiffs had notice about the Transitional Period Testing

8

Program and issues with compliance with the program during discovery. Plaintiffs had such information prior to conducting the depositions of various of the Defendants' senior officials including Robin Kobayashi, Senior Vice President of Human Resources at Hawaiian Airlines, Inc.; Willard Jackson, Senior Director of Leave Management at Hawaiian Airlines, Inc.; and, Jon Snook, Chief Operations Officer at Hawaiian Airlines, Inc., all of whom had information about the Transitional Period Testing Program.

Plaintiffs specifically asked Robin Kobayashi about compliance with the Program during her deposition. (Deposition of Robin Kobayashi at p. 119, attached as Ex. F to Def.'s Opp., ECF No. 332-7). Plaintiffs had the opportunity to conduct additional depositions, if they chose, during the discovery period concerning the Transitional Period Testing Program.

Plaintiffs now wish to reopen discovery and conduct additional depositions based on the compliance spreadsheets. Plaintiffs seek to re-depose numerous witnesses and wish to depose for the first time Defendants' employee Valerie Wong.

There is no need to reopen discovery or conduct additional depositions regarding the Transitional Period Testing Program. Plaintiffs conducted depositions during discovery with respect to the Program. There is no new information in the exhibits that were given to Plaintiffs that would require additional discovery

9

or additional depositions.

Plaintiffs had ample notice about the Hawaiian Defendants' claimed issues with employee compliance with the Transitional Period Testing Program. Plaintiffs had notice about the individuals involved in implementing and administering the Transitional Period Testing Program. The Hawaiian Defendants disclosed Valerie Wong in their Initial Disclosures as the person who was in charge of the Program. Plaintiffs asked Robin Kobayashi about Ms. Wong during her deposition. (Id.) Plaintiffs declined to depose Valerie Wong and there is no basis to allow them to depose her at this stage of the proceedings.

Nothing in the Hawaiian Defendants' disclosed exhibits concerning the Program provides a basis to reopen discovery or conduct additional depositions. Plaintiffs had notice about the Program and compliance issues. Plaintiffs conducted depositions about the Program. Plaintiffs had the opportunity to inquire further into the Program during the discovery period.

### E.  Plaintiffs Are Not Prejudiced By Disclosure Of The Tracking Data Regarding Their Own Clients

Late disclosed evidence is harmless when the party was on notice about the use of the information and it was otherwise available to the party seeking exclusion. Rigsbee, 2019 WL 984275, at *5; Adams, 231 F.R.D. at 581.

Plaintiffs seek to preclude exhibits containing Transitional

10

Period Testing Program spreadsheets, claiming that the spreadsheets contain information about their own clients that they did not know.  Plaintiffs are not prejudiced by the information because they could have obtained it from their own clients.  In addition, the data regarding Plaintiff Dan Saiki was specifically disclosed to Plaintiffs prior to the close of discovery and it was not late.  (Def.'s Ex. A, ECF No. 332-2).  Plaintiffs themselves could have obtained similar information from any of their other clients.

Plaintiffs produced an e-mail from Mr. Saiki for the first time as an attachment to Plaintiffs' Brief, found in Exhibit 1, which shows their ability to obtain information from their own clients.  (Ex. 1 attached to Pl.'s Brief, ECF No. 330-2).

Plaintiffs' request for exclusion or additional discovery and depositions regarding the Transitional Period Testing Program is **DENIED.**

## II.  Plaintiffs Had Notice About The Obituaries Of The Hawaiian Airlines Employees Who Died Which Were Publicly Available

An exhibit is not excludable pursuant to Fed. R. Civ. P. 37 if the information was not required to be disclosed pursuant to Fed. R. Civ. P. 26.  Yeti, 259 F.3d at 1107.  Late disclosure of evidence is harmless when the party seeking to exclude the information was clearly put on notice about the information in the discovery process, the evidence was accessible and not in the

11

opposing party's possession, and there is no surprise from the disclosure.  Lanard Toys Ltd., 375 Fed. Appx. at 713; Rigsbee, 2019 WL 984275, at *5; Adams, 231 F.R.D. at 581; United States v. Supervalu, Inc., 2019 WL 1407393, *2 (C.D. Ill. 2019).

During the discovery process, various employees of the Hawaiian Defendants testified during their depositions that at least three Hawaiian Airlines employees were reported to have died as a result of COVID-19.

Plaintiffs previously attempted to exclude this information pursuant to their Motion in Limine No. 4, to bar any reference to employee deaths from COVID-19.  The Court denied Plaintiffs' Motion in Limine No. 4 in a written order.  (ECF No. 317).

The Court explained in the May 30, 2025 Order that Defendants were permitted to inquire with their employees about reasons for implementing the COVID-19 vaccine mandate, including employee deaths.  The Court found that there were multiple depositions of the Hawaiian Defendants' employees who testified that they were made aware that three of their employees died as a result of contracting COVID-19.  (Id. at p. 8).

The Court ruled that such information was admissible to show the effect on the listener.  The Court further explained that "the effect that the COVID-19 pandemic had on every member of society, including the fact that it caused thousands of deaths, is central to this case and not prohibited from being

12

referenced." (Id. at p. 9).

Following the close of discovery, the Hawaiian Defendants disclosed exhibits containing the employees' obituaries or death notices and Plaintiffs seek to exclude that information. The information is not excludable, however, because it is publicly available information of which the Plaintiffs were previously made aware. This issue was addressed in multiple depositions and Plaintiffs had every opportunity to investigate it. The obituaries were public documents. Plaintiffs chose not to investigate the information until now after the Court ruled the information was admissible at trial. This is not an opportunity for Plaintiffs to have a second-bite at the apple.

Plaintiffs' request for exclusion or additional discovery and depositions regarding the employees' deaths is **DENIED.**

### III. Plaintiffs Had Notice About Evidence Regarding Airline Route Maps Which Was Publicly Available

A late disclosure is harmless when the party seeking to exclude the information was put on notice about the evidence in the discovery process, the information was publicly available and not in the control of the opposing party, and the use of the information is not a surprise. Rigsbee, 2019 WL 984275, at *5; Adams, 231 F.R.D. at 581; Supervalu, Inc., 2019 WL 1407393, *2.

Plaintiffs seek to exclude exhibits containing route maps for both Defendant Hawaiian Airlines, Inc. and other air

13

carriers.

Route maps of carriers are public information and Plaintiffs could have obtained this information on their own. In fact, Plaintiffs' own expert cites to route maps of Delta Airlines, Hawaiian Airlines, and other carriers in her February 2025 expert rebuttal report. (Expert Rebuttal Report of Karlene Petitt, at pp. 9-10, ECF No. 199-4). Plaintiffs had access to the information and used it themselves.

There can be no prejudice or surprise when the route map information was available to Plaintiffs and they used them in their own case. Plaintiffs had notice that the Defendants' specific routes were a factor in their accommodations evaluations and the publicly available route map are not a surprise to Plaintiffs. Rigsbee, 2019 WL 984275, at *5; Adams, 231 F.R.D. at 581; Supervalu, Inc., 2019 WL 1407393, *2.

Plaintiffs' request for exclusion or additional discovery and depositions regarding route maps is **DENIED.**

### IV. Evidence That The Senior Officers And The Board Agreed To Implement A Vaccine Policy Was Previously Disclosed

During discovery, Plaintiffs conducted the deposition of Peter Ingram, Defendant Hawaiian Airlines, Inc.'s former Chief Executive Officer. During the deposition, Plaintiffs questioned him about the development of the Hawaiian Defendants' vaccine policy and his communications with Defendants' senior officers

14

and the board.

Specifically, Plaintiffs inquired with Mr. Ingram how the senior officers' group felt about the vaccine policy and whether anyone was opposed to it.  (Deposition of Peter Ingram at pp. 212-13, attached as Ex. I to Def.'s Opp., ECF No. 332-10).  Mr. Ingram testified that the group collectively supported the policy and identified a senior officer who had concerns about the policy.  (Id.)  According to Defendants, Plaintiffs declined to depose that officer.

Following the close of discovery, Defendants disclosed Exhibit 2307, which is an email from Hawaiian Airlines, Inc.'s CEO Peter Ingram to senior officers.  The e-mail informed the senior officers that Mr. Ingram had heard back from some of the Board of Directors and that they supported the officers' decision to require vaccines for employees.

Defendants acknowledge that they were late to disclose Exhibit 2307.  The late disclosure, however, is harmless because it does not contain any new information about which Plaintiffs were previously unaware.  Exhibit 2307 is consistent with the already conducted deposition testimony that the majority of the senior officers agreed with the decision to implement the vaccine policy and that the Board approved the policy.

As Defendants explain, "No part of this email is a surprise to Plaintiffs, and Plaintiffs do not need the underlying email

15

that Mr. Ingram sent to the board; there is no dispute that Hawaiian instituted a vaccine policy during the pandemic." (Def. Opp. at p. 19, ECF No. 332). Defendants have demonstrated that the late disclosure was harmless and did not prejudice Plaintiffs.

Plaintiffs' request for exclusion or additional discovery and depositions regarding Exhibit 2307 is **DENIED.**

**V.   Exhibit 2311 Contains A Late-Disclosed Presentation To The Defendants' Board**

During discovery, the Hawaiian Defendants disclosed PowerPoint presentations concerning their testing and vaccination policies that were presented to their Board of Directors by senior officers. The presentations that were disclosed were dated September 29, 2021 and November 2021.

Following the close of discovery, however, the Hawaiian Defendants additionally disclosed a third presentation: Exhibit 2311. Exhibit 2311 is a cover e-mail and PowerPoint presentation given to the Defendants' Board of Directors dated December 1, 2021, entitled "Vaccination Requirement Updates." (Email and Presentation dated Dec. 1, 2021, attached as Ex. J to Def.'s Opp., ECF No. 332-11).

Defendants acknowledge Exhibit 2311 was disclosed late. Defendants have not demonstrated that the late disclosure was harmless. The December 1, 2021 presentation contained the newest

16

information available at the time of the review of the accommodations requests. It also specifically provides information and statistics on "Religious Accommodation Requests" that are pertinent to Plaintiff Saiki and Plaintiff Espinosa. (Id. at pp. 17-22).

Plaintiffs' requests for additional depositions and discovery regarding Exhibit 2311 is **GRANTED, IN PART, AND DENIED, IN PART.**

Plaintiffs may depose Peter Ingram, Robin Kobayashi, and Bhawna Mundotia for one hour each about Exhibit 2311.

Plaintiffs additionally request to reopen discovery regarding Exhibit 2311. Specifically, Plaintiffs request to conduct discovery about the Civil Reserve Air Fleet ("CRAF") contract between Hawaiian Airlines and the United States government because it was referenced in the December presentation. Plaintiffs, however, were already aware of the CRAF contract well before the close of discovery. The CRAF contract allows the Government to use Hawaiian Airlines' aircraft and resources during national emergencies or crises. Defendants' Director of Leave Willard Jackson identified the CRAF contract in his deposition. (Deposition of Willard Jackson at pp. 237-240, attached as Ex. K to Def.'s Response, ECF No. 332-12). Mr. Jackson explained that similar to the Federal Contractor Mandate, the CRAF contract required the Defendants' employees to be

17

vaccinated.  (Id.)  Plaintiffs were aware of this and were able to conduct discovery about it and request a copy of the contract during the discovery period.  There is no basis to reopen discovery regarding this issue.

Plaintiffs' request for any additional discovery related to Exhibit 2311 is **DENIED**.

## VI. Plaintiffs Had Notice About Defendants Reliance On Statistical Data From Government Websites And The Information Was Available To Both Parties And Is Not Prejudicial

As previously explained, a late disclosure is harmless when the party seeking to exclude the information was put on notice about the evidence in the discovery process, the information was publicly available and not in the control or possession of the opposing party, and the use of the information is not a surprise. See Rigsbee, 2019 WL 984275, at *5; Supervalu, Inc., 2019 WL 1407393, *2.  Adams, 231 F.R.D. at 581 (finding EPA data was not required to be disclosed under Rule 26 and was not subject to sanctions).

The Hawaiian Defendants disclosed exhibits containing publicly available evidence from the State of Hawaii Department of Public Health regarding COVID-19.

Plaintiffs previously tried to challenge the admissibility of the State of Hawaii Department of Health data, which the Court rejected.  The Court ruled that the publicly available

18

information was admissible in its Order Granting Defendants' Motion in Limine No. 2 To Admit Into Evidence Hawaii Department Of Health COVID-19 Data.  (ECF No. 316).

Plaintiffs now argue that the exhibits are prejudicial.  The information, however, was known to Plaintiffs during the discovery process, the data was all publicly available, the use of the information at trial can be of no surprise to Plaintiffs.  Evidence regarding COVID-19 in the State of Hawaii is central to this case.  Prior to the close of discovery, there was ample information that the Hawaiian Defendants were relying on positive testing data and federal and state authorities in evaluating their employment practices including the testing and vaccination programs.

Plaintiffs had equal access to the publicly available data from the Hawaii Department of Health.  The information was already available to Plaintiffs and they are not prejudiced by the information that was publicly available on the State of Hawaii Department of Health website.

Plaintiffs' request for exclusion or for additional discovery and depositions regarding the State of Hawaii Department of Public Health data is **DENIED.**

## CONCLUSION

PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EXHIBITS NOT

19

PRODUCED IN DISCOVERY (ECF NO. 246) is **GRANTED, IN PART, AND DENIED, IN PART.**

Plaintiffs' request for additional depositions about Exhibit 2311 is **GRANTED IN PART.**

Plaintiffs may depose Peter Ingram, Robin Kobayashi, and Bhawna Mundotia for one hour each about Exhibit 2311.

All other requests for exclusion and for additional discovery and depositions set forth in Plaintiffs' Motion in Limine No. 1 (ECF No. 246) and accompanying brief (ECF No. 330) are **DENIED.**

IT IS SO ORDERED.

DATED: July 31, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Riki O'Hailpin; Nina Arizumi; Robert Espinosa; Erwin Young; Puanani Badiang; Sabrina Franks; Ronald Lum; Dan Saiki; Brandee Aukai vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00532 HG-WRP; **ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION IN LIMINE NO. 1 TO EXCLUDE EXHIBITS NOT PRODUCED IN DISCOVERY (ECF No. 246)**