IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RIKI O'HAILPIN; NINA ARIZUMI; ROBERT ESPINOSA; ERWIN YOUNG; PUANANI BADIANG; SABRINA FRANKS; RONALD LUM; DAN SAIKI; BRANDEE AUKAI, | ) ) ) ) ) ) | CIV. NO. 22-00532 HG-WRP |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HAWAIIAN AIRLINES, INC.; HAWAIIAN HOLDINGS, INC., | ) ) ) | |
| Defendants. | ) ) ) | |

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AGAINST PLAINTIFFS SAIKI AND ESPINOSA (ECF No. 378)**

Plaintiffs Robert Espinosa and Dan Saiki were employed as pilots by the Hawaiian Defendants when in 2020 the world was impacted by the COVID-19 global pandemic.

In August 2021, Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. ("Hawaiian Defendants") implemented a mandatory vaccination policy for COVID-19.

Plaintiffs Espinosa and Saiki requested to be exempt from the Hawaiian Defendants' COVID-19 vaccination policy based on their religious beliefs. The Hawaiian Defendants denied Plaintiffs Espinosa and Saiki's requests for exemption from their vaccination policy.

1

Plaintiffs Espinosa and Saiki, along with seven other individuals, have filed suit against the Hawaiian Defendants.

Plaintiffs Espinosa and Saiki claim the Hawaiian Defendants failed to reasonably accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964.  The Hawaiian Defendants assert that it would have caused undue hardship to accommodate the pilots' requests for exemption.

The Hawaiian Defendants filed a Motion to Dismiss based on lack of subject-matter jurisdiction as to Plaintiffs Espinosa and Saiki's religious accommodation claims.  The Hawaiian Defendants assert that Plaintiffs Espinosa and Saiki's Title VII failure-to-accommodate claims require interpretation of the Collective Bargaining Agreement that applied to the two Plaintiffs as pilots at the time they sought exemption from the vaccination policy.

The Hawaiian Defendants argue that the Court may not review Plaintiffs Espinosa and Saiki's claims due to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes.  See 45 U.S.C. § 184.

Defendants' Motion for Dismissal for Lack of Subject-Matter Jurisdiction as to Plaintiffs Saiki and Espinosa (ECF No. 378) is **GRANTED**.

## PROCEDURAL HISTORY

On December 22, 2022, Plaintiffs Espinosa and Saiki and seven other individual Plaintiffs filed the Complaint.  (ECF No. 1).

On August 14, 2023, Plaintiffs filed a Motion to Certify Classes and Appoint Counsel.  (ECF No. 50).

On December 12, 2023, District Judge Otake issued an ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASSES AND APPOINT COUNSEL.  (ECF No. 101).

On January 18, 2024, the case was reassigned from Judge Otake to Judge Gillmor.  (ECF No. 103).

On February 19, 2025, Defendants filed a Motion to Bifurcate.  (ECF No. 176).

On February 20, 2025, the Court held a Status Conference.  (ECF No. 178).

On March 5, 2025, the Court held another Status Conference and a hearing on Defendants' Motion to Bifurcate.  (ECF No. 190).

On March 19, 2025, Defendants filed a Motion for Partial Dismissal as to Plaintiff Nina Arizumi.  (ECF No. 197).

On April 7, 2025, the Court held a hearing on the Parties' Joint Statement Regarding Severing Trials.  (ECF No. 210).  The Parties agreed that Plaintiffs Espinosa and Saiki would be tried together as the first set of Plaintiffs.  (Id.)

On May 6, 2025, the Court issued an Order to Show Cause Why

3

Count II For Disparate Impact Should Not Be Dismissed.  (ECF No. 253).

Also on May 6, 2025, the Court issued an ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS TO COUNTS I AND IV FOR PLAINTIFF NINA ARIZUMI.  (ECF No. 254).

On May 7, 2025, the Court issued an ORDER GRANTING DEFENDANT HAWAIIAN AIRLINES, INC.'S MOTION TO BIFURCATE.  (ECF No. 257).

On May 9, 2025, the Court held a Status Conference.  (ECF No. 276).

On May 29, 2025, the Court held a hearing on the Parties' Motions in Limine.  (ECF No. 318).  At the hearing, the Court dismissed Count II for Disparate Impact and Count III for Retaliation with prejudice.  (Id.)

On May 30, 2025, the Court issued an ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTIONS IN LIMINE.  (ECF No. 316).

Also on May 30, 2025, the Court issued an ORDER ON PLAINTIFFS ROBERT ESPINOSA AND DAN SAIKI'S MOTIONS IN LIMINE NOS. 2-6.  (ECF No. 317).

On June 2, 2025, Plaintiffs filed a Motion to Sever.  (ECF No. 320).

On June 9, 2025, the Court held a hearing and denied Plaintiffs' Motion to Sever.  (ECF No. 325).  The Court explained

4

that there were various outstanding issues to be addressed prior
to trial including the Parties' repeated requests for
continuances, the issue of late-disclosed exhibits, the Parties'
expert reports, deposition excerpts, and the Parties' exhibits
and their lack of conformity to the Court's rulings regarding the
Motions in Limine.  (Id.)  Trial was continued to November 18,
2025.  (Id.)

On July 31, 2025, the Court issued an ORDER GRANTING, IN
PART, AND DENYING, IN PART, PLAINTIFFS' MOTION IN LIMINE NO. 1 TO
EXCLUDE EXHIBITS NOT PRODUCED IN DISCOVERY.  (ECF No. 348).

On September 4, 2025, the Court issued a Minute Order
regarding newly issued published decisions from the Ninth Circuit
Court of Appeals and set a status conference for September 25,
2025.  (ECF No. 373).

On September 16, 2025, Defendants submitted a letter to the
Court stating that they intended to file a Motion to Dismiss for
Lack of Subject-Matter Jurisdiction as to Plaintiffs Espinosa and
Saiki.  (ECF No. 375).

On September 22, 2025, Defendants filed DEFENDANTS HAWAIIAN
AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL
FOR LACK OF SUBJECT MATTER JURISDICTION AGAINST PLAINTIFFS SAIKI
AND ESPINOSA.  (ECF No. 378).

On September 25, 2025, the Court held a Status Conference.
(ECF No. 380).

5

On October 6, 2025, Plaintiffs Espinosa and Saiki filed an Opposition to the Motion for Dismissal for Lack of Subject-Matter Jurisdiction.  (ECF No. 384).

On October 20, 2025, Defendants filed their Reply.  (ECF No. 387).

On October 28, 2025, the Court received a letter from Plaintiffs' counsel requesting leave to file a Supplemental Brief.  (ECF No. 388).

The Court allowed Plaintiffs to file a Motion for Leave to File a Supplemental Brief and allowed Defendants to file a Response to the Motion.  (ECF No. 389).

On November 5, 2025, Plaintiffs filed their Motion for Leave to file a Supplemental Briefing.  (ECF No. 390).

On November 12, 2025, Defendants filed their Response to the Motion to for Leave to File a Supplemental Brief.  (ECF No. 392).

Without leave of Court, on November 20, 2025, Plaintiffs filed a Reply to their Motion for Leave to File a Supplemental Brief.  (ECF No. 394).

Following Plaintiffs' filing on November 20, 2025, Defendants filed a Motion to Strike Plaintiffs' Reply Seeking to File a Supplemental Brief.  (ECF No. 395).

On November 21, 2025, Plaintiffs filed an Opposition to Plaintiffs' Motion to Strike their Reply Seeking to File a Supplemental Brief.  (ECF No. 398).

6

On December 5, 2025, the Court issued an Order Denying Plaintiffs' Motion for Leave to File Supplemental Brief and Denying Defendants' Motion to Strike.  (ECF No. 401).

The Court elects to decide the Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

**BACKGROUND**

**Defendant Hawaiian Airlines, Inc.'s Operation**

At the time of the announcement of the vaccination policy in August 2021, Defendant Hawaiian Airlines, Inc. operated all of its passenger flights to and from the Hawaiian Islands.  There were three different types of scheduled passenger service:

(1)  Domestic flights to and from the Hawaiian Islands to the United States Mainland;

(2)  International flights to and from the Hawaiian Islands to numerous foreign locations including Japan, Australia, South Korea, French Polynesia, along with to and from the overseas U.S. territory of American Samoa; and

(3)  Inter-island flights within the Hawaiian Islands.

(Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., at ¶ 19, ("Doane Decl."), ECF No. 378-2; Collective Bargaining Agreement ("CBA") at e.g., §1-23 ¶¶ 7-8, 10; at §2-7 ¶¶ FF, GG, HH, II, JJ, KK, CCC; §4-2C.1-3, attached as Ex. 1 to Def.'s Motion, ECF No. 378-10; Declaration of Kathleen Mainerd, Senior Manager, Defendants' South Pacific

Airport Operations ("Mainerd Decl.") at ¶ 3, attached to Pl.'s
Motion, ECF No. 378-4; Declaration of Ryan D. Thomas, Senior
Manager, Defendants' Labor Initiatives for Airport Operations
("Thomas Decl.") at ¶¶ 3, 5, 7, attached to Pl.'s Motion, ECF No.
378-5; Declaration of Jon Snook, Chief Operations Officer for
Def. Hawaiian Airlines, Inc. ("Snook Decl."), at ¶¶ 6-7, attached
to Def.'s Motion, ECF No. 378-7; Declaration of Plaintiff Robert
Espinosa at ¶¶ 6-10, 15, ("Espinosa Decl.") attached as Ex. 4 to
Pl.'s Opp., ECF No. 384-5).

The airline also operated cargo flights as a Federal
Contractor for the United States government.  (Deposition of Dan
Saiki at pp. 40-42 ("Saiki Depo."), attached as Ex. 8 to Def.'s
Motion, ECF No. 378-17; Declaration of Justin Doane attached to
Def.'s Reply at ¶ 6, ECF No. 385-1).

The airline operated various aircraft including the Airbus
330, the Boeing 767, the Airbus 321, and the Boeing 717.  (CBA at
Section 20 § 20-1, ¶ 3, ECF No. 378-10).

**Plaintiffs' Collective Bargaining Agreement**

Plaintiffs Espinosa and Saiki, as pilots for Defendant
Hawaiian Airlines, Inc., were subject to a Collective Bargaining
Agreement entitled:

> "Agreement Between Hawaiian Airlines, Inc. and the Airline
> Pilots in the Service of Hawaiian Airlines, Inc. as
> Represented by the Airline Pilots Association, International
> 2017 Pilots Agreement."

8

(Doane Decl. at ¶ 5, ECF No. 378-2; CBA attached as Ex. 1 to
Def.'s Motion, ECF No. 378-10).

The Collective Bargaining Agreement is commonly referred to
as the "CBA."  It was in effect from April 1, 2017 through July
1, 2022.  (Id.)

The Collective Bargaining Agreement or CBA governed the
working relationship between pilots, including Plaintiffs
Espinosa and Saiki, and the Hawaiian Defendants.  (Doane Decl. at
¶ 5, ECF No. 378-2).  The CBA sets forth the terms and conditions
of the pilots' employment, including seniority and scheduling.
(Id. at ¶¶ 8-11).

According to Defendants' Vice President for Labor Relations,
Justin Doane, seniority is a key factor in the airline industry
and the Pilots' flight schedules were determined through a
seniority-based bidding system created by the CBA.  (Id. at ¶¶ 9-
11).

Under the CBA, pilots are classified as "bid" or "reserve"
pilots.  (Id. at ¶ 12).  Each month, "bid pilots" request a set
schedule for the month, with specific routes, destinations, and
days off by indicating their preferences.  (Id. at ¶ 13).  The
most senior pilot is awarded his first choice and the next most
senior will receive his request based on what is remaining and so
on.  (Id.)

In contrast to a "bid pilot," a "reserve pilot" does not

9

request a set schedule each month but instead is required to
maintain a means of contact with crew scheduling and is on-call
for flight assignments.  (Id. at ¶ 15).

In addition, there is an Open Trip Scheduling List where
both bid pilots and reserve pilots are scheduled to work flights
in various groupings.  (Id. at ¶¶ 16-17; CBA at Section 22 at §
22-8 on "Scheduling Policy," ECF No. 378-10).  The scheduling and
assignment process is complex.  For example, pilots on the Open
Trip Scheduling List are assigned flights in order of nine
separate priorities that involve various factors including
seniority.  (Id.)

The seniority and bidding provisions of the CBA cover the
Hawaiian pilots' work assignments and awarding of bid routes,
scheduling of pilots on "runs" (including locations, dates,
duration, and layovers), and aircraft types.  (Doane Decl at ¶
11, ECF No. 378-2; CBA at Section 18 on "Seniority," Section 20
on "Filling Of Vacancies," Section 21 on "Preparation, Bidding, &
Awarding Of Runs," Section 22 on "Scheduling Policy, attached as
Ex. 1 to Def.'s Motion, ECF No. 378-10).

Seniority and bidding procedures also affect work
conditions, tasks, pay rates, and compensation.  (CBA at Section
3 on "Compensation," and Section 10 on "Hours of Service,"
attached as Ex. 1 to Def.'s Motion, ECF No. 378-10).

The Collective Bargaining Agreement contains a provision

mandating that any disputes concerning interpretation or
application of any of the terms of the CBA be resolved through
arbitration by the System Board of Adjustment whose decision is
final and binding on the parties as provided by the Railway Labor
Act, 45 U.S.C. § 151 et seq.  (Doane Decl. at ¶ 7, ECF No. 378-2;
CBA at Section 17, attached as Ex. 1 to Def.'s Motion, ECF No.
378-10).

**The Hawaiian Defendants' Vaccination Policy**

According to the Complaint, on August 9, 2021, in the midst
of the worldwide COVID-19 pandemic, the Hawaiian Defendants
announced a vaccination policy.  (Complaint at ¶ 43, ECF No. 1).
Plaintiffs allege that the Hawaiian Defendants required all of
their U.S.-based employees to receive a COVID-19 vaccine or
receive approval for exemptions based on religious or medical
reasons.  (Id. at ¶¶ 43, 54).

The Complaint asserts that on September 17, 2021, the
Hawaiian Defendants published the vaccination policy and required
proof of vaccination by January 30, 2022.  (Id. at ¶ 45).

The Hawaiian Defendants' employees were permitted to submit
requests for accommodation to the vaccination policy based on
their religious beliefs or disabilities.  (Declaration of Robin
Kobayashi, Senior Vice President of Human Resources at Defendant
Hawaiian Airlines, Inc., ("Kobayashi Decl.") at ¶ 4, attached to

11

Def.'s Motion, ECF No. 378-6).

A total of 71 unvaccinated pilots submitted accommodation requests to Defendants' vaccination policy.  (Declaration of Willard Jackson, Senior Director of Leave Management for Defendant Hawaiian Airlines, Inc. ("Jackson Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 378-3).

**<u>Plaintiff Espinosa</u>**

At the time of the Defendants' vaccination policy in 2021, Plaintiff Robert Espinosa was a First Officer pilot employed by Defendant Hawaiian Airlines, Inc.  (Declaration of Robert Espinosa ("Espinosa Decl.") at ¶ 2, attached as Ex. 4 to Pl.'s Opp., ECF No. 384-5).

Plaintiff Espinosa states that throughout 2020 and 2021 he bid for and received trips as a First Officer piloting the Airbus 330.  (<u>Id.</u> at ¶ 6).  Plaintiff Espinosa states that the only aircraft he has flown for the Hawaiian Defendants is an Airbus 330.  (<u>Id.</u> at ¶ 5).  Plaintiff asserts that in 2020 he flew both international and domestic routes for Defendants and that in 2021 he only flew domestic routes.  (<u>Id.</u> at ¶ 7).

Plaintiff Espinosa requested to be exempt from the vaccination policy based on his religious belief but his request was denied.  (Espinosa Decl. at ¶ 4, ECF No. 384-5).  Plaintiff was placed on leave without pay status between February and

12

November 2022.  (Id. at ¶¶ 3, 12).

Plaintiff returned to work for the Hawaiian Defendants when the vaccination policy was rescinded.  (Id. at ¶ 2, 3). Plaintiff remains employed as a First Officer for Defendant Hawaiian Airlines, Inc.  (Id.)

## **Plaintiff Saiki**

Plaintiff Dan Saiki was a Captain for Defendant Hawaiian Airlines, Inc. when the vaccination policy was announced in August 2021.  (Declaration of Dan Saiki at ¶ 2, attached as Ex. 7 to Pl.'s Opp., ECF No. 384-8).

Plaintiff Saiki states in his Declaration that he piloted multiple types of aircraft for the Hawaiian Defendants prior to the COVID-19 pandemic, but throughout 2020 and 2021 he bid for and received trips only on the Airbus 330 aircraft.  (Id. at ¶ 4-5).  Plaintiff Saiki asserts that in 2020 and 2021 he flew both international and domestic routes piloting the Airbus 330.  (Id. at ¶ 5).

Plaintiff Saiki's request for exemption from the Defendants' vaccination policy based on his religious beliefs was denied. (Id. at ¶¶ 3, 9).  Plaintiff Saiki alleges that he was forced to take an early retirement in December 2021 because he refused to comply with the Defendants' vaccination policy.  (Id.)

**Plaintiffs Espinosa and Saiki's Cause of Action**

On December 22, 2022, Plaintiffs Espinosa and Saiki filed a Complaint, along with seven other Plaintiffs, against the Hawaiian Defendants.  (Complaint, ECF No. 1).

Plaintiffs Espinosa and Saiki's only remaining cause of action is Count I, as follows:

> **COUNT I:**  Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Failure-To-Accommodate**

**The Hawaiian Defendants' Motion to Dismiss Pursuant To the Railway Labor Act**

The Hawaiian Defendants have filed a Motion for Dismissal as to Plaintiffs Espinosa and Saiki for lack of subject-matter jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review Plaintiffs Espinosa and Saiki's failure-to-accommodate causes of action because such claims are precluded from court jurisdiction pursuant to the Railroad Labor Act, 45 U.S.C. § 151, <u>et</u> <u>seq.</u>

**STANDARD OF REVIEW**

A plaintiff has the burden of proving that subject-matter jurisdiction exists.  <u>Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979).  The Court must

14

dismiss any claims for which it lacks subject-matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1); Leeson v. Transamerica Disability Income Plan, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction.  Id.  A facial challenge therefore mirrors a traditional motion to dismiss analysis.  The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor."  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  No presumptive truthfulness attaches to the Complaint's allegations.  Id.  The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court" indicating that subject-matter jurisdiction is lacking.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The burden then shifts to "the party opposing the motion

15

[to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction." Id. Failure to present suitable evidence establishing subject-matter jurisdiction necessitates dismissal. Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction pursuant to the Railway Labor Act is properly considered as a motion bringing a factual attack on subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Soper v. United Airlines, Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and other relevant evidence to determine whether it has subject-matter jurisdiction pursuant to the Railway Labor Act. Hinant v. American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5, 2024).

**ANALYSIS**

## I.   The Railway Labor Act

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., was enacted to provide a comprehensive framework for resolving labor disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the airline industry. Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248 (1994); see 45 U.S.C. § 181.

16

The RLA addresses three kinds of labor disputes:

(1)   major disputes;

(2)   minor disputes; and

(3)   representation disputes.

Haralson v. United Airlines, Inc., 224 F.Supp.3d 928, 934 (N.D. Cal. 2016).

First, "major disputes" relate to the formation of collective bargaining agreements or the efforts of the parties to secure rights under the collective bargaining process.  Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989).  Major disputes look to the acquisition of rights for the future, and they do not involve disputes about rights that were already secured in existing contracts.  Id.  Major disputes require the parties to undergo lengthy bargaining, mediation, and arbitration processes.  Id.

Second, "minor disputes" seek to enforce existing contractual rights as embodied in an existing collective bargaining agreement.  Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc). Minor disputes require the existence of a collective bargaining agreement already in effect and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945).

17

The RLA mandates that minor disputes are subject to an exclusive dispute resolution mechanism for the prompt and orderly settlement of such claims. <u>Norris</u>, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major dispute is that a minor dispute requires interpretation of an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights. <u>Id.</u> at 265. Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement. <u>Id.</u>

<u>Third</u>, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and selection of the employee representative for collective bargaining. <u>Herrera v. Command Sec. Corp.</u>, 837 F.3d 979, 989 (9th Cir. 2016). Representation disputes are within the exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims. <u>Id.</u>

## II. Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes about the contractual rights set forth in an existing collective bargaining agreement between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit. <u>See</u> 45 U.S.C. § 184. Courts lack subject-matter jurisdiction

18

over minor disputes within the meaning of the RLA.  <u>Norris</u>, 512
U.S. at 253.

> **A.    There Is A Two-Step Test To Discern If A Dispute Over A
> Collective Bargaining Agreement Is Precluded From Court
> Jurisdiction**

Courts in the Ninth Circuit apply a two-step test to
evaluate if a plaintiff's claim is preempted or precluded from
court review by the RLA.  <u>Columbia Exp. Terminal, LLC v. Int'l
Longshore & Warehouse Union</u>, 23 F.4th 836, 841-42 (9th Cir.
2022).

<u>First</u>, the court examines if the plaintiff's claim seeks
purely to vindicate a right or duty created by the collective
bargaining agreement itself.  <u>Id.</u> at 843.  If so, the claim is
preempted or precluded from review.  If not, the court proceeds
to the second step.

<u>Second</u>, even if the claim does not seek to vindicate a right
created by the CBA, the court evaluates if the plaintiff's claim
is substantially dependant on analysis and interpretation of the
CBA.  <u>Id.</u>  If the claim does require analysis and interpretation
of the CBA, the claim is preempted or precluded from review.

> **B.    Claims That Require Interpretation Of An Existing
> Collective Bargaining Agreement Are Precluded From
> Court Review Under The RLA**

Under step two, a court is without subject-matter

jurisdiction to review a plaintiff's claim that concerns
interpretation of the "duties and rights created or defined by
the collective bargaining agreement."   Alaska Airlines, Inc. v.
Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting
Norris, 512 U.S. at 258).   Such disputes must be resolved only
through the RLA mechanisms, and not by a court.   Id.

The RLA exclusivity provision was enacted to ensure that
disputes regarding existing collective bargaining agreements are
governed by a uniform set of principles rather than conflicting
substantive interpretations under competing legal systems in the
federal and state courts.   Schurke, 898 F.3d at 919.

### C. Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Preempted Or Precluded From Court Review

Consultation of the collective bargaining agreement alone is
insufficient to trigger application of the RLA.   Livadas v.
Bradshaw, 512 U.S. 107, 124 (1994).   In order to qualify as a
minor dispute pursuant to the RLA, the dispute must require
interpretation of the terms of a collective bargaining agreement.
Norris, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the
RLA if there is no disagreement as to the meaning of all of the
terms of the collective bargaining agreement.   Schurke, 898 F.3d
at 927.   "Reliance on and reference to CBA-established or CBA-

defined terms of employment do not make for a CBA dispute if there is no disagreement about the meaning or application of any relevant CBA-covered terms of employment." Id.

For example, a claim for damages dependent on a CBA's undisputed wage provisions are not preempted by the RLA because the claim is not dependent on interpretation of a CBA term. Livadas, 512 U.S. at 125.

## III. Plaintiffs Espinosa and Saiki's Failure-To-Accommodate Claims Require Interpretation Of The Existing Collective Bargaining Agreement

The Hawaiian Defendants assert that Plaintiffs Espinosa and Saiki's failure-to-accommodate claims pursuant to Title VII of the Civil Rights Act are precluded from review because they involve a "minor dispute" about the terms of the existing collective bargaining agreement.

The Hawaiian Defendants argue that Plaintiffs' claims regarding the availability of accommodations from their vaccine policy and whether the airline faced undue hardship require interpretation of various provisions of the existing CBA.

### A. Plaintiffs Espinosa and Saiki's Requests For Exemption From Vaccination Require Interpretation Of The Seniority, Bidding, Training, And Vacancy Provisions Of The Collective Bargaining Agreement

The United States Supreme Court ruled in Trans World

21

Airlines, Inc. v. Hardison, 432 U.S. 63, 67 (1977), that it was
an undue hardship to force an employer to violate an existing
collective bargaining agreement in order to provide an employee
with his requested accommodation.  See Groff v. DeJoy, 600 U.S.
447, 470 (2023) (clarifying that undue hardship requires more
than de minimis cost).

The undue hardship analysis must take into account all
relevant factors, including the particular accommodations at
issue and their practical impact in light of the nature, size,
and operating cost of an employer.  Groff, 600 U.S. at 471.
There is undue hardship on an employer "where a variance from a
bona fide seniority system is necessary in order to accommodate
an employee's religious practices when doing so would deny
another employee his or her job or shift preference guaranteed by
that system."  29 C.F.R. § 1605.2(e)(2).

In the context of vaccine mandates during the COVID-19
pandemic, the Ninth Circuit Court of Appeals explained in
Petersen v. Snohomish Reg'l Fire & Rescue, 150 F.4th 1211, 1220
(9th Cir. 2025), that it is appropriate to examine: (1) health
and safety costs, (2) operational burdens, and (3) financial
burdens on the employer.  The undue hardship analysis
specifically requires consideration of potential operational
disruption caused by accommodations to large numbers of employees
seeking accommodations at the same time.  Id.

22

### 1.    Interpretation Of Various CBA Terms Is Required To Evaluate Plaintiffs' Claims

Operational burdens are central to the undue hardship defense raised by the Hawaiian Defendants.  The Hawaiian Defendants argue that accommodating all 71 of the pilots that requested exemption from vaccination would have substantially disrupted not only their business operations but would have violated numerous terms of the existing CBA, including its seniority provisions, process bidding for routes, and scheduling of pilots.  See Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

In 2020 and 2021, Plaintiffs Espinosa and Saiki were pilots who flew exclusively on the Defendants' Airbus 330 aircraft. (Espinosa Decl. at ¶¶ 5-6, ECF No. 384-5; Saiki Decl. at ¶ 5, ECF No. 384-8).  Plaintiffs Espinosa and Saiki had specifically bid for their routes flown on the Airbus 330 aircraft.  (Id.)

Piloting an Airbus 330 aircraft provided for the highest hourly rate of pay pursuant to the terms of the CBA.  (See CBA Section 3, Compensation, at §3-4, ECF No. 378-10).  Piloting an Airbus 330 aircraft also determined the routes flown and other terms of employment because not all aircraft were flown on all routes.  (CBA Section 2, Definitions at § 2FF-II, Section 20, Filling of Vacancies at §20-1A, ECF No. 378-10; Snook Decl. at ¶ 4, ECF No. 378-7).  The types of routes flown also dictated other

23

employment terms.  For example, expenses were paid at a higher
rate for "International Flying" rather than "Interisland Flying."
(See CBA Section 5, Expenses at §5-1, ECF No. 378-10).  Piloting
an Airbus 300 aircraft also provided priority for filling of
vacancies pursuant to the CBA.  (See CBA Section 20, Vacancies at
§20-1, ¶A.3, ECF No. 378-10).

The questions raised by Plaintiffs' failure-to-accommodate
claims require interpretation of the CBA terms because the
Parties dispute what accommodations were available to Plaintiffs
Espinosa and Saiki based on their interpretations of several
terms in the CBA.

The Hawaiian Defendants assert that deciding what
accommodations "could be feasible would necessarily entail
interpreting...seniority, filling of vacancies, bidding, and
awarding of runs provisions of the CBA."  (Doane Decl. at ¶ 22,
attached to Def.'s Motion, ECF No. 378-2; see CBA Section 2,
Definitions; Section 3, Compensation; Section 18, Seniority;
Section 20, Filling of Vacancies; Section 21, Preparation,
Bidding & Awarding of Runs; Section 22, Scheduling Policy,
attached as Ex. 1 to Def.'s Motion, ECF No. 378-10).

The Hawaiian Defendants argue that complications in
assignments arose on numerous international routes from Honolulu
during the COVID-19 pandemic.  Defendants assert that they were
aware that the governments of Australia, American Samoa, French

Polynesia, and Japan implemented certain restrictions for
unvaccinated travelers in their jurisdictions.  (See Public
Health (COVID-19 Air Transportation Quarantine) Order (No 4)
2021, issued by the New South Wales Government, attached as Ex. 2
Def.'s Motion, ECF No. 378-11; Hawaiian Airlines Alert 20-12 re:
American Samoa, dated September 10, 2021, attached as Ex. 4 to
Def.'s Motion, ECF No. 378-13; Hawaiian Airlines Alert 20-11 re:
French Polynesia, dated August 2, 2021, attached as Ex. 5 to
Def.'s Motion, ECF No. 378-14; Health Alert - U.S. Embassy Tokyo
by U.S. Mission Japan, dated September 29, 2021, attached as Ex.
6 to Def.'s Motion, ECF No. 378-15).

The Hawaiian Defendants assert that the actual and potential
foreign restrictions created a complicated, shifting legal
landscape during the COVID-19 pandemic and that they faced
unpredictable operational concerns when scheduling pilots.  (COO
of Hawaiian Airlines, Inc. Snook Decl. at ¶¶ 5-8, ECF No. 378-7;
see Doane Decl. at ¶¶ 19-24, ECF No. 378-2; see also Mainerd
Decl. at ¶ 3, ECF No. 378-4; Thomas Decl. at ¶¶ 3, 5, 7, ECF No.
378-5).

Justin Doane, Defendants' Vice President of Labor Relations,
points to numerous provisions of the CBA requiring interpretation
in order to evaluate the availability of certain accommodations
and the potential undue hardship to the Hawaiian Defendants
during the pandemic, specifically:

25

| CBA Provision Topic: | CBA Provision Number and Text |
|---|---|
| Seniority | 18.A Seniority as a Pilot shall be based upon the length of service as a Pilot with the Company.... Seniority shall govern all pilots in case of...their selection of vacancies and runs, and all other rights, privileges and opportunities accorded to pilots under this Agreement. |
| Filling of Vacancies | 20.A.3 All vacancies shall ... be filled by status, equipment and domicile in accordance with this Section and Section 18 (Seniority) |
| Preparation, Bidding & Awarding of Runs | 21.C.1 Each pilot shall, in seniority, be awarded his or her preferences for the month. |
| Open Trip Scheduling List (OTSL) | 22.G.3 Pilots on the OTSL are assigned or awarded a flight grouping(s) as follows ... h. ... to recalled bid line pilots ("junior [m]anning") in reverse order of seniority who are legal to accept the award but must be removed from a flight grouping(s) or reserve day to ensure all contractual and FAR legality (200% pay per Paragraph H of this Section and Section 4.N) |

(Doane Decl. at ¶ 11, ECF No. 378-2).

The Hawaiian Defendants assert that:

determining whether adjusting pilot schedules to accommodate unvaccinated pilots by not scheduling them for international flights to locations with restrictions on unvaccinated pilots would require an interpretation of the CBA to determine whether the CBA grants seniority rights to pilots with regard to specific destinations and whether, and to what extent, more senior pilots' bidding preferences would be impacted by accommodating unvaccinated pilots to not fly to those international locations during the pandemic.

(Id. at ¶ 23).

26

Plaintiffs disagree with the Hawaiian Defendants'
interpretation of the CBA.  Plaintiffs rely on their own
interpretation of the terms of the CBA to argue that granting
their accommodation requests and their schedule preferences would
not have violated the CBA terms.

### 2. The Parties' Disputes About The Interpretation Of Numerous CBA Terms Preclude Jurisdiction

The questions regarding the availability of reasonable
accommodations and undue hardship pursuant to the terms of the
CBA are the exact types of disputes that the Court lacks subject-
matter jurisdiction to review.

In evaluating preclusion pursuant to the RLA, the analysis
is whether a provision of the CBA could "arguably" dispose of a
claim or defense.  <u>Schurke</u>, 898 F.3d at 924.  The analysis is not
whether the terms of the CBA would actually permit the
accommodation or would actually cause undue hardship.  Instead,
the analysis hinges on whether the trier of fact would arguably
need to resolve disagreements about the terms of the CBA to
evaluate Plaintiffs' failure-to-accommodate claims and the
Defendants' undue hardship defense.  <u>Id.</u>

Here, there are numerous disputes about the CBA's terms, the
interplay within the various Sections of the CBA, and the meaning
and applicability of various provisions.

Plaintiffs claim that they could have adjusted their own

27

schedules without implicating or altering any of their own CBA rights.  Plaintiffs, however, ignore that large numbers of unvaccinated pilots and other flight crew had submitted accommodation requests, which is a necessary factor in conducting the undue hardship analysis pursuant to <u>Petersen v. Snohomish Reg'l Fire & Rescue</u>, 150 F.4th 1211, 1220 (9th Cir. 2025).

Plaintiffs also ignore the various local, state, federal, and international laws that were at play (and were consistently evolving) during the pandemic, including the Federal Contractor Mandate, local and international travel restrictions, and quarantine requirements.  The Hawaiian Defendants were required to consider the potential operational disruption that may have been caused given the various laws, regulations, and protocols at play with the large numbers of accommodations requests.

The Hawaiian Defendants argue that accommodating the 71 unvaccinated pilots' requests to be exempt from their vaccination policy, including Plaintiffs Espinosa and Saiki, would have displaced the bids of other Hawaiian pilots and impinged on their seniority rights in violation of the terms of the CBA.

The Plaintiffs disagree.  The Plaintiffs argue that under their interpretation of the CBA, the Hawaiian Defendants have the authority to ignore the seniority provisions and order specific pilots to bid for certain flights.

Disagreements about the interpretation, scope, or

28

applicability of specific terms of an existing CBA are the exact
types of disputes that are subject to preclusion pursuant to the
RLA.  Hinant, 2024 WL 4988391, at *3 (citing Int'l Ass'n of Sheet
Metal Air, Rail, & Transp. Workers v. Union Pac. R.R. Co., 2019
WL 6499212 *10 (C.D. Cal. July 25, 2019); Pritchard v. American
Airlines, Inc., 708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

The Parties also dispute whether the CBA terms would have
permitted the Hawaiian Defendants to have unilaterally forced
Plaintiffs Espinosa and Saiki to fly on aircraft other than the
Airbus 330 which may have resulted in different routes, lesser
pay, and additionally disrupted the seniority and bidding
provisions.  Various terms of the CBA would certainly be
implicated in such a "self-help" accommodation scheme of
potentially bidding around certain foreign destination for an
indefinite period of time.

The Hawaiian Defendants argue that allowing unvaccinated
pilots to voluntarily opt out of Airbus 330 flights entirely and
switch to other aircraft that flew only domestic routes or inter-
island flights would have required interpretation of the CBA due
to the seniority implications of such changes and the ripple
effects that they would have created across all of Defendants'
training resources.  (Doane Decl. at ¶¶ 8-10, ECF No. 378-2).
Defendants assert that changing to a new aircraft requires
training for the pilot and such accommodations implicate the

29

terms of the CBA regarding training, vacancies, and bidding.  The
Hawaiian Defendants assert that their "ability to award and train
the unvaccinated pilots on the Boeing 717 fleet so that they
could keep flying after January 4, 2022, would have required
Hawaiian to create additional B-717 vacancies in light of the
total number of unvaccinated pilots who requested
accommodations."  (Def.'s Motion at p. 12, ECF No. 385; see Doane
Decl. at ¶¶ 20-24, ECF No. 378-2).

　　　The Court agrees with the Hawaiian Defendants that the
questions raised by Plaintiffs' accommodation claims require
interpretation of the CBA terms.  Interpretation of the CBA is
required to determine if Defendants could have prioritized
unvaccinated pilots' bidding and training requests over the
bidding and training of vaccinated pilots, and whether the CBA's
terms concerning seniority rights, route assignments, and job
duties and titles would allow for such accommodations.  The
Parties' disputes must be resolved by the Systems Board of
Adjustment Arbitrator as provided in Section 1, Paragraph H in
the CBA.  (CBA at §1-H, Expedited Arbitration, ECF No. 378-10).

　　　Interpretation of the CBA is also required with respect to
the question regarding whether the Hawaiian Defendants could have
granted an accommodation to Plaintiffs Espinosa and Saiki alone
or whether the Defendants would have been required to provide the
same accommodation to the other 69 unvaccinated pilots who also

requested exemption from the vaccine policy.  (Jackson Decl. at ¶ 4, ECF No. 378-3).

These disputes about the CBA require interpretation of numerous provisions of the CBA and are necessary to resolve Plaintiffs' failure-to-accommodate claims.  The disputes regarding the terms of the CBA directly impact the evaluation of the reasonable accommodations available and the undue hardship defense.  <u>Hardison</u>, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

**B.   Plaintiffs' Failure-To-Accommodate Claims Require More Than Mere Reference To The Terms Of The Collective Bargaining Agreement**

Courts have ruled that a plaintiff's claim is not precluded by the RLA when the court need simply review a term in a CBA or read the provisions of a CBA to determine its basic provisions. <u>Burnside v. Kiewit Pac. Corp.</u>, 491 F.3d 1053, 1060 (9th Cir. 2007); <u>Angeles v. U.S. Airways, Inc.</u>, 2013 WL 622032, *6 (N.D. Cal. Feb. 19, 2013); <u>but</u> <u>see</u> <u>McKinley v. Southwest Airlines Co.</u>, 680 Fed. Appx. 522, 524-25 (9th Cir. 2017) (finding rate of overtime pay required interpretation of the CBA because plaintiff disputed the amount due under the terms of the CBA).

Here, Plaintiffs' failure-to-accommodate claims do not merely require the Court to look to the CBA or reference its terms.  Instead, Plaintiffs' failure-to-accommodate claims require interpretation of the complex Collective Bargaining

31

Agreement and various provisions governing scheduling, bidding, training, and seniority for pilots. Plaintiffs' failure-to-accommodate claims are "inextricably intertwined" with the CBA's terms. Edelman v. W. Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989).

Interpretation of the CBA is also required to determine the effect that past practice, usage, and custom have on the terms in the CBA.

In Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n, 491 U.S. 299, 311 (1989), the United States Supreme Court ruled that interpretation of collective bargaining agreements often depends on practice, usage, and custom. Interpretation of CBA terms based on practice, usage, and custom is one of the primary reasons that the RLA dictates that CBA interpretation must be before a specialized arbitrator and not the court system.

The United States Supreme Court ruled that these types of disputes cannot be reviewed by the courts because the RLA precludes review over claims where the parties disagree about the effect of past practices on the interpretation of CBA terms. Consol. Rail Corp., 491 U.S. at 320 (holding that the court lacked jurisdiction to review the employees' claims because there were disputes about the effect of the employer's past practices regarding drug testing and whether its drug testing practices were justified under the terms of the CBA).

32

Here, Plaintiffs cite to a letter from the Air Line Pilots Association, Inc. ("ALPA") to argue that past practices, usage, policy, and custom would allow for the accommodations Plaintiffs requested based on their own interpretation of the terms of the CBA.  This is a central dispute in this case.  Defendants disagree with Plaintiffs' interpretation and argue that past practice, usage, policy, and custom instead support the airline's interpretation of the CBA, not the pilots' interpretation.  As Defendants point out, the letter specifically states that the "ALPA cannot, however, agree to waive [United Pilot Association] provisions as to accommodations that would adversely the [sic] affect the contractual rights of other pilots."  (ALPA Letter for Sambrano v. United Airlines, attached as Ex. 9 to Pl.'s Opp., ECF No. 384-10).

The effect, if any, that the ALPA letter has on the interpretation of the CBA at issue in this case is a matter for the Specialized Arbitrator.  The past practices, usage, policy, and custom in the industry and how they affect interpretation of the CBA provisions on flight scheduling and seniority as related to Plaintiffs' requests for exemption from vaccination are undoubtedly in dispute.  Consol. Rail Corp., 491 U.S. at 320; see also Hinant, 2024 WL 4988391, at *3; Flanary v. USAIR, Inc., 1997 WL 364090, *3 (S.D. Cal. Mar. 27, 1997) (finding the flight attendant's claim was preempted under the RLA because of

33

questions about the effect of practice, custom, and usage on the
existing collective bargaining agreement, even though no specific
section of the CBA directly addressed plaintiff's claim).

These disputes based on past practices and custom go to the
heart of why the Court lacks jurisdiction over the matter.  The
purpose of the RLA's exclusivity provision is to ensure
appropriate consideration of past practices, usage, policy, and
custom be considered in analyzing and interpreting collective
bargaining agreements.  The CBA requires arbitration of such
claims before a Systems Board of Adjustment Arbitrator to allow
for proper evaluation of past practices, usage, policy, and
custom with respect to how the terms in the CBA are understood
and used in the industry.  (CBA at §1-H, Expedited Arbitration,
ECF No. 378-10).

### C.   Plaintiffs' Failure-To-Accommodate Claims In The Context Of The COVID-19 Pandemic

Other Courts have ruled similarly with nearly identical
facts.  In Odell v. Kalitta Air, LLC, 107 F.4th 523, 532 (6th
Cir. 2024), the Sixth Circuit Court of Appeals recently ruled
that a group of pilots' failure-to-accommodate claims were
precluded from court review pursuant to the RLA because the
claims necessarily implicated interpretation of the CBA's terms
regarding the pilots' scheduling and seniority.

In Odell, the plaintiff pilots were represented by some of

34

the same counsel as in this case.  The facts are very similar.
In Odell, the plaintiff pilots elected not to vaccinate for
COVID-19 and requested exemptions from their employer air
carrier's mandatory vaccine requirement imposed during the global
pandemic.  Id. at 531.  The plaintiff pilots proposed an
accommodation of limiting their flying routes to countries that
did not impose vaccine requirements.  Id.  The employer denied
their requests for exemption and accommodations.  Id.

The pilots sued their air carrier employer, asserting
various claims including Title VII and ADA claims for failure-to-
accommodate the unvaccinated pilots based on their religious
beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-
accommodate claims were precluded from court review pursuant to
the RLA.  Id.

On appeal, the Sixth Circuit Court of Appeals affirmed.  Id.
at 531-32.  The Appellate Court ruled that the plaintiffs'
failure-to-accommodate claims required interpretation of the
existing collective bargaining agreement, specifically with
respect to seniority, bidding, and scheduling of the pilots'
routes.  Id.  The Sixth Circuit Court of Appeals ruled that the
courts lacked subject-matter jurisdiction over the pilots'
failure-to-accommodate claims and that such claims were precluded
from review pursuant to the RLA.  Id. at 531-32.

35

Here, the facts are nearly identical.  Plaintiffs Espinosa
and Saiki requested that the Hawaiian Defendants allow them to
fly unvaccinated and to fly only on specified routes.  Just as in
Odell, there are disputes as to whether Plaintiffs Espinosa and
Saiki's requested accommodations require interpretation of the
terms of the CBA regarding seniority and bidding provisions.

Plaintiffs' attempts to distinguish this case from Odell are
not persuasive.  As explained in the lower court decision, when a
potential accommodation could interfere with a seniority scheme
set forth in a CBA, it is necessary to interpret the applicable
CBA because the agreement itself both creates and defines the
scope of the employees' seniority rights.  Odell v. Kalitta Air,
LLC, 678 F.Supp.3d 904, 918 (E.D. Mich. 2023).

Just as in Odell, Plaintiffs Espinosa and Saiki's failure-
to-accommodate claims require interpretation of the existing CBA
with respect to seniority, bidding, vacancies, and scheduling.
In evaluating their claims, the Court would need to determine
whether the CBA permitted Plaintiffs Espinosa and Saiki to bid
around certain routes.  The Court lacks jurisdiction over such
questions pursuant to the RLA, because interpretation of the CBA
is required to resolve the claims.  See Stanley v. ExpressJet
Airlines, Inc., 808 Fed. Appx. 351, 356 (6th Cir. 2020).

Evaluation of the type of accommodations that were available
to the Plaintiffs in the midst of the COVID-19 pandemic is

36

precluded from court review pursuant to the RLA.  These claims require interpretation of terms in the existing Collective Bargaining Agreement and such interpretations must be conducted before the Systems Board of Adjustment Arbitrator as agreed to in the CBA.

Other Federal District Courts have ruled that similar failure-to-accommodate claims against transportation carriers in the context of the COVID-19 pandemic are precluded from court review.  The District Courts have found that plaintiffs' failure-to-accommodate claims implicate CBA provisions regarding scheduling, bidding, routes, and compensation.  Such claims require interpretation of collective bargaining agreements for which the courts lack subject-matter jurisdiction.  Whitford v. Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y. Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024 WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); see also Saliba v. American Airlines, Inc., 2022 WL 4131485, at *5 (D. Ariz. Sept. 12, 2022).

The Court agrees with the reasoning in Odell, 107 F.4th at 532, Whitford, 2024 WL 4216050, at *6 , and Grindling, 2024 WL 4164234, at *3.  Plaintiffs' failure-to-accommodate claims are precluded from court review pursuant to the RLA.

D.   **Plaintiffs' Claims Are Distinguishable From Intentional Discrimination Causes Of Action**

Plaintiffs primarily rely on cases that have ruled that intentional discrimination causes of action are generally not precluded from court review by the RLA.  (Pl.'s Opp. at pp. 17-20, ECF No. 384).

In Felt v. Atchison, Topeka & Santa Fe Ry. Co., 60 F.3d 1416, 1420 (9th Cir. 1995), as a matter of first impression, the Ninth Circuit Court of Appeals ruled that Title VII religious discrimination claims are generally not precluded by the RLA because these types of claims typically exist entirely independent of the collective bargaining agreement and usually do not require interpretation of CBA terms.  See also Saridakis v. United Airlines, 166 F.3d 1272, 1277 (9th Cir. 1999) (finding federal disability discrimination claim did not require interpretation of CBA).

Here, Plaintiffs' causes of action in Count I, however, are not intentional discrimination claims.  Rather, Count I is premised solely on Defendants' alleged failure to provide a requested accommodation.

There is no intentional discrimination claim.  Plaintiffs have brought only failure-to-accommodate claims where they have placed the interpretation of multiple provisions of the Collective Bargaining Agreement in dispute.  See Sjoberg v.

38

United Airlines, Inc., 2024 WL 4219736, at *4 (S.D. Tex. Sept. 17, 2024), holding that the RLA bars court review of discrimination claims where "Plaintiff puts interpretations of provisions of the [collective bargaining agreement] at the center of this dispute").

The questions here concerning the availability of the Plaintiffs' requested accommodations and the evaluation of undue hardship based on disputed interpretations of the seniority, bidding, and vacancy provisions distinguish Plaintiffs' causes of action from Felt and Norris.

## IV.  Plaintiffs' Request For Jurisdictional Discovery And For Leave To Amend The December 22, 2022 Complaint

### A.    Jurisdictional Discovery Is Not Warranted

In their Opposition, Plaintiffs Espinosa and Saiki request jurisdictional discovery for the first time, despite the discovery deadline being closed for more than six months since March 14, 2025.  (Pl.'s Opp. at p. 25, ECF No. 384; see Minute Order, ECF No. 182).

Plaintiffs have not established good cause to amend the scheduling order to allow for additional discovery.  Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992) (explaining that good cause is required to amend the Rule 16 scheduling order).  Jurisdictional discovery is not warranted.

The Ninth Circuit Court of Appeals has explained that it is

not for the courts to determine whether a claim actually violates
a term of the collective bargaining agreement.  The task of the
Court is merely to determine if interpretation of the CBA is
required to adjudicate a plaintiff's claim or whether a provision
in a CBA arguably disposes of a plaintiff's claim.  Schurke, 898
F.3d at 924.  The question before the Court is the legal question
of whether the applicable Collective Bargaining Agreement
requires interpretation in the context of Plaintiffs' requested
accommodations and the undue hardship standard.  The Court finds
that the CBA requires interpretation and jurisdictional discovery
will not alter the determination.

**B.    Leave To Amend The Complaint Is Not Warranted**

In their Opposition, Plaintiffs Espinosa and Saiki also
request leave to amend the December 22, 2022 Complaint to add a
claim for intentional discrimination.  (Pl.'s Opp. at p. 26, ECF
No. 384).

Plaintiffs' request for leave to amend the Complaint is
untimely.  The Complaint in this case was filed nearly three
years ago on December 22, 2022.  The deadline for seeking
amendment to the Complaint closed more than two years ago on
August 8, 2023.  The Rule 16 Scheduling Order has been continued
and altered numerous times.  The Court has previously denied
Plaintiffs' request to reopen the deadline and amend the

Complaint due to Plaintiffs' lack of diligence.

Plaintiffs' counsel has been aware of the potential applicability of the RLA in this case since well before the filing of Defendants' Motion, for which Defendants were given leave of Court. Plaintiffs' counsel, John C. Sullivan, was counsel for plaintiffs in <u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024), cited above, which was argued on March 21, 2024, and decided by the Sixth Circuit Court of Appeals on July 9, 2024.

Plaintiffs characterize Defendants' RLA Motion as "late-filed," but defenses based on lack of subject-matter jurisdiction, such as preclusion under the RLA, can be raised at any time and can never be waived or forfeited by the parties. <u>See</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006); <u>Pearson v. Northwest Airlines, Inc.</u>, 659 F.Supp.2d 1084, 1088 n.3 (C.D. Cal. 2009).

Plaintiffs have not established good cause required to amend the scheduling order to assert a new cause of action after nearly three years of litigation. <u>Johnson</u>, 975 F.2d at 608 (explaining that a plaintiff must first establish good cause pursuant to Fed. R. Civ. P. 16(b) to amend the scheduling order prior to seeking amendment of a pleading pursuant to Fed. R. Civ. P. 15(a)).

## **CONCLUSION**

Defendants' Motion for Dismissal for Lack of Subject-Matter Jurisdiction Against Plaintiffs Espinosa and Saiki (ECF No. 378) is **GRANTED.**

Plaintiffs' request for jurisdictional discovery is **DENIED.**

Plaintiffs' request to amend the Complaint is **DENIED.**

Count I in the Complaint (ECF No. 1) as to Plaintiffs Espinosa and Saiki is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

DATED: December 10, 2025, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Riki O'Hailpin; Nina Arizumi; Robert Espinosa; Erwin Young; Puanani Badiang; Sabrina Franks; Ronald Lum; Dan Saiki; Brandee Aukai vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00532 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AGAINST PLAINTIFFS SAIKI AND ESPINOSA (ECF No. 378)**