IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RIKI O'HAILPIN; NINA ARIZUMI; ROBERT ESPINOSA; ERWIN YOUNG; PUANANI BADIANG; SABRINA FRANKS; RONALD LUM; DAN SAIKI; BRANDEE AUKAI, | ) ) ) ) ) ) | CIV. NO. 22-00532 HG-WRP |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| HAWAIIAN AIRLINES, INC.; HAWAIIAN HOLDINGS, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AGAINST PLAINTIFFS O'HAILPIN AND AUKAI (ECF No. 383)**

Plaintiffs Riki O'Hailpin and Brandee Aukai, along with seven other individuals, have filed suit against Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. ("Hawaiian Defendants").

Plaintiffs O'Hailpin and Aukai are employed as flight attendants for Defendant Hawaiian Airlines, Inc.

In August 2021, the Hawaiian Defendants implemented a mandatory vaccination policy for COVID-19 when the world was impacted by the COVID-19 global pandemic.

Plaintiffs O'Hailpin and Aukai requested to be exempt from the Hawaiian Defendants' COVID-19 vaccination policy based on

1

their religious beliefs.

Plaintiff O'Hailpin also submitted a request to be exempt from the COVID-19 vaccination policy based on her medical condition.

The Hawaiian Defendants denied Plaintiffs O'Hailpin and Aukai's requests for exemption from their vaccination policy.

Plaintiff O'Hailpin was placed on unpaid leave for an unspecific period of time, but returned to work in November 2022. Plaintiff Aukai elected to be vaccinated rather than be placed on unpaid leave.

In December 2022, Plaintiffs O'Hailpin and Auki, along with seven others, filed the Complaint before the Court.  Plaintiffs O'Hailpin and Aukai claim the Hawaiian Defendants failed to reasonably accommodate their religious beliefs in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff O'Hailpin also claims the Hawaiian Defendants failed to reasonably accommodate her medical condition in violation of the Americans With Disabilities Act of 1990.

The Hawaiian Defendants assert that it would have caused undue hardship to accommodate the Plaintiff flight attendants' requests for exemption.

The Hawaiian Defendants filed a Motion to Dismiss based on lack of subject-matter jurisdiction as to Plaintiffs O'Hailpin and Aukai's religious accommodation claims and as to Plaintiff

O'Hailpin's disability accommodation claim.  The Hawaiian Defendants assert that Plaintiffs O'Hailpin and Aukai's Title VII failure-to-accommodate claims and Plaintiff O'Hailpin's ADA failure-to-accommodate claim require interpretation of the Collective Bargaining Agreement that applied to the two Plaintiffs as flight attendants at the time they sought exemption from the vaccination policy.

The Hawaiian Defendants argue that the Court may not review Plaintiffs O'Hailpin and Aukai's claims due to the jurisdictional limitations set forth in the Railway Labor Act, 45 U.S.C. §§ 181-188 ("RLA").  The RLA requires claims that involve interpretation of collective bargaining agreements for transportation workers to be resolved only through the RLA's internal dispute-resolution processes.  See 45 U.S.C. § 184.

Defendants' Motion for Dismissal for Lack of Subject-Matter Jurisdiction as to Plaintiffs O'Hailpin and Aukai (ECF No. 383) is **GRANTED.**

Count I in the Complaint (ECF No. 1) as to Plaintiffs O'Hailpin and Aukai is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

Count IV in the Complaint (ECF No. 1) as to Plaintiff O'Hailpin is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

3

## PROCEDURAL HISTORY

On December 22, 2022, Plaintiffs O'Hailpin and Aukai and seven other individual Plaintiffs filed the Complaint. (ECF No. 1).

On August 14, 2023, Plaintiffs filed a Motion to Certify Classes and Appoint Counsel. (ECF No. 50).

On December 12, 2023, District Judge Otake issued an ORDER DENYING PLAINTIFFS' MOTION TO CERTIFY CLASSES AND APPOINT COUNSEL. (ECF No. 101).

On January 18, 2024, the case was reassigned from Judge Otake to Judge Gillmor. (ECF No. 103).

On February 19, 2025, Defendants filed a Motion to Bifurcate. (ECF No. 176).

On February 20, 2025, the Court held a Status Conference. (ECF No. 178).

On March 5, 2025, the Court held another Status Conference and a hearing on Defendants' Motion to Bifurcate. (ECF No. 190).

On March 19, 2025, Defendants filed a Motion for Partial Dismissal as to Plaintiff Nina Arizumi. (ECF No. 197).

On April 7, 2025, the Court held a hearing on the Parties' Joint Statement Regarding Severing Trials. (ECF No. 210).

On May 6, 2025, the Court issued an Order to Show Cause Why Count II For Disparate Impact Should Not Be Dismissed. (ECF No. 253).

4

Also on May 6, 2025, the Court issued an ORDER GRANTING
DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S
MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AS
TO COUNTS I AND IV FOR PLAINTIFF NINA ARIZUMI.  (ECF No. 254).

On May 7, 2025, the Court issued an ORDER GRANTING DEFENDANT
HAWAIIAN AIRLINES, INC.'S MOTION TO BIFURCATE.  (ECF No. 257).

On May 9, 2025, the Court held a Status Conference.  (ECF
No. 276).

On May 29, 2025, the Court held a hearing on the Parties'
Motions in Limine for the trial set for Plaintiffs Espinosa and
Saiki.  (ECF No. 318).  At the hearing, the Court dismissed Count
II for Disparate Impact and Count III for Retaliation with
prejudice as to Plaintiffs Espinosa and Saiki.  (Id.)

On May 30, 2025, the Court issued an ORDER GRANTING
DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S
MOTIONS IN LIMINE.  (ECF No. 316).

Also on May 30, 2025, the Court issued an ORDER ON
PLAINTIFFS ROBERT ESPINOSA AND DAN SAIKI'S MOTIONS IN LIMINE NOS.
2-6.  (ECF No. 317).

On June 2, 2025, Plaintiffs filed a Motion to Sever.  (ECF
No. 320).

On June 9, 2025, the Court held a hearing and denied
Plaintiffs' Motion to Sever.  (ECF No. 325).  The Court explained
that there were various outstanding issues to be addressed prior

to trial including the Parties' repeated requests for
continuances, the issue of late-disclosed exhibits, the Parties'
expert reports, deposition excerpts, and the Parties' exhibits
and their lack of conformity to the Court's rulings regarding the
Motions in Limine.  (Id.)  Trial was continued to November 18,
2025.  (Id.)

On July 31, 2025, the Court issued an ORDER GRANTING, IN
PART, AND DENYING, IN PART, PLAINTIFFS' MOTION IN LIMINE NO. 1 TO
EXCLUDE EXHIBITS NOT PRODUCED IN DISCOVERY.  (ECF No. 348).

On September 4, 2025, the Court issued a Minute Order
regarding newly issued published decisions from the Ninth Circuit
Court of Appeals and set a status conference for September 25,
2025.  (ECF No. 373).

On September 16, 2025, Defendants submitted a letter to the
Court stating that they intended to file a Motion to Dismiss for
Lack of Subject-Matter Jurisdiction as to Plaintiffs Espinosa and
Saiki.  (ECF No. 375).

On September 22, 2025, Defendants filed DEFENDANTS HAWAIIAN
AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL
FOR LACK OF SUBJECT MATTER JURISDICTION AGAINST PLAINTIFFS SAIKI
AND ESPINOSA.  (ECF No. 378).

On September 24, 2025, the Parties submitted a proposed
stipulation to dismiss counts II, III, and V as to all
Plaintiffs.  (ECF No. 379).

On September 25, 2025, the Court held a Status Conference.
(ECF No. 380).  At the hearing, Defendants were given leave to
file a Motion to Dismiss pursuant to the Railway Labor Act as to
Plaintiffs O'Hailpin and Aukai.  (Id.)  The Court informed the
Parties that it would not review the Proposed Stipulation until
the questions related to subject-matter jurisdiction had been
resolved.  (Id.)

On October 3, 2025, Defendants filed DEFENDANTS HAWAIIAN
AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR PARTIAL
DISMISSAL FOR LACK OF SUBJECT MATTER JURISDICTION AGAINST
PLAINTIFFS O'HAILPIN AND AUKAI.  (ECF No. 383).

On October 13, 2025, Plaintiffs O'Hailpin and Aukai filed
their Opposition.  (ECF No. 386).

On October 20, 2025, Defendants filed their Reply.  (ECF No.
387).

On October 28, 2025, the Court received a letter from
Plaintiffs' counsel requesting leave to file a Supplemental
Brief.  (ECF No. 388).

The Court allowed Plaintiffs to file a Motion for Leave to
File a Supplemental Brief and allowed Defendants to file a
Response to the Motion.  (ECF No. 389).

On November 6, 2025, Plaintiffs filed their Motion for Leave
to file a Supplemental Briefing.  (ECF No. 391).

On November 13, 2025, Defendants filed their Response to the

7

Motion for Leave to File a Supplemental Brief.  (ECF No. 393).

Without leave of Court, on November 21, 2025, Plaintiffs filed a Reply to their Motion for Leave to File a Supplemental Brief.  (ECF Nos. 396 and 397).

Following Plaintiffs' filing on November 21, 2025, Defendants filed a Motion to Strike Plaintiffs' Reply Seeking to File a Supplemental Brief.  (ECF No. 399).

On November 24, 2025, Plaintiffs filed an Opposition to Plaintiffs' Motion to Strike their Reply Seeking to File a Supplemental Brief.  (ECF No. 400).

On December 4, 2025, the Court issued an Order Denying Plaintiffs' Motion for Leave to File Supplemental Brief and Denying Defendants' Motion to Strike.  (ECF No. 401).

On December 10, 2025, the Court issued an ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDING, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AGAINST PLAINTIFFS SAIKI AND ESPINOSA.  (ECF No. 402).

The Court elects to decide the Motion without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

Plaintiffs O'Hailpin and Aukai allege in the Complaint that they are flight attendants employed by Defendant Hawaiian Airlines, Inc. and are based out of Honolulu, Hawaii.  (Complaint

8

at ¶¶ 21, 29, ECF No. 1).

## **Plaintiff's Collective Bargaining Agreement**

At the time of the COVID-19 pandemic, Plaintiffs O'Hailpin and Aukai were subject to a Collective Bargaining Agreement entitled:

> "Agreement Between Hawaiian Airlines, Inc. and the Flight Attendants in the Service of Hawaiian Airlines, Inc. as Represented by the Association of Flight Attendants-CWA."

(Declaration of Justin Doane, Vice President of Labor Relations for Hawaiian Airlines, Inc., ("Doane Decl.") at ¶ 5, ECF No. 383-2; CBA attached as Ex. 1 to Def.'s Motion, ECF No. 383-10).

Plaintiffs O'Hailpin and Aukai are both union members of The Association of Flight Attendants-CWA.  (Deposition of Plaintiff O'Hailpin ("O'Hailpin Depo.") at p. 28, attached as Ex. 8 to Def.'s Motion, ECF No. 383-17; Deposition of Plaintiff Aukai ("Aukai Depo.) at p. 29, attached as Ex. 9 to Def.'s Motion, ECF No. 383-18).

The Collective Bargaining Agreement is commonly referred to as the "CBA."  The CBA at issue in this case for Plaintiffs O'Hailpin and Aukai was in effect from April 3, 2020 through April 2, 2025.  (CBA attached as Ex. 1 to Def.'s Motion, ECF No. 383-10).

The Collective Bargaining Agreement governed the working relationship between flight attendants, including Plaintiffs, and

9

the Hawaiian Defendants.  (Doane Decl. at ¶8, ECF No. 383-2).
The CBA sets forth the terms and conditions of the flight
attendants' employment.  (Id.)  The CBA provides detailed rules
governing the performance of flight attendant duties including
scheduling, route assignments, seniority, benefits, and
retirement.  (Id. at ¶ 11).

Flight attendants' flight schedules are determined through a
seniority-based bidding system created by numerous CBA
provisions.  (Id.)  The CBA requires flight attendants to be
awarded their flight assignments in accordance with their
seniority.  (Id.)

Pursuant to the terms of the CBA, flight attendants are
classified as either "bid" or "reserve."  (Id. at ¶ 15).  Each
bid flight attendant requests or bids for the grouping of flight
segments or routes they prefer, known as a bid schedule.  (Id. at
¶ 12).  Reserve flight attendants are not assigned a specific
route or segments for the month.  (Id.)  Instead, reserve flight
attendants request possible reserve assignments they would prefer
for the next month, including whether the flight attendant
requests to be called first or last from the reserve pool.  (Id.
at ¶¶ 12, 16)

For both bid and reserve flight attendants, the most senior
flight attendant is awarded their first choice and the next most
senior flight attendant receives their preference based on what

10

is remaining and so on.  (Id. at ¶ 13).

Flight attendants may also be recalled on their days off or if a shortage of flight attendants exists.  (Id. at ¶ 17).

The seniority and bidding provisions of the CBA cover all Hawaiian flight attendants' work assignment routes, schedules (including locations, dates, duration, and layovers), and aircraft types.  (Id. at ¶ 9; CBA at Section 8 on "Reserves," Section 9 on "Seniority," Section 10 on "Preparation, Bidding and Awarding of Flight Schedules Under PBS," and Section 11 on "Scheduling Policy," attached as Ex. 1 to Def.'s Motion, ECF No. 383-10).

Seniority and bidding procedures also affect work conditions, tasks, pay rates, and compensation.  (CBA at Section 3 on "Compensation," and Section 7 on "Hours of Service," attached as Ex. 1 to Def.'s Motion, ECF No. 383-10).

The Collective Bargaining Agreement contains a provision mandating that any disputes concerning interpretation or application of any of the terms of the CBA be resolved through arbitration by the System Board of Adjustment whose decision is final and binding on the parties as provided by the Railway Labor Act, 45 U.S.C. § 151 et seq.  (CBA at 1-15, attached as Ex. 1 to Def.'s Motion, ECF No. 383-10; Doane Decl. at ¶¶ 7, 18, ECF No. 383-2).

11

**<u>The Hawaiian Defendants' Vaccination Policy</u>**

According to the Complaint, on August 9, 2021, in the midst of the worldwide COVID-19 pandemic, the Hawaiian Defendants announced a vaccination policy. (Complaint at ¶ 43, ECF No. 1). Plaintiffs allege that the Hawaiian Defendants required all of their U.S.-based employees to receive a COVID-19 vaccine or receive approval for exemptions based on religious or medical reasons. (<u>Id.</u> at ¶¶ 43, 54).

The Complaint asserts that on September 17, 2021, the Hawaiian Defendants published the vaccination policy and required proof of vaccination by January 30, 2022. (<u>Id.</u> at ¶ 45).

The Hawaiian Defendants' employees were permitted to submit requests for accommodation to the vaccination policy based on their religious beliefs or medical conditions. (Declaration of Robin Kobayashi, Senior Vice President of Human Resources at Defendant Hawaiian Airlines, Inc., ("Kobayashi Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 383-6).

A total of 268 unvaccinated flight attendants submitted accommodation requests to Defendants' vaccination policy. (Declaration of Willard Jackson, Senior Director of Leave Management for Defendant Hawaiian Airlines, Inc. ("Jackson Decl.") at ¶ 4, attached to Def.'s Motion, ECF No. 383-3).

**Plaintiffs' Requests For Exemption From The Vaccination Policy
Based On Religion**

   **Plaintiff O'Hailpin**:

   Plaintiff O'Hailpin alleges that on October 1, 2021, she
submitted a request for exemption from the Hawaiian Defendants'
vaccination policy based on her religious beliefs.  (Complaint at
¶ 118, ECF No. 1).

   The Complaint alleges that on October 13, 2021, the Hawaiian
Defendants denied Plaintiff O'Hailpin's request for religious
exemption from the vaccine mandate, stating that Plaintiff's
basis for seeking an exemption was a "personal preference and not
a generally applicable religious opposition."  (Id. at ¶ 120).

   **Plaintiff Aukai**:

   Plaintiff Aukai alleges that on September 30, 2021, she
submitted a request for exemption from the Hawaiian Defendants'
vaccination policy based on her religious beliefs.  (Id. at ¶
218).

   The Complaint alleges that on November 29, 2021, the
Hawaiian Defendants denied Plaintiff Aukai's request for
religious exemption from the vaccine mandate, stating that
Plaintiff's basis for seeking an exemption was based on her
"beliefs regarding the safety and/or efficacy of the COVID-19

vaccine as well as [Plaintiff Aukai's] personal lifestyle choices" rather than based on a sincerely held religious belief. (Id. at ¶ 221).

According to the Complaint, Plaintiff Aukai elected to comply with the vaccine requirement but claims she was "coerced into taking the vaccine.  This injury is permanent and still causes Ms. Aukai distress."  (Id. at ¶ 224).

**Plaintiff O'Hailpin's Request For Exemption From The Vaccination Policy Based On Medical Reasons**

According to Plaintiff O'Hailpin, on October 16, 2021, she submitted a separate request for exemption from the vaccination policy based on medical reasons.  (Id. at ¶ 122).

Plaintiff asserts that she suffers from antiphospholipid syndrome which affects her circulatory system.  (Id. at ¶ 123).

The Complaint asserts that on November 2, 2021, the Hawaiian Defendants denied Plaintiff's request for a medical exemption from the vaccine mandate because her condition was not considered a "contraindication to receiving a COVID-19 vaccine."  (Id. at ¶ 127).

Plaintiff O'Hailpin alleges that on an unspecified date Plaintiff was placed on unpaid leave but returned to work in November 2022 after the vaccine mandate was rescinded.  (Id. at ¶¶ 130, 132).

**Plaintiffs' Causes of Action**

On December 22, 2022, the Complaint was filed, asserting the following five causes of action against the Hawaiian Defendants:

**COUNT I:** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Failure-To-Accommodate**

**COUNT II:** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Disparate Impact**

**COUNT III:** Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., for **Religious Discrimination** Based On **Retaliation**

**COUNT IV:** Violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., for **Disability Discrimination** Based On **Failure-To-Accommodate**

**COUNT V:** Violation of the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101, et seq., for **Disability Discrimination** Based On **Retaliation**

**The Hawaiian Defendants' Motion to Dismiss Pursuant To the Railway Labor Act**

The Hawaiian Defendants have filed a Motion for Dismissal as to Plaintiffs O'Hailpin and Aukai for lack of subject-matter jurisdiction.

The Hawaiian Defendants' Motion argues that the Court lacks subject-matter jurisdiction to review Plaintiffs O'Hailpin and Aukai's failure-to-accommodate causes of action because such claims are precluded from court jurisdiction pursuant to the

Railway Labor Act, 45 U.S.C. § 151, <u>et seq.</u>

## STANDARD OF REVIEW

A plaintiff has the burden of proving that subject-matter jurisdiction exists. <u>Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979). The Court must dismiss any claims for which it lacks subject-matter jurisdiction. <u>See</u> Fed. R. Civ. P. 12(b)(1); <u>Leeson v. Transamerica Disability Income Plan</u>, 671 F.3d 969, 975 (9th Cir. 2012).

A challenge to the Court's subject-matter jurisdiction may be "facial or factual." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the party challenging jurisdiction argues that the allegations contained in a complaint are insufficient "on their face" to invoke federal jurisdiction. <u>Id.</u> A facial challenge therefore mirrors a traditional motion to dismiss analysis. The Court must take all allegations contained in the pleading "to be true and draw all reasonable inferences in [its] favor." <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).

In a factual attack, the party challenging jurisdiction argues that the facts in the case, notwithstanding the allegations in the Complaint, divest the Court of subject-matter jurisdiction. <u>See</u> <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir.

16

2000).  No presumptive truthfulness attaches to the Complaint's allegations.  Id.  The party challenging jurisdiction presents "affidavits or other evidence properly brought before the court" indicating that subject-matter jurisdiction is lacking.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The burden then shifts to "the party opposing the motion [to] furnish affidavits or other evidence to satisfy its burden of establishing subject matter jurisdiction."  Id.  Failure to present suitable evidence establishing subject-matter jurisdiction necessitates dismissal.  Moore v. Maricopa Cnty. Sheriff's Office, 657 F.3d 890, 895 (9th Cir. 2011).

A motion challenging the district court's jurisdiction pursuant to the Railway Labor Act is properly considered as a motion bringing a factual attack on subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  Soper v. United Airlines, Inc., 2024 WL 4800082, *2 (C.D. Cal. Sept. 4, 2024).

The Court may review the Collective Bargaining Agreement and other relevant evidence to determine whether it has subject-matter jurisdiction pursuant to the Railway Labor Act.  Hinant v. American Airlines, Inc., 2024 WL 4988391, *3 (D. Ariz. Dec. 5, 2024).

## ANALYSIS

### I.    The Railway Labor Act

The Railway Labor Act ("RLA"), 45 U.S.C. § 151, et seq., was enacted to provide a comprehensive framework for resolving labor disputes involving transportation carriers.

In 1936, the Railway Labor Act was extended to cover the airline industry.  Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 248 (1994); see 45 U.S.C. § 181.

The RLA addresses three kinds of labor disputes:

(1)  major disputes;

(2)  minor disputes; and

(3)   representation disputes.

Haralson v. United Airlines, Inc., 224 F.Supp.3d 928, 934 (N.D. Cal. 2016).

First, "major disputes" relate to the formation of collective bargaining agreements or the efforts of the parties to secure rights under the collective bargaining process.  Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 302 (1989).  Major disputes look to the acquisition of rights for the future, and they do not involve disputes about rights that were already secured in existing contracts.  Id.  Major disputes require the parties to undergo lengthy bargaining, mediation, and arbitration processes.  Id.

18

Second, "minor disputes" seek to enforce existing contractual rights as embodied in an existing collective bargaining agreement. Aircraft Serv. Int'l, Inc. v. Int'l Bhd. of Teamsters, 779 F.3d 1069, 1081 (9th Cir. 2015) (en banc). Minor disputes require the existence of a collective bargaining agreement already in effect and involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation." Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 723 (1945).

The RLA mandates that minor disputes are subject to an exclusive dispute resolution mechanism for the prompt and orderly settlement of such claims. Norris, 512 U.S. at 252.

A distinguishing feature of a minor dispute from a major dispute is that a minor dispute requires interpretation of an existing collective bargaining agreement whereas a major dispute challenges an attempt to form or secure collective bargaining rights. Id. at 265. Courts lack subject-matter jurisdiction to adjudicate minor disputes concerning an existing collective bargaining agreement. Id.

Third, the RLA also covers "representation disputes" which concern the definition of a particular bargaining unit and selection of the employee representative for collective bargaining. Herrera v. Command Sec. Corp., 837 F.3d 979, 989 (9th Cir. 2016). Representation disputes are within the

19

exclusive jurisdiction of the National Mediation Board and courts also lack jurisdiction over such claims.  Id.

## II. Courts Lack Subject-Matter Jurisdiction To Review Minor Disputes Pursuant To The Railway Labor Act

Minor disputes about the contractual rights set forth in an existing collective bargaining agreement between an employee and a transportation carrier must be resolved through the RLA's non-judicial, procedural mechanisms rather than through a lawsuit. See 45 U.S.C. § 184.  Courts lack subject-matter jurisdiction over minor disputes within the meaning of the RLA.  Norris, 512 U.S. at 253.

### A. There Is A Two-Step Test To Discern If A Dispute Over A Collective Bargaining Agreement Is Precluded From Court Jurisdiction

Courts in the Ninth Circuit apply a two-step test to evaluate if a plaintiff's claim is preempted or precluded from court review by the RLA.  Columbia Exp. Terminal, LLC v. Int'l Longshore & Warehouse Union, 23 F.4th 836, 841-42 (9th Cir. 2022).

First, the court examines if the plaintiff's claim seeks purely to vindicate a right or duty created by the collective bargaining agreement itself.  Id. at 843.  If so, the claim is preempted or precluded from review.  If not, the court proceeds to the second step.

Second, even if the claim does not seek to vindicate a right created by the CBA, the court evaluates if the plaintiff's claim is substantially dependant on analysis and interpretation of the CBA. Id. If the claim does require analysis and interpretation of the CBA, the claim is preempted or precluded from review.

**B.   Claims That Require Interpretation Of An Existing Collective Bargaining Agreement Are Precluded From Court Review Under The RLA**

Under step two, a court is without subject-matter jurisdiction to review a plaintiff's claim that concerns interpretation of the "duties and rights created or defined by the collective bargaining agreement." Alaska Airlines, Inc. v. Schurke, 898 F.3d 904, 919 (9th Cir. 2018) (en banc) (quoting Norris, 512 U.S. at 258). Such disputes must be resolved only through the RLA mechanisms, and not by a court. Id.

The RLA exclusivity provision was enacted to ensure that disputes regarding existing collective bargaining agreements are governed by a uniform set of principles rather than conflicting substantive interpretations under competing legal systems in the federal and state courts. Schurke, 898 F.3d at 919.

**C.   Disputes That Do Not Require Interpretation Of the Existing Collective Bargaining Agreement Are Not Preempted Or Precluded From Court Review**

Consultation of the collective bargaining agreement alone is

insufficient to trigger application of the RLA. <u>Livadas v.
Bradshaw</u>, 512 U.S. 107, 124 (1994). In order to qualify as a
minor dispute pursuant to the RLA, the dispute must require
interpretation of the terms of a collective bargaining agreement.
<u>Norris</u>, 512 U.S. at 265.

The court is not divested of jurisdiction pursuant to the
RLA if there is no disagreement as to the meaning of all of the
terms of the collective bargaining agreement. <u>Schurke</u>, 898 F.3d
at 927. "Reliance on and reference to CBA-established or CBA-
defined terms of employment do not make for a CBA dispute if
there is no disagreement about the meaning or application of any
relevant CBA-covered terms of employment." <u>Id.</u>

For example, a claim for damages dependent on a CBA's
undisputed wage provisions are not preempted by the RLA because
the claim is not dependent on interpretation of a CBA term.
<u>Livadas</u>, 512 U.S. at 125.

## III. Plaintiffs O'Hailpin and Aukai's Failure-To-Accommodate Claims Require Interpretation Of The Existing Collective Bargaining Agreement

The Hawaiian Defendants assert that Plaintiffs O'Hailpin and
Aukai's failure-to-accommodate claims pursuant to Title VII of
the Civil Rights Act and Plaintiff O'Hailpin's failure-to-
accommodate claim pursuant to the Americans With Disabilities Act
are precluded from review because they involve a "minor dispute"

22

about the terms of the existing collective bargaining agreement.

The Hawaiian Defendants argue that Plaintiffs' claims regarding the availability of accommodations from their vaccine policy and whether the airline faced undue hardship in providing accommodations to the policy require interpretation of various provisions of the existing CBA.

**A.   Plaintiffs O'Hailpin and Aukai's Requests For Exemption From Vaccination Require Interpretation Of The Seniority, Bidding, Training, And Vacancy Provisions Of The Collective Bargaining Agreement**

The United States Supreme Court ruled in <u>Trans World Airlines, Inc. v. Hardison</u>, 432 U.S. 63, 67 (1977), that it was an undue hardship to force an employer to violate an existing collective bargaining agreement in order to provide an employee with his requested accommodation.  <u>See</u> <u>Groff v. DeJoy</u>, 600 U.S. 447, 470 (2023) (clarifying that undue hardship requires more than de minimis cost).

The undue hardship analysis must take into account all relevant factors, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer.  <u>Groff</u>, 600 U.S. at 471. There is undue hardship on an employer "where a variance from a bona fide seniority system is necessary in order to accommodate an employee's religious practices when doing so would deny another employee his or her job or shift preference guaranteed by

23

that system."  29 C.F.R. § 1605.2(e)(2).

In the context of vaccine mandates during the COVID-19 pandemic, the Ninth Circuit Court of Appeals explained in Petersen v. Snohomish Reg'l Fire & Rescue, 150 F.4th 1211, 1220 (9th Cir. 2025), that it is appropriate to examine: (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer.  The undue hardship analysis specifically requires consideration of potential operational disruption caused by accommodations to large numbers of employees seeking accommodations at the same time.  Id.

### 1. Interpretation Of Various CBA Terms Is Required To Evaluate Plaintiffs' Claims

Operational burdens are central to the undue hardship defense raised by the Hawaiian Defendants.  The Hawaiian Defendants argue that accommodating all 268 of the flight attendants that requested exemption from vaccination would have substantially disrupted not only their business operations but would have violated numerous terms of the existing CBA, including its seniority provisions, process bidding for routes, and scheduling of flight attendants.  See Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

During 2020 and 2021, Plaintiffs O'Hailpin and Aukai were permitted to be reserve flight attendants based on their requests and their seniority levels.  (Declaration of Colin Beard,

Director Crew Planning for Defendant Hawaiian Airlines, Inc.
("Beard Decl."), at ¶¶ 6, 9, ECF No. 383-8).  Plaintiffs
O'Hailpin and Aukai had specifically requested to be reserve
flight attendants.  (Id.)

A reserve flight attendant is a flight attendant who has not
been awarded a Bid Run and is available to be assigned to flying
in the International operation, the Interisland operation,
Airport Reserve duty, Interisland Reserve Desk duty or Standby
Reserve duty."  (CBA Section 2, Definitions at § 2.AB., ECF No.
383-10).

Assignment of flights to a reserve flight attendant is done
in seniority order, taking into consideration flight attendant
preferences, including whether the flight attendant requests to
be called first or last from the reserve pool.  (CBA Section 8,
Reserves at §§ 8.C.1, 8.J.2, 8.N.7, ECF No. 383-10; Doane Decl.
at ¶¶ 11, 16, ECF No. 383-2).

Plaintiffs O'Hailpin and Aukai testified that they regularly
were assigned to fly international routes, including to Australia
and Japan.  (O'Hailpin Depo. at p. 45, attached as Ex. 8 to
Def.'s Motion, ECF No. 383-17; Aukai Depo. at p. 33, attached as
Ex. 9 to Def.'s Motion, ECF No. 383-18).

The Hawaiian Defendants argue that complications in
assignments arose on numerous international routes from Honolulu
during the COVID-19 pandemic.  Defendants assert that they were

25

aware that the governments of Australia, American Samoa, French
Polynesia, and Japan implemented certain restrictions for
unvaccinated travelers in their jurisdictions.  (See Public
Health (COVID-19 Air Transportation Quarantine) Order (No 4)
2021, issued by the New South Wales Government, attached as Ex. 2
Def.'s Motion, ECF No. 383-11; Hawaiian Airlines Alert 20-12 re:
American Samoa, dated September 10, 2021, attached as Ex. 4 to
Def.'s Motion, ECF No. 383-13; Hawaiian Airlines Alert 20-11 re:
French Polynesia, dated August 2, 2021, attached as Ex. 5 to
Def.'s Motion, ECF No. 383-14; Health Alert - U.S. Embassy Tokyo
by U.S. Mission Japan, dated September 29, 2021, attached as Ex.
6 to Def.'s Motion, ECF No. 383-15).

The Hawaiian Defendants assert that the actual and potential
foreign restrictions created a complicated, shifting legal
landscape during the COVID-19 pandemic and that they faced
unpredictable operational concerns when scheduling flight
attendants.  (Chief Operations Officer of Hawaiian Airlines, Inc.
Snook Decl. at ¶¶ 5-8, ECF No. 383-7; see Doane Decl. at ¶¶ 19-
24, ECF No. 383-2; see also Declaration of Kathleen Mainerd,
Senior Manager, South Pacific Airport Operations for Defendant
Hawaiian Airlines, Inc., ("Mainerd Decl.") at ¶ 3, ECF No. 383-4;
Declaration of Ryan D. Thomas, Senior Director of Policies and
Procedures for Airport Operations for Defendant Hawaiian
Airlines, Inc. ("Thomas Decl.") at ¶¶ 3, 5, 7, ECF No. 383-5).

26

Justin Doane, Defendants' Vice President of Labor Relations, points to numerous provisions of the CBA requiring interpretation in order to evaluate the availability of certain accommodations for flight attendants and the potential undue hardship to the Hawaiian Defendants during the pandemic, specifically:

| CBA Provision Topic: | CBA Provision Number and Text |
|---|---|
| Seniority | 9.B.3  Seniority shall govern all employees in case of bidding of runs... |
| Awarding of Schedules | 10.A.1  A Flight Attendant retains the right to fly any runs out of her/his domicile to which her/his seniority entitles her/him as a result of bidding.<br><br>10.A.2  Schedules shall be bid monthly and Flight Attendants shall be awarded their monthly run in accordance with their seniority. |
| Awarding and Assignment of Monthly Runs | 10.H.1  All monthly runs shall be awarded in accordance with seniority and bid preferences. |
| Assignment of Flights to Reserve Flight Attendants | 8.C.1 Reserve Flight Attendants will be assigned to open flying on a daily basis in order of seniority....<br><br>8.J.2 Reserves may submit the following preferences, in priority order, for groupings in Open Time by 1330 for groupings which report on the following calendar day....<br><br>8.N.7 Filling Uncovered Positions Remaining After Assignment Process in N.6 Above |

27

| Hours of Service/Recalling Flight Attendants <u>on</u> Days Off/Involuntary Recall | 7.I.b.  (1) If open grouping remain uncovered after the voluntary recall award, or the departure time is within three (3) hours, Crew Scheduling may involuntarily assign these trips in the following order.... |
| --- | --- |

(Doane Decl. at ¶ 11, ECF No. 383-2).  Mr. Doane also asserts

that based on past practices, the order of standby callout

assignments from the prior CBA was also followed.  (<u>Id.</u>)

The Hawaiian Defendants assert that:

[a]llowing large numbers of unvaccinated flight
attendants to continue to fly during the pandemic would
have affected the seniority-based bidding process.
Granting such accommodations to up to 268 unvaccinated
flight attendants would have effectively granted them a
reprieve from having to fly to/from international
locations with COVID-related restrictions....

In addition, determining whether adjusting flight
attendant schedules to accommodate unvaccinated flight
attendants by not scheduling them for the Australia,
Japan, American Samoa, and French Polynesia flights
would require an interpretation of the CBA to determine
whether the CBA grants seniority rights to flight
attendants with regard to specific destinations and
whether, and to what extent, more senior flight
attendants' bidding preferences would be impacted by
accommodating unvaccinated flight attendants to not fly
to those international locations during the pandemic.
The issue of whether Hawaiian had a right to take
additional steps to ensure vaccinated flight attendants
would be available for these flights would necessarily
entail interpreting the above-referenced seniority,
scheduling, bidding, and assignments of flights to
flight attendants provisions in the CBA (both as to
those who bid a schedule and those who bid and were
awarded the reserve pool).

(<u>Id.</u> at ¶¶ 21, 26).

Plaintiffs disagree with the Hawaiian Defendants'

interpretation of the CBA.  Plaintiffs rely on their own
interpretation of the terms of the CBA to argue that granting
their accommodation requests and their schedule preferences would
not have violated the CBA terms.

### 2.   The Parties' Disputes About The Interpretation Of Numerous CBA Terms Preclude Court Jurisdiction

The questions regarding the availability of reasonable
accommodations and undue hardship pursuant to the terms of the
CBA are the exact types of disputes that the Court lacks subject-
matter jurisdiction to review.

In evaluating preclusion pursuant to the RLA, the analysis
is whether a provision of the CBA could "arguably" dispose of a
claim or defense.  Schurke, 898 F.3d at 924.  The analysis is not
whether the terms of the CBA would actually permit the
accommodation or would actually cause undue hardship.  Instead,
the analysis hinges on whether the trier of fact would arguably
need to resolve disagreements about the terms of the CBA to
evaluate Plaintiffs' failure-to-accommodate claims and the
Defendants' undue hardship defense.  Id.

Here, there are numerous disputes about the CBA's terms, the
interplay within the various Sections of the CBA, and the meaning
and applicability of various provisions.

The CBA also requires interpretation in the context of the
various local, state, federal, and international laws that were

29

at play (and were consistently evolving) during the pandemic, including the Federal Contractor Mandate, local and international travel restrictions, and quarantine requirements.

Despite Plaintiffs' arguments to the contrary, the Hawaiian Defendants were required to consider the potential operational disruption that may have been caused given the various laws, regulations, and protocols at play with the large numbers of accommodation requests.  The disputes as to the effect on the terms of the CBA is left for the arbitrator as it is clear from the record that the Parties dispute the interpretation of these terms in the context of the Plaintiffs' accommodation requests.

The Hawaiian Defendants argue that accommodating the 268 unvaccinated flight attendants' requests to be exempt from their vaccination policy, including Plaintiffs O'Hailpin and Aukai, would have displaced the bids of other Hawaiian flight attendants and impinged on their seniority and other rights in violation of the terms of the CBA.

The Plaintiffs disagree.  The Plaintiffs argue that under their interpretation of the CBA, the Hawaiian Defendants have the authority to ignore the seniority rights and other provisions in the CBA.

Disagreements about the interpretation, scope, or applicability of specific terms of an existing CBA are the exact types of disputes that are subject to preclusion pursuant to the

30

RLA. <u>Hinant</u>, 2024 WL 4988391, at *3 (citing <u>Int'l Ass'n of Sheet
Metal Air, Rail, & Transp. Workers v. Union Pac. R.R. Co.</u>, 2019
WL 6499212 *10 (C.D. Cal. July 25, 2019); <u>Pritchard v. American
Airlines, Inc.</u>, 708 F.Supp.3d 861, 867 (N.D. Tex. 2023)).

### 3. The Volume And Timing Of The 268 Flight Attendants' Accommodation Requests Affect The Interpretation Of The Terms In The CBA

In <u>Petersen v. Snohomish Reg'l Fire & Rescue</u>, 150 F.4th
1211, 1220 (9th Cir. 2025), the Ninth Circuit Court of Appeals
ruled that the undue hardship analysis in determining whether a
reasonable accommodation existed specifically requires
consideration of potential operational disruption caused by
accommodations to large numbers of employees seeking
accommodations at the same time. The effect of the volume and
timing of similar accommodations requests on terms of the CBA is
a question for the arbitrator who has specialized knowledge in
this area.

Here, Plaintiffs claim that they could have bid around
certain routes or adjusted their own schedules without
implicating or altering any of their own CBA rights. Plaintiffs,
however, ignore that large numbers of unvaccinated flight crew
had submitted accommodation requests. The numerosity of requests
is a necessary factor in conducting the undue hardship analysis
pursuant to <u>Petersen</u>. The volume of the 268 flight attendants

31

requesting accommodations at the same time affects the analysis and the interpretation of the terms in the CBA as to what accommodations were reasonable and available.

Plaintiffs claim the CBA terms would have permitted the Hawaiian Defendants to have unilaterally forced Plaintiffs O'Hailpin and Aukai to "bid down" and to fly on specific domestic routes. Such action may have resulted in different routes and lesser pay, and additionally disrupted the seniority and bidding requests of other flight attendants. Various terms of the CBA would certainly be implicated in such a "self-help" accommodation scheme of potentially bidding around certain foreign destinations for an indefinite period of time.

The Hawaiian Defendants argue that allowing unvaccinated flight attendants to voluntarily opt out of international routes that Plaintiffs O'Hailpin and Aukai regularly flew would have required interpretation of the CBA due to the seniority implications of such changes and the ripple effects that they would have created. (Doane Decl. at ¶¶ 21-26, ECF No. 383-2).

The Court agrees with the Hawaiian Defendants that the questions raised by Plaintiffs' accommodation claims require interpretation of the CBA terms. Interpretation of the CBA is required to determine if Defendants could have prioritized unvaccinated flight attendants' bidding requests over the bidding of vaccinated flight attendants. The CBA's terms concern

32

seniority rights, recalling flight attendants on days off, route assignments, and job duties.  The Parties' disputes about such terms must be resolved by the Systems Board of Adjustment Arbitrator as provided in Section 1, Paragraph H in the CBA. (CBA, Section 1, Recognition, Scope, and Job Security, at §1-H, Expedited Arbitration, ECF No. 383-10).

Interpretation of the CBA is also required with respect to the question regarding whether the Hawaiian Defendants could have granted an accommodation to Plaintiffs O'Hailpin and Aukai alone or whether the Defendants would have been required to provide the same accommodation to the other 266 unvaccinated flight attendants who also requested exemption from the vaccine policy. (Jackson Decl. at ¶ 4, ECF No. 383-3).

These disputes about the CBA require interpretation of numerous provisions of the CBA and are necessary to resolve Plaintiffs' failure-to-accommodate claims.  The disputes regarding the terms of the CBA directly impact the evaluation of the reasonable accommodations available and the undue hardship defense.  Hardison, 432 U.S. at 79; 29 C.F.R. § 1605.2(e)(2).

**B.    Plaintiffs' Failure-To-Accommodate Claims Require More Than Mere Reference To The Terms Of The Collective Bargaining Agreement**

Courts have ruled that a plaintiff's claim is not precluded by the RLA when the court need simply review a term in a CBA or

read the provisions of a CBA to determine its basic provisions. Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1060 (9th Cir. 2007); Angeles v. U.S. Airways, Inc., 2013 WL 622032, *6 (N.D. Cal. Feb. 19, 2013); but see McKinley v. Southwest Airlines Co., 680 Fed. Appx. 522, 524-25 (9th Cir. 2017) (finding rate of overtime pay required interpretation of the CBA because plaintiff disputed the amount due under the terms of the CBA).

Here, Plaintiffs' failure-to-accommodate claims do not merely require the Court to look to the CBA or reference its terms. Instead, Plaintiffs' failure-to-accommodate claims require interpretation of the complex Collective Bargaining Agreement and various provisions governing scheduling, bidding, and seniority for flight attendants. Plaintiffs' failure-to-accommodate claims are "inextricably intertwined" with the CBA's terms. Edelman v. W. Airlines, Inc., 892 F.2d 839, 845 (9th Cir. 1989).

Interpretation of the CBA is also required to determine the effect that past practice, usage, and custom have on the terms in the CBA.

In Consol. Rail Corp. v. Ry. Lab. Executives' Ass'n, 491 U.S. 299, 311 (1989), the United States Supreme Court ruled that interpretation of collective bargaining agreements often depends on practice, usage, and custom. Interpretation of CBA terms based on practice, usage, and custom is one of the primary

34

reasons that the RLA dictates that CBA interpretation must be before a specialized arbitrator and not the court system.

The United States Supreme Court ruled that these types of disputes cannot be reviewed by the courts because the RLA precludes review over claims where the parties disagree about the effect of past practices on the interpretation of CBA terms. Consol. Rail Corp., 491 U.S. at 320 (holding that the court lacked jurisdiction to review the employees' claims because there were disputes about the effect of the employer's past practices regarding drug testing and whether its drug testing practices were justified under the terms of the CBA).

Here, both Plaintiffs and Defendants rely on past practices to support their interpretation of the CBA. Plaintiffs state that "bidding down" was a regular past practice that is permitted by the terms of the CBA. Defendants assert that the Order of Standby Callout Assignments was an established past practice set forth in a previous CBA and its terms are "still honored through the present." (Doane Decl. at p. 4 n.1, ECF No. 383-2).

The effect, if any, the prior CBA has on the interpretation of the current CBA at issue in this case is a matter for the Specialized Arbitrator. The past practices, usage, policy, and custom in the industry and how they affect interpretation of the CBA provisions on seniority, bidding, and scheduling as required to review Plaintiffs' requests for exemption from vaccination are

undoubtedly in dispute.  <u>Consol. Rail Corp.</u>, 491 U.S. at 320; <u>see
also</u> <u>Hinant</u>, 2024 WL 4988391, at *3; <u>Flanary v. USAIR, Inc.</u>, 1997
WL 364090, *3 (S.D. Cal. Mar. 27, 1997) (finding the flight
attendant's claim was preempted under the RLA because of
questions about the effect of practice, custom, and usage on the
existing collective bargaining agreement, even though no specific
section of the CBA directly addressed plaintiff's claim).

These disputes based on past practices and custom go to the
heart of why the Court lacks jurisdiction over the matter.  The
purpose of the RLA's exclusivity provision is to ensure
appropriate consideration of past practices, usage, policy, and
custom be considered in analyzing and interpreting collective
bargaining agreements.  The CBA requires arbitration of such
claims before a Systems Board of Adjustment Arbitrator to allow
for proper evaluation of past practices, usage, policy, and
custom with respect to how the terms in the CBA are understood
and used in the industry.  (CBA at §1-H, Expedited Arbitration,
ECF No. 383-10).

### C.  Plaintiffs' Failure-To-Accommodate Claims In The Context Of The COVID-19 Pandemic

Other Courts have ruled similarly with comparable facts.  In
<u>Odell v. Kalitta Air, LLC</u>, 107 F.4th 523, 532 (6th Cir. 2024),
the Sixth Circuit Court of Appeals recently ruled that a group of
pilots' failure-to-accommodate claims were precluded from court

36

review pursuant to the RLA because the claims necessarily implicated interpretation of the CBA's terms regarding the pilots' scheduling and seniority.

In Odell, the plaintiff pilots were represented by some of the same counsel as in this case.  The facts are comparable as applied here to the flight attendants' claims.  In Odell, the plaintiff pilots elected not to vaccinate for COVID-19 and requested exemptions from their employer air carrier's mandatory vaccine requirement imposed during the global pandemic.  Id. at 531.  The plaintiff pilots proposed an accommodation of limiting their flying routes to countries that did not impose vaccine requirements.  Id.  The employer denied their requests for exemption and accommodations.  Id.

The pilots sued their air carrier employer, asserting various claims including Title VII and ADA claims for failure-to-accommodate the unvaccinated pilots based on their religious beliefs and their alleged disabilities.

The district court ruled that the pilot's failure-to-accommodate claims were precluded from court review pursuant to the RLA.  Id.

On appeal, the Sixth Circuit Court of Appeals affirmed.  Id. at 531-32.  The Appellate Court ruled that the plaintiffs' failure-to-accommodate claims required interpretation of the existing collective bargaining agreement, specifically with

respect to seniority, bidding, and scheduling of the pilots'
routes.  Id.  The Sixth Circuit Court of Appeals ruled that the
courts lacked subject-matter jurisdiction over the pilots'
failure-to-accommodate claims and that such claims were precluded
from review pursuant to the RLA.  Id. at 531-32.

Here, the Odell facts mirror the requests made by the
Plaintiff flight attendants here.  Plaintiffs O'Hailpin and Aukai
requested that the Hawaiian Defendants allow them to fly
unvaccinated and to fly only on specified routes.  Just as in
Odell, there are disputes as to whether Plaintiffs O'Hailpin and
Aukai's requested accommodations require interpretation of the
terms of the CBA regarding seniority and bidding provisions.

Plaintiffs' attempts to distinguish this case from Odell are
not persuasive.  As explained in the lower court decision, when a
potential accommodation could interfere with a seniority scheme
set forth in a CBA, it is necessary to interpret the applicable
CBA because the agreement itself both creates and defines the
scope of the employees' seniority rights.  Odell v. Kalitta Air,
LLC, 678 F.Supp.3d 904, 918 (E.D. Mich. 2023).

Just as in Odell, Plaintiffs O'Hailpin and Aukai's failure-
to-accommodate claims require interpretation of the existing CBA
with respect to seniority, bidding, and scheduling.  In
evaluating their claims, the Court would need to determine
whether the CBA permitted Plaintiffs O'Hailpin and Aukai to bid

around certain routes.  The Court lacks jurisdiction over such
questions pursuant to the RLA, because interpretation of the CBA
is required to resolve the claims.  See Stanley v. ExpressJet
Airlines, Inc., 808 Fed. Appx. 351, 356 (6th Cir. 2020).

Evaluation of the type of accommodations that were available
to the Plaintiffs in the midst of the COVID-19 pandemic is
precluded from court review pursuant to the RLA.  These claims
require interpretation of terms in the existing Collective
Bargaining Agreement.  Such interpretations must be conducted
before the Systems Board of Adjustment Arbitrator as agreed to in
the CBA.

Other Federal District Courts have ruled that similar
failure-to-accommodate claims against transportation carriers in
the context of the COVID-19 pandemic are precluded from court
review.  The District Courts have found that plaintiffs' failure-
to-accommodate claims implicate CBA provisions regarding
scheduling, bidding, routes, and compensation.  Such claims
require interpretation of collective bargaining agreements for
which the courts lack subject-matter jurisdiction.  Whitford v.
Nat'l R.R. Passenger Corp., 2024 WL 4216050, at *6 (W.D.N.Y.
Sept. 17, 2024); Grindling v. Cathay Pacific Airways, Ltd., 2024
WL 4164234, at *3 (N.D. Ill. Sept. 11, 2024); see also Saliba v.
American Airlines, Inc., 2022 WL 4131485, at *5 (D. Ariz. Sept.
12, 2022).

The Court agrees with the reasoning in <u>Odell</u>, 107 F.4th at 532, <u>Whitford</u>, 2024 WL 4216050, at *6 , and <u>Grindling</u>, 2024 WL 4164234, at *3.  Plaintiffs' failure-to-accommodate claims are precluded from court review pursuant to the RLA.

### D.   Plaintiffs' Claims Are Distinguishable From Intentional Discrimination Causes Of Action

Plaintiffs primarily rely on cases that have ruled that intentional discrimination causes of action are generally not precluded from court review by the RLA.  (Pl.'s Opp. at pp. 17-19, ECF No. 386).

In <u>Felt v. Atchison, Topeka & Santa Fe Ry. Co.</u>, 60 F.3d 1416, 1420 (9th Cir. 1995), as a matter of first impression, the Ninth Circuit Court of Appeals ruled that Title VII religious discrimination claims are generally not precluded by the RLA because these types of claims typically exist entirely independent of the collective bargaining agreement and usually do not require interpretation of CBA terms.  See also <u>Norris</u>, 512 U.S. at 266 (finding that the RLA generally does not preclude state law intentional employment discrimination claims); <u>Saridakis v. United Airlines</u>, 166 F.3d 1272, 1277 (9th Cir. 1999) (finding federal disability discrimination claim did not require interpretation of CBA).

Here, Plaintiffs' causes of action in Count I and Count IV, however, are not intentional discrimination claims.  Rather,

Count I and Count IV are premised solely on Defendants' alleged failure to provide a requested accommodation.

There is no intentional discrimination claim and no state law claims. Plaintiffs have brought only Title VII and ADA failure-to-accommodate claims where they have placed the interpretation of multiple provisions of the Collective Bargaining Agreement in dispute. See Sjoberg v. United Airlines, Inc., 2024 WL 4219736, at *4 (S.D. Tex. Sept. 17, 2024), holding that the RLA bars court review of discrimination claims where "Plaintiff puts interpretations of provisions of the [collective bargaining agreement] at the center of this dispute").

The questions here concerning the availability of the Plaintiffs' requested accommodations and the evaluation of undue hardship based on disputed interpretations of the seniority, bidding, and scheduling provisions distinguish Plaintiffs' causes of action from Felt and Norris.

## IV. Plaintiffs' Request For Jurisdictional Discovery And For Leave To Amend The December 22, 2022 Complaint

### A.    Jurisdictional Discovery Is Not Warranted

In their Opposition, Plaintiffs O'Hailpin and Aukai request jurisdictional discovery for the first time, despite the discovery deadline being closed for more than six months since March 14, 2025. (Pl.'s Opp. at p. 25, ECF No. 386; see Minute Order, ECF No. 182).

Plaintiffs have not established good cause to amend the scheduling order to allow for additional discovery. <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604, 608 (9th Cir. 1992) (explaining that good cause is required to amend the Rule 16 scheduling order). Jurisdictional discovery is not warranted.

The Ninth Circuit Court of Appeals has explained that it is not for the courts to determine whether a claim actually violates a term of the collective bargaining agreement. The task of the Court is merely to determine if interpretation of the CBA is required to adjudicate a plaintiff's claim or whether a provision in a CBA arguably disposes of a plaintiff's claim. <u>Schurke</u>, 898 F.3d at 924. The question before the Court is the legal question of whether the applicable Collective Bargaining Agreement requires interpretation in the context of Plaintiffs' requested accommodations and the undue hardship standard. The Court finds that the CBA requires interpretation and jurisdictional discovery will not alter the determination.

**B.    Leave To Amend The Complaint Is Not Warranted**

In their Opposition, Plaintiffs O'Hailpin and Aukai also request leave to amend the December 22, 2022 Complaint to add a claim for intentional discrimination. (Pl.'s Opp. at p. 26, ECF No. 384).

Plaintiffs' request for leave to amend the Complaint is

42

untimely.  The Complaint in this case was filed over three years
ago on December 22, 2022.  The deadline for seeking amendment to
the Complaint closed more than two years ago on August 8, 2023.
The Rule 16 Scheduling Order has been continued and altered
numerous times.  The Court has previously denied Plaintiffs'
request to reopen the deadline and amend the Complaint due to
Plaintiffs' lack of diligence.

Plaintiffs' counsel has been aware of the potential
applicability of the RLA in this case since well before the
filing of Defendants' Motion, for which Defendants were given
leave of Court.  Plaintiffs' counsel, John C. Sullivan, was
counsel for plaintiffs in Odell v. Kalitta Air, LLC, 107 F.4th
523, 532 (6th Cir. 2024), cited above, which was argued on March
21, 2024, and decided by the Sixth Circuit Court of Appeals on
July 9, 2024.

Plaintiffs characterize Defendants' RLA Motion as "late-
filed," but defenses based on lack of subject-matter
jurisdiction, such as preclusion under the RLA, can be raised at
any time and can never be waived or forfeited by the parties.
See Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); Pearson v.
Northwest Airlines, Inc., 659 F.Supp.2d 1084, 1088 n.3 (C.D. Cal.
2009).

Plaintiffs have not established good cause required to amend
the scheduling order to assert a new cause of action after nearly

43

three years of litigation. <u>Johnson</u>, 975 F.2d at 608 (explaining that a plaintiff must first establish good cause pursuant to Fed. R. Civ. P. 16(b) to amend the scheduling order prior to seeking amendment of a pleading pursuant to Fed. R. Civ. P. 15(a)).

## **CONCLUSION**

Defendants' Motion for Dismissal for Lack of Subject-Matter Jurisdiction Against Plaintiffs O'Hailpin and Aukai (ECF No. 383) is **GRANTED.**

Plaintiffs' request for jurisdictional discovery is **DENIED.**

Plaintiffs' request to amend the Complaint is **DENIED.**

//

//

//

//

//

//

//

//

//

//

//

//

//

44

Count I in the Complaint (ECF No. 1) as to Plaintiffs O'Hailpin and Aukai is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

Count IV in the Complaint (ECF No. 1) as to Plaintiff O'Hailpin is **DISMISSED WITH PREJUDICE** for lack of subject-matter jurisdiction.

IT IS SO ORDERED.

DATED: January 20, 2026, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Riki O'Hailpin; Nina Arizumi; Robert Espinosa; Erwin Young; Puanani Badiang; Sabrina Franks; Ronald Lum; Dan Saiki; Brandee Aukai vs. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., 22-cv-00532 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION AGAINST PLAINTIFFS O'HAILPIN AND AUKAI (ECF No. 383)**