IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ERWIN YOUNG; PUANANI BADIANG; SABRINA FRANKS; RONALD LUM, | ) ) | CIV. NO. 22-00532 HG-WRP |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| HAWAIIAN AIRLINES, INC.; HAWAIIAN HOLDINGS, INC., | ) ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 406)**

Plaintiffs Ronald Lum, Sabrina Franks, Erwin Young, and Puanani Badiang were employees of Defendant Hawaiian Airlines, Inc., when it implemented a mandatory vaccination policy in the midst of the worldwide COVID-19 pandemic.

Each Plaintiff requested an exemption from Defendants' vaccination policy claiming a conflict with his or her religious beliefs. Plaintiff Lum also requested an exemption based on a claimed medical reason.

Plaintiffs' requests for exemption from the vaccination policy were denied in December 2021.

On November 10, 2022, Plaintiffs filed suit against Defendant Hawaiian Airlines, Inc. and its holding company, Defendant Hawaiian Holdings, Inc., ("Hawaiian Defendants").

1

The Hawaiian Defendants have filed a Motion for Summary Judgment on the two claims remaining in the Complaint:

**COUNT I:** Religious Discrimination - Failure to Accommodate, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (as to all four Plaintiffs); and

**COUNT IV:** Disability Discrimination - Failure to Accommodate, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (as to Plaintiff Lum).

Defendants assert that Plaintiffs are unable to prevail on their religious failure-to-accommodate claims because granting the Plaintiff employees' requests to be exempt from the vaccination policy would have placed an undue hardship on the company and endangered other employees and the public.

Defendants also assert that Plaintiff Lum is unable to prevail on his disability failure-to-accommodate claim for the same reasons.

The Court construes the record in a light most favorable to Plaintiffs. The Court finds there are no genuine issues of material fact.

Plaintiffs argue, as a matter of law, that providing them with their requested accommodations would not have resulted in any health or safety costs, operational burdens, or financial hardship to the Hawaiian Defendants. Plaintiffs also rely on "hindsight reasoning" and on material that was published and events that occurred subsequent to the date of the Hawaiian

Defendants' employment decisions.  Plaintiffs' arguments are contrary to binding precedent from the Ninth Circuit Court of Appeals in <u>Petersen v. Snohomish Regional Fire and Rescue</u>, 150 F.4th 1211, 1217-18 (9th Cir. 2025), <u>Williams v. Legacy Health</u>, ___ F.4th ___, 2026 WL 1239760, *3-*4 (9th Cir. May 6, 2026), and <u>Health Freedom Defense Fund, Inc. v. Carvalho</u>, 148 F.4th 1020, 1024 (9th Cir. 2025) (en banc), <u>cert.</u> <u>denied</u>, __ S.Ct.__, 2026 WL 1377038, at *1 (U.S. May 18, 2026) (No. 25-765).

The Court finds that granting Plaintiffs' accommodation requests would have placed an undue hardship on Defendants.  The Hawaiian Defendants are entitled to summary judgment in their favor.

Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc.'s Motion for Summary Judgment (ECF No. 406) is **GRANTED.**

## <u>PROCEDURAL HISTORY</u>

On December 22, 2022, Plaintiffs Riki O'Hailpin, Nina Arizumi, Robert Espinosa, Erwin Young, Puanani Badiang, Sabrina Franks, Ronald Lum, Dan Saiki, and Brandee Aukai filed the Complaint against Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc.  (ECF No. 1).

On January 18, 2024, the case was reassigned from Judge Otake to Judge Gillmor.  (ECF No. 103).

On May 6, 2025, the Court issued an ORDER GRANTING

DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S

MOTION FOR PARTIAL DISMISSAL FOR LACK OF SUBJECT-MATTER

JURISDICTION AS TO COUNTS I AND IV FOR PLAINTIFF NINA ARIZUMI.

(ECF No. 254).

On September 24, 2025, the Parties submitted a proposed

stipulation to dismiss Counts II, III, and V as to all

Plaintiffs.  (ECF No. 379).

On December 10, 2025, the Court issued an ORDER GRANTING

DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S

MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION

AGAINST PLAINTIFFS SAIKI AND ESPINOSA.  (ECF No. 402).

On January 20, 2026, the Court issued an ORDER GRANTING

DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S

MOTION FOR DISMISSAL FOR LACK OF SUBJECT-MATTER JURISDICTION

AGAINST PLAINTIFFS O'HAILPIN AND AUKAI.  (ECF No. 403).

On January 20, 2026, the Court issued a Minute Order

dismissing Counts II, III, and V pursuant to the Parties' Joint

Stipulation (ECF No. 379).  (ECF No. 404).  The Minute Order

explained that following the Court's December 10, 2025 and

January 20, 2026 Orders, there were no remaining causes of action

for Plaintiffs O'Hailpin, Arizumi, Espinosa, Saiki, and Aukai.

(Id.)  The only remaining Plaintiffs were Young, Badiang, Franks,

and Lum.  (Id.)  The Court granted Defendants' request to reopen

the summary judgment motion deadline based on the new caselaw

4

from the Ninth Circuit Court of Appeals.  (Id.)

On February 10, 2026, Defendants filed the current Motion before the Court: DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT AS TO ERWIN YOUNG, PUANANI BADIANG, SABRINA FRANKS, AND RONALD LUM.  (ECF No. 406). Defendants also filed a Concise Statement of Facts in Support of the Motion before the Court.  (ECF No. 405).

On February 25, 2026, Plaintiffs filed their Opposition. (ECF Nos. 407 and 408).

On February 27, 2026, the Court issued a Minute Order striking Plaintiffs' Opposition because it failed to comply with the Local Rules for the District of Hawaii.  (ECF No. 410).  The Court granted Plaintiffs an extension of time to file a new Opposition and Concise Statement of Facts in conformity with the applicable rules.  (ECF No. 409).

On March 3, 2026, Plaintiffs filed their Opposition and Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment.  (ECF Nos. 411 and 412).

On March 9, 2026, Defendants filed an Errata to their Motion for Summary Judgment.  (ECF No. 413).

On March 12, 2026, Defendants filed their Reply and their Concise Statement of Facts in Support of their Reply.  (ECF No. 416).

On April 8 and April 13, 2026, Defendants filed Notices of

5

Supplemental Authorities.  (ECF Nos. 418, 420).

The Court elects to decide Defendants' Motion for Summary Judgment without a hearing pursuant to District of Hawaii Local Rule 7.1(c).

## BACKGROUND

**The Following Facts Are Not In Dispute:**

## COVID-19 WORLDWIDE PANDEMIC

Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2), which causes a disease known as "COVID-19," emerged in late 2019 and spread worldwide, causing a major global pandemic.[1]

By early 2020, COVID-19 was declared a pandemic by the World Health Organization ("WHO"), with countries implementing various public health measures to curb the spread.[2]

On March 4, 2020, the Governor of the State of Hawaii issued an Emergency Proclamation, which required masks to be worn in public.[3]

On January 21, 2021, U.S. President Biden issued Executive Order 13998, which required masks to be worn in airports and

---

[1]  Amended Expert Report of Dr. Frederick Chen at p. 2, attached as Ex. FC-1 to Def.'s CSF, ECF No. 405-27

[2] Id. at p. 3

[3] Governor's Eighteenth Proclamation Related to the COVID-19 Emergency, dated February 12, 2021, attached as Ex. JR-14 to Def.'s CSF, ECF No. 405-15

6

aboard commercial aircraft to prevent the spread of COVID-19.[4]

On February 1, 2021, the U.S. Centers for Disease Control and Prevention ("CDC") issued an agency order requiring masks to be worn on public transportation.[5]

The U.S. Transportation Security Administration ("TSA") issued orders through 2021 and 2022, extending Executive Order 13998, which required everyone to wear masks in airports and aboard commercial aircraft.[6]

On February 12, 2021, the Governor of the State of Hawaii issued an Emergency Proclamation that required all travelers to the State to submit to a mandatory screening process.[7]  All persons traveling to the State were subject to a mandatory self-

---

[4] U.S. President's Executive Order 13998, attached as Ex. JR-7 to Def.'s CSF, ECF No. 405-8

[5] CDC Order titled, "Requirement for Persons to Wear Masks While on Conveyances and at Transportation Hubs," 86 Fed. Reg. 8025-30, dated Feb. 1, 2021, attached as Ex. JR-17 to Def.'s CSF, ECF No. 405-18

[6] TSA Press Release dated January 31, 2021, attached as Ex. JR-8 to Def.'s CSF, ECF No. 405-9; TSA Press Release dated April 30, 2021, attached as Ex. JR-9 to Def.'s CSF, ECF No. 405-10; TSA Press Release dated August 20, 2021, attached as Ex. JR-10 to Def.'s CSF, ECF No. 405-11; TSA Statement dated March 10, 2022, attached as Ex. JR-11, ECF No. 405-12; TSA Statement dated April 13, 2022, attached as Ex. JR-12, ECF No. 405-13; TSA Statement dated April 18, 2022, attached as Ex. JR-13, ECF No. 405-14

[7] Governor's Eighteenth Proclamation Related to the COVID-19 Emergency, dated February 12, 2021, at p. 6, attached as Ex. JR-14 to Def.'s CSF, ECF No. 405-15

quarantine with limited exceptions.[8]  The mandatory self-quarantine began from the day of entry into the State of Hawaii and lasted 10 days or the duration of the person's presence in the State, whichever was shorter.[9]  Mandatory quarantine was also required for persons traveling between counties within the State of Hawaii.[10]

By February 12, 2021, there were 26,700 documented cases of COVID-19 in Hawaii, and 425 deaths attributed to the disease.[11]

**DEFENDANT HAWAIIAN AIRLINES, INC.'S RESPONSE TO THE COVID-19 WORLDWIDE PANDEMIC AND ITS VACCINATION POLICY**

**The COVID-19 Pandemic Severely Burdened The Airline Industry And Caused Defendants To Take On Over $1 Billion Dollars In Debt**

Defendant Hawaiian Airlines, Inc. was an international airline based in Honolulu, Hawaii.[12]  All of the Defendant's routes were to or from locations in Hawaii.[13]

In 2019, Defendant Hawaiian Airlines, Inc. transported

---

[8] Id. at p. 7

[9] Id.

[10] Id. at p. 12

[11] Id. at p. 2

[12]  Declaration of Jonathan Snook, Chief Operations Officer of Defendant Hawaiian Airlines, Inc., ("Snook Decl.") at ¶¶ 3, 5, attached to Def.'s CSF, ECF No. 405-43

[13] Id.

approximately 11,737,000 passengers.[14]

In 2020, as COVID-19 hit, the Defendant airline's number of passengers dropped to 3,353,000.[15]  The vast majority of those 3 million passengers flew in January, February, and early March of 2020, prior to the lockdown and government-ordered restrictions.[16]

In 2021, Defendant Hawaiian Airlines, Inc. transported approximately 6,515,000 passengers.[17]

The Hawaiian Defendants suffered financial losses of approximately $896 million dollars and took on over one billion dollars ($1,000,000,000) in debt between 2020 and 2022 due to the COVID-19 pandemic.[18]

---

[14] Deposition of Jonathan Snook ("Snook Depo.") at p. 111, attached to Def.'s CSF as Ex. JR-2, ECF No. 405-3

[15] Id.

[16] Id.

[17] Id. at p. 112

[18] Snook Depo. at pp. 110-12, ECF No. 405-3; Snook Decl. at ¶ 8, attached to Def.'s CSF, ECF No. 405-43; Hawaiian Holdings, Inc.'s Form 10-K filed with the U.S. Securities and Exchange Commission, dated Feb. 15, 2023, attached as Ex. JS-3 to Def.'s CSF, ECF No. 405-46; Hawaiian Holdings, Inc.'s Form 10-K filed with the U.S. Securities and Exchange Commission, dated Feb. 10, 2022, attached as Ex. JS-2 to Def.'s CSF, ECF No. 405-45; Hawaiian Holdings, Inc.'s Form 10-K filed with the U.S. Securities and Exchange Commission, dated Feb. 12, 2021, attached as Ex. JS-1 to Def.'s CSF, ECF No. 405-44; Hawaiian Holdings, Inc.'s Form 8-K filed with the U.S. Securities and Exchange Commission, dated Feb. 8, 2021, attached as Ex. JS-4 to Def.'s CSF, ECF No. 405-47; Hawaiian Holdings Reports 2020 Fourth Quarter and Full Year Financial Results, dated January 26, 2021,

**In August 2021, Defendants Announced Their Vaccination Policy In Response To The COVID-19 Pandemic And Their Significant Financial Losses**

Passengers increased from 2020 to 2021, but employee sickness forced Defendant Hawaiian Airlines, Inc. to cancel flights and lose revenue.[19]  It was reported that between 2020 and 2021 three of Defendants' employees had died from COVID-19, including one employee who was alleged to have contracted the disease after attending a company training.[20]

In 2021, Chief Operations Officer Jonathan Snook was concerned with the inability to predict the levels of COVID outbreaks among staff and their resulting operational disruption.[21]  COO Snook explained that the Hawaiian Defendants

---

attached as Ex. JR-3 to Def.'s CSF, ECF No. 405-4; Hawaiian Holdings Reports 2021 Fourth Quarter and Full Year Financial Results, dated January 25, 2022, attached as Ex. JR-4 to Def.'s CSF, ECF No. 405-5

[19] Snook Decl. at ¶¶ 6, 8, ECF No. 405-43

[20] Declaration of Senior Vice President of Human Resources Robin Kobayashi ("Kobayashi Decl.") at ¶¶ 8-11, attached to Def.'s CSF, ECF No. 405-39; Corporate Communication dated July 22, 2020 from Chief Executive Officer Peter Ingram to all Hawaiian employees regarding the death of flight attendant Jeff Kurtzman, attached as Ex. RK-1 to Def.'s CSF, ECF No. 405-40; E-mail dated August 2, 2021 from Director of Human Resources Lynn San Nicolas to VP of Human Resources Kobayashi and VP of Labor Relations Justin Doane regarding the death of employee Sean Strickland, attached as Ex. RK-2 to Def.'s CSF, ECF No. 405-41; E-mail dated September 1, 2021 from Brent Overbeek to Senior Officers regarding the death of employee Sesilia Mauia, attached as Ex. RK-3 to Def.'s CSF, ECF No. 405-42

[21] Snook Decl. at ¶¶ 4-6, ECF No. 405-43

10

"viewed [their] situation as unique because [they were] on an archipelago in the middle of the Pacific with limited healthcare capacity, limited emergency room capacity, and an inability to deal with large peaks in hospitalizations in the same way that carriers on the mainland can deal with that by putting people in ambulances and moving to an adjacent state."[22]

Senior Vice President of Human Resources Robin Kobayashi stated that in 2021, Defendant Hawaiian Airlines, Inc. reviewed its policies and procedures in an attempt to minimize continuing financial loss during the pandemic.[23]

On August 9, 2021, following guidance from the U.S. Centers for Disease Control and Prevention, Defendant Hawaiian Airlines, Inc. announced a vaccination policy.[24] The vaccination policy required all of Defendant's U.S.-based employees to be vaccinated against COVID-19 by November 1, 2021.[25] The Hawaiian Defendants created a process to allow employees to seek accommodations from the policy by submitting a request to the Human Resources Department by October 1, 2021.[26]

Following the announcement of the Hawaiian Defendants'

---

[22] Snook Depo. at pp. 78-79, ECF No. 405-3

[23] Kobayashi Decl. at ¶ 3, ECF No. 405-39

[24] Id. at ¶ 4

[25] Id.

[26] Id. at ¶¶ 4-6

11

vaccination policy in August 2021, COVID-19 cases rose significantly in Hawaii, with the Hawaii Department of Health reporting a "tidal wave" of 10,817 infections between August 15, 2021 and August 29, 2021.[27]

The effects of the Delta variant surge in August 2021 "convinced Hawaiian management that instituting the Vaccine Policy was necessary to maintaining the safety of Hawaiian's employees."[28]

**Defendants Implemented A Transitional Testing Program From November 1, 2021 to January 4, 2022 To Provide Employees Additional Time To Comply With The Vaccination Mandate**

From November 1, 2021 to January 4, 2022, the Hawaiian Defendants provided and administered a Transitional Period Testing Program.[29]  The temporary testing program allowed employees to test for COVID-19 in lieu of vaccination for a short period to allow employees to become compliant with the vaccination requirement.[30]

---

[27] Hawaii Department of Health Press Release titled, "HAWAII SURPASSES 10,000 ACTIVE COVID-19 CASES," dated August 29, 2021, attached as Ex. JR-5 to Def.'s CSF, ECF No. 405-6

[28] Kobayashi Decl. at ¶ 12, ECF No. 405-39

[29] Snook Decl. at ¶ 15, ECF No. 405-43; Transition Period Testing Program Packet, attached as Ex. VW-1 to Def.'s CSF, ECF No. 405-49

[30] Snook Decl. at ¶ 15, ECF No. 405-43; Kobayashi Decl. at ¶ 21, ECF No. 405-39

The Hawaiian Defendants paid for proctored testing for the employees who enrolled in the Transitional Period Testing Program.[31]  The Hawaiian Defendants paid for the testing in order to maintain accurate, valid, and timely test results.[32]  The Hawaiian Defendants struggled to obtain a vendor who could supply a sufficient number of tests given the surge in COVID-19 infections in the State of Hawaii.[33]

The Hawaiian Defendants paid approximately $320,000 for two months of testing during the Transitional Period Testing Program in November and December 2021.[34]  The Hawaiian Defendants additionally paid two full-time employees and hired two temporary employees to monitor compliance with the testing program, to distribute test kits, and to provide logistical support to the employees enrolled in the Transitional Period Testing Program.[35]

Roughly 15% of the 1,300 tests administered in the first three weeks of November 2021 in the Transitional Testing Program produced untimely or no test results.[36]  Untimely or incomplete

---

[31] Kobayashi Decl. at ¶¶ 22-23, ECF No. 405-39

[32] Id.

[33] Id. at ¶ 24

[34] Id.

[35] Id.; Declaration of Senior Fleet Manager Valerie Wong at ¶¶ 4-6, ("Wong Decl.") attached to Def.'s CSF, ECF No. 405-48

[36] Wong Decl. at ¶ 8, ECF No. 405-48

13

results required those employees to be held out of service.[37] Substitute employees had to be paid overtime to cover for the employees with non-compliant tests.[38]

The Hawaiian Defendants issued over 150 letters of non-compliance to employees during the two months of the Transitional Testing Program.[39]  Non-compliance resulted in additional operational expenses to management and human resources departments.[40]

The two-month Transitional Testing Period ended on January 4, 2022.[41]  The Hawaiian Defendants determined that the testing process was too burdensome to administer and presented significant operational challenges.[42]

**The Hawaiian Defendants Received And Evaluated Hundreds Of Accommodation Requests In Response To The Vaccination Mandate**

After the announcement of the vaccination policy on August 1, 2021, employees were permitted to seek accommodation from the

---

[37] Kobayashi Decl. at ¶ 25, ECF No. 405-39

[38] Snook Decl. at ¶ 15, ECF No. 405-43

[39] Kobayashi Decl. at ¶ 25, ECF No. 405-39

[40] Id.; Wong Decl. at ¶¶ 6, 9, ECF No. 405-48

[41] Wong Decl. at ¶ 4, ECF No. 405-48

[42] Snook Decl. at ¶ 15, ECF No. 405-43; Kobayashi Decl. at ¶ 23, ECF No. 405-39

14

Hawaiian Defendants' vaccination policy by submitting an accommodations request by October 1, 2021.[43]

Typically, the Hawaiian Defendants would receive between 5-10 religious accommodation requests per year.[44]

In the two months between August 1, 2021 and October 1, 2021, the Hawaiian Defendants received 497 requests for religious accommodations and 72 requests for medical accommodations from the vaccination policy.[45]

The Hawaiian Defendants stated that they "examined every single work position and every work location at Hawaiian for which there was an accommodation request for their suitability for reasonable accommodations involving masking and social distancing."[46]

**Defendants Hired Dr. Frederick Ming Chen To Consult Regarding Their Vaccination Policy And Accommodation Requests**

The Hawaiian Defendants hired Dr. Frederick Ming Chen, M.D., M.P.H., to provide expert medical advice and consultation

---

[43] Kobayashi Decl. at ¶¶ 4-6, ECF No. 405-39

[44] See Def.'s CSF at ¶ 20, ECF No. 405; Pl.'s CSF in Response at ¶ 20, ECF No. 412

[45] Senior Director of Leave Management Willard Jackson ("Jackson Decl.") at ¶ 3, attached to Def.'s CSF, ECF No. 405-50; Chart of Vaccination Accommodations Requests attached as Ex. WJ-1 to Def.'s CSF, ECF No. 405-51

[46] Jackson Decl. at ¶ 10, ECF No. 405-50

regarding the vaccine policy and the more than 550 accommodations requests.[47]   Dr. Chen was a professor at the University of Washington Medical School and was Chief of Family Medicine at Harborview Medical Center.[48]  From July 2022 to January 2026, Dr. Chen was the Chief Health Science Officer for the American Medical Association.[49]

Dr. Chen provided guidance to the Defendants' Management and Human Resources personnel.[50]  Dr. Chen stated that he relied upon the prevailing medical opinions at the time, including guidance from the U.S. Centers for Disease Control and Prevention.[51]

Dr. Chen stated that, according to the medical consensus and public health data at the time, vaccination was the single best tool for stopping the spread of COVID-19 and its variants.[52]  Dr. Chen advised Defendants that alternatives to vaccination, such as regular COVID-19 testing, masking, and social distancing, were not sufficient substitutes for vaccination.[53]

---

[47] Kobayashi Decl. at ¶ 13, ECF No. 405-39

[48] Declaration of Dr. Frederick Ming Chen ("Chen Decl.") at ¶¶ 2-3, attached to Def.'s CSF, ECF No. 405-26

[49] Id. at ¶ 1

[50] Id. at ¶¶ 9-10

[51] Id.

[52] Chen Decl. at ¶ 15, ECF No. 405-26; Chen Report at p. 3, attached as Ex. FC-1 to Def.'s CSF, ECF No. 405-27

[53] Chen Decl. at ¶¶ 12-13, ECF No. 405-26; Jackson Decl. at ¶ 12, ECF No. 405-50

**The Hawaiian Defendants Were Required To Comply With Federal And Local Laws As A Federal Transportation Contractor**

At the height of the COVID-19 pandemic, there were a variety of federal and state government orders enacted with respect to COVID-19.[54]  Chief Operations Officer Jonathan Snook stated that the Hawaiian Defendants monitored the various federal and local government orders in order to ensure compliance with the law and to protect employees' safety.[55]

On September 9, 2021, President Biden issued Executive Order 14042, known as the Federal Contractor Mandate.[56]  The order required federal contractors, including the Hawaiian Defendants, to ensure that their employees were vaccinated against COVID-19 except in limited circumstances.[57]

Senior Director of Leave Management Willard Jackson stated that compliance with the Federal Contractor Mandate was set to begin on January 4, 2022, which coincided with the deadline for employees to comply with the Hawaiian Defendants' vaccination

---

[54] Snook Decl. at ¶¶ 7-8, attached to Def.'s CSF, ECF No. 405-43

[55] Jackson Decl. at ¶¶ 5-9, attached to Def.'s CSF, ECF No. 405-50

[56] Id. at ¶¶ 5, 7; Guidance for Federal Contractors and Subcontractors, dated November 10, 2021, attached as Ex. WJ-2 to Def.'s CSF, ECF No. 405-52

[57] Id.

policy.[58]  The Hawaiian Defendants were aware that there was federal court litigation challenging the Federal Contractor Mandate but the airline "determined that in order to best protect its employees, it would continue to comply with the Federal Contractor Mandate's guidelines."[59]

On October 1, 2021, the Governor of the State of Hawaii issued an Emergency Proclamation Related to the State's COVID-19 Delta Response.[60]  By October 2021, "the recorded number of cases and deaths ha[d] continued to increase at an alarming rate, with more than 79,000 documented cases of COVID-19 in the State and more than 780 deaths attributed to this disease."[61]  The Governor explained that the Delta strain variant of COVID-19 was causing a high number of cases in both the State of Hawaii and throughout the United States of America.[62]

In response to the increased risk of infection and in order to "avert unmanageable strains on our healthcare system and other catastrophic impacts to the State," the Hawaii State Governor implemented an Emergency Proclamation to require vaccination and

---

[58] Jackson Decl. at ¶ 5, ECF No. 405-50

[59] Id. at ¶ 9

[60] Governor's Emergency Proclamation Related to the State's COVID-19 Delta Response, attached as Ex. JR-15 to Def.'s CSF, ECF No. 405-16)

[61] Id. at p. 1

[62] Id.

testing for State and County employees.[63]    The Governor also implemented requirements for employees of State Contractors to report vaccination status, to wear masks at State locations, and to provide documentation as to employees' testing results.[64]

By January 26, 2022, the Governor of the State of Hawaii reported "more than 208,000 documented cases of COVID-19 and 1,149 deaths attributed to this disease in the State."[65]

**PLAINTIFFS' REQUESTS FOR EXEMPTION FROM THE VACCINATION POLICY**

**Plaintiff Ronald Lum - Pilot**

Plaintiff Ronald Lum was employed as a pilot for Defendant Hawaiian Airlines, Inc.[66]   He flew on interisland routes from 2014 to January 2022.[67]

On September 23, 2021, Plaintiff Lum submitted a letter to Defendants from Philip Suh, M.D., requesting a medical exemption

---

[63] Id. at pp. 6-7

[64] Id. at pp. 25-26

[65]  Governor's Emergency Proclamation Related to COVID-19 (Omicron Variant), attached as Ex. JR-16 to Def.'s CSF, ECF No. 405-17

[66] Deposition of Ronald Lum ("Lum Depo.") at p. 29, attached as Ex. JR-20 to Def.'s CSF, ECF No. 405-21

[67] Id.

from the vaccination policy.[68]  The entirety of the letter states

as follows:

> To whom it may concern:
>
> Because of patient's medical condition, I would recommend that he not get the covid vaccine at this time.
>
> Electronically signed by Philip Suh, M.D. on 09/23/2021 5:27 p.m. in ElationHealth.[69]

On October 25, 2021, Plaintiff Lum submitted a Religious

Accommodation Request Form.[70]  Plaintiff Lum requested COVID-19

screening and testing as an accommodation.[71]

On November 20, 2021, Plaintiff Lum submitted a Medical

Accommodation Request Form.[72]  On the form, Plaintiff Lum stated

that his request was based on his "medical condition."[73]

Plaintiff Lum requested temperature checks, wellness questions,

COVID-19 testing, and masking as accommodations.[74]

On December 4, 2021, Plaintiff Lum sent an e-mail in support

---

[68] Letter dated Sept. 23, 2021, attached to Ex. JR-20 at p. 16, ECF No. 405-21

[69] Id.

[70] Religious Accommodation Request dated Oct. 25, 2021, attached to Ex. JR-20 at pp. 17-18, ECF No. 405-21

[71] Id. at p. 18

[72] Reasonable Accommodation Request dated Nov. 20, 2021, attached to Ex. JR-20 at p. 20, ECF No. 405-21

[73] Id.

[74] Id.

of his requests.[75]  The e-mail contained no further information regarding his medical condition.

On December 7, 2021, the Hawaiian Defendants denied Plaintiff Lum's medical accommodation request.[76]

On December 17, 2021, the Hawaiian Defendants denied Plaintiff Lum's religious accommodation request.[77]

Plaintiff Lum accepted Defendants' offer of 12-months of unpaid leave as an accommodation beginning on January 5, 2022.[78]

**Plaintiff Sabrina Franks - Customer Service Agent**

Plaintiff Sabrina Franks was employed by Defendant Hawaiian Airlines, Inc. as a customer service agent.[79]  She testified that in her role she directly interacted with passengers and assisted with check-in, ticketing, baggage, boarding, and seating of

---

[75] E-mail dated Dec. 4, 2021, attached to Ex. JR-20 at p. 21, ECF No. 405-21

[76] Letter to Ronald Lum from Hawaiian Airlines titled, "Request for Medical Accommodation - DENIAL," dated Dec. 7, 2021, attached to Ex. JR-20 at p. 23, ECF No. 405-21

[77] Letter to Ronald Lum from Hawaiian Airlines titled, "Request for Religious Accommodation - DENIAL," dated Dec. 17, 2021, attached to Ex. JR-20 at p. 25, ECF No. 405-21

[78] TPTP Leave Acknowledgment dated Dec. 3, 2021, attached to Ex. JR-20 at p. 22, ECF No. 405-21

[79] Deposition of Sabrina Franks ("Franks Depo.") at p. 25, attached as Ex. JR-21 to Def.'s CSF, ECF No. 405-22

passengers.[80]

On September 30, 2021, Plaintiff Franks submitted a Religious Accommodation Request Form.[81]  Plaintiff requested masking, temperature and wellness checks, social distancing, and twice a month testing at Defendants' expense as accommodations.[82]

On December 13, 2021, the Hawaiian Defendants denied Plaintiff Franks's religious accommodation request.[83]

Plaintiff Franks was receiving workers' compensation and was not currently in service at her job at the time of her accommodation request.[84]

**Plaintiff Erwin Young - Lead Aircraft Mechanic**

Plaintiff Erwin Young was employed by Defendant Hawaiian Airlines, Inc. as a lead aircraft mechanic for the sheet metal composite shop.[85]  Plaintiff Young was required to attend daily

---

[80] Id.

[81] Religious Accommodation Request dated Sept. 30, 2021, attached to Ex. JR-21 at pp. 10-11, ECF No. 405-22

[82] Id. at p. 11

[83] Letter to Sabrina Franks from Hawaiian Airlines titled, "Request for Religious Accommodation," dated Dec. 13, 2021, attached to Ex. JR-21 at p. 13, ECF No. 405-22

[84] Religious Accommodation Request dated Sept. 30, 2021, attached to Ex. JR-21 at p. 11, ECF No. 405-22

[85] Deposition of Erwin Young ("Young Depo.") at p. 26, attached as Ex. JR-22 to Def.'s CSF, ECF No. 405-23

meetings in a maintenance office room with between 10 and 15 other employees.[86]

According to Plaintiff Young, approximately 25 to 35 other employees were in the hangar where he worked.[87]  He testified that he also often spent work hours in a smaller office shared with other lead mechanics.[88]

On September 30, 2021, Plaintiff Young submitted a Religious Accommodation Request Form.[89]  Plaintiff requested wellness checks and saliva testing at Defendants' expense as accommodations.[90]

On December 16, 2021, the Hawaiian Defendants denied Plaintiff Young's religious accommodation request.[91]

**Plaintiff Puanani Badiang - Corporate Trainer**

Plaintiff Puanani Badiang was employed by Defendant Hawaiian

---

[86] Id. at pp. 30-31

[87] Id. at p. 36

[88] Id. at p. 37

[89] Religious Accommodation Request dated Sept. 30, 2021, attached to Ex. JR-22 at pp. 14-15, ECF No. 405-23

[90] Id. at p. 15

[91] Letter to Erwin Young from Hawaiian Airlines titled, "Request for Religious Accommodation - DENIAL," dated Dec. 17, 2021, attached to Ex. JR-22 at pp. 16-17, ECF No. 405-23

Airlines, Inc. as one of five corporate trainers.[92]    Plaintiff

Badiang testified that her position required in-person training

of Defendants' employees.[93]   Plaintiff Badiang explained that in-

person trainings were usually conducted in a small office or

classroom.[94]

On September 28, 2021, Plaintiff Badiang submitted a

Religious Accommodation Request Form.[95]   Plaintiff did not

request any accommodation aside from exemption from vaccination.

On December 14, 2021, the Hawaiian Defendants denied

Plaintiff Badiang's religious accommodation request.[96]

Plaintiff Badiang left her position in January 2022 and at

that time there was only one other corporate trainer in the

entire company.[97]

_____

[92] Deposition of Puanani Badiang ("Badiang Depo.") at pp.
60-61, attached as Ex. JR-23 to Def.'s CSF, ECF No. 405-24

[93] Id. at pp. 33-37

[94] Id. at pp. 38-40

[95] Religious Accommodation Request dated Sept. 28, 2021,
attached to Ex. JR-23 at pp. 25-26, ECF No. 405-24

[96] Letter to Puanani Badiang from Hawaiian Airlines titled,
"Request for Religious Accommodation," dated Dec. 14, 2021,
attached to Ex. JR-23 at p. 34, ECF No. 405-24

[97] Badiang Depo. at pp. 60-61, attached as Ex. JR-23, ECF
No. 405-24

**PLAINTIFFS' ARGUMENT:**

Plaintiffs do not genuinely dispute any material facts. Plaintiffs agree Defendants suffered from financial hardship as a result of the COVID-19 pandemic including more than $800 million dollars in lost revenue and $1 billion dollars in debt.

Plaintiffs do not dispute that Defendants suffered from administrative and operational burdens during the COVID-19 pandemic including staffing shortages and flight cancellations.

Plaintiffs do not dispute that the Defendants received more than 550 employee accommodations requests within a two-month period following the announcement of the vaccination policy.

Plaintiffs do not dispute that the Hawaiian Defendants relied upon the opinions of Dr. Chen and the general consensus of public health officials, including guidance from the U.S. Centers for Disease Control and Prevention, at the time they implemented their vaccination policy.

Plaintiffs disagree that vaccination should have been required.  Plaintiffs argue, as a matter of law, that providing them with their requested accommodations would not result in any health or safety costs, operational burdens, or financial hardship to the Hawaiian Defendants.  Plaintiffs cite to an incomplete report provided by Dr. Ram Durisetti, who disagrees with the prevailing medical consensus about vaccine efficacy. Plaintiffs and Dr. Durisetti rely on "hindsight reasoning" and on

25

material that was published and events that occurred subsequent to the date of the Hawaiian Defendants' employment decisions.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  To defeat summary judgment "there must be sufficient 'evidence that a reasonable jury could return a verdict for the nonmoving party.'" Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That

26

burden is met by pointing out to the district court that there is

an absence of evidence to support the nonmoving party's case.

Id.

If the moving party meets its burden, then the opposing

party may not defeat a motion for summary judgment in the absence

of probative evidence tending to support its legal theory.

Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282

(9th Cir. 1979).  The opposing party must present admissible

evidence showing that there is a genuine issue for trial.  Fed.

R. Civ. P. 56(c); Brinson v. Linda Rose Joint Venture, 53 F.3d

1044, 1049 (9th Cir. 1995).  "If the evidence is merely

colorable, or is not significantly probative, summary judgment

may be granted."  Nidds, 113 F.3d at 916 (quoting Anderson, 477

U.S. at 249-50).

The court views the facts in the light most favorable to the

non-moving party.  State Farm Fire & Cas. Co. v. Martin, 872 F.2d

319, 320 (9th Cir. 1989).  Opposition evidence may consist of

declarations, admissions, evidence obtained through discovery,

and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex,

477 U.S. at 324.  The opposing party cannot, however, stand on

its pleadings or simply assert that it will be able to discredit

the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W.

Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on

mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v.

27

Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  "When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact."  Hansen v. U.S., 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## **ANALYSIS**

Plaintiffs were employees of Defendant Hawaiian Airlines, Inc., when on August 1, 2021, it announced that its U.S.-based employees were required to be vaccinated against COVID-19.

Plaintiffs each requested exemption or accommodation from the policy on religious and/or medical grounds.  Plaintiffs' requests were denied.

Plaintiffs filed suit against Defendant Hawaiian Airlines, Inc. and its parent company Hawaiian Holdings, Inc. ("Hawaiian Defendants").  The only remaining claims in the Complaint are:

**COUNT I:**    Religious Discrimination - Failure to Accommodate, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) (as to all four Plaintiffs); and

**COUNT IV:**   Disability Discrimination - Failure to Accommodate, in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq. (as to Plaintiff Lum).

Defendants seek summary judgment in their favor as to both counts.  The Hawaiian Defendants assert that granting the Plaintiff employees' requests to be exempt from the vaccination policy would have placed an undue hardship on the company and endangered other employees and the public.

## I.    **Plaintiffs' Claims For Religious Discrimination Because Of A Failure To Accommodate**

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to discriminate against an employee because of the employee's religion.  42 U.S.C. § 2000e-2(a).  A claim for religious discrimination pursuant to Title VII may be asserted based on a theory of failure to accommodate an employee's religious beliefs.  Peterson v. Hewlett-Packard Co., 358 F.3d 599, 603 (9th Cir. 2004); Tiano v. Dillard Dep't Stores, Inc., 139 F.3d 679, 681 (9th Cir. 1998).

To establish a failure to accommodate religion claim at the summary judgment stage, a plaintiff must set forth a prima facie case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer subjected him to an adverse employment action because of his inability to fulfill the job requirement.  Peterson, 358 F.3d at 606.

Once a plaintiff establishes a prima facie case, the burden

29

then shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship.  Id.

### A.    Prima Facie Case Of Failure To Accommodate Religion

It is unclear at this stage whether each Plaintiff can establish a prima face case of failure to accommodate his or her religious beliefs.  The Court has not been provided with sufficient information to evaluate if Plaintiffs informed the Hawaiian Defendants of their specific religious beliefs and how the beliefs genuinely conflicted with COVID-19 vaccination.[98]

The prima facie issue is not briefed in the Motion for Summary Judgment.  As a result, the Court assumes, without deciding, that each Plaintiff can establish a prima facie case of failure to accommodate his or her religious beliefs.

The burden then shifts to the Hawaiian Defendants to show that they could not accommodate Plaintiffs without undue hardship on the conduct of their business.  Petersen v. Snohomish Regional Fire and Rescue, 150 F.4th 1211, 1217-18 (9th Cir. 2025).

---

[98]    See Detwiler v. Mid-Columbia Medical Center, 156 F.4th 886, 890 (9th Cir. 2025), order denying rehearing and rehearing en banc in 172 F.4th 1072 (9th Cir. Apr. 15, 2026); Conner v. City of Emeryville, 818 F.Supp.3d 1082, 1102 (N.D. Cal. Jan. 5, 2026); see also Zimmerman v. PeaceHealth, 2025 WL 2458051, *24 (W.D. Wash. Aug. 26, 2025).

**B.   Undue Hardship**

The United States Supreme Court has explained that an undue hardship is more than a de minimis cost.  Groff v. DeJoy, 600 U.S. 447, 453-54 (2023).  The undue hardship analysis must take into account all relevant factors, including the particular accommodations at issue and their practical impact in light of the nature, size, and operating costs of an employer.  Id. at 471.

In the context of vaccine mandates during the COVID-19 pandemic, the Ninth Circuit Court of Appeals ruled in Petersen v. Snohomish Regional Fire and Rescue, 150 F.4th 1211, 1218-1221 (9th Cir. 2025), that it is necessary to examine: (1) health and safety costs, (2) operational burdens, and (3) financial burdens on the employer in order to evaluate undue hardship.

The Ninth Circuit Court of Appeals recently held in Williams v. Legacy Health, ___ F.4th ___, 2026 WL 1239760, *3-*4 (9th Cir. May 6, 2026) that the costs and burdens examined in an undue hardship analysis need not be actually realized by the employer in order for the undue hardship defense to apply.  A risk of undue hardship is sufficient for the defense to apply so long as the risk is realistic.  Id. (citing Petersen, 150 F.4th at 1222 and E.E.O.C. v. Townley Eng'g & Mfg. Co., 859 F.2d 610, 615 (9th Cir. 1988)).

31

### 1.  Health And Safety Costs

    a.  **The Medical Consensus in 2021 Provided That COVID-19 Vaccination Prevented The Spread Of The Disease, Reduced The Severity Of The Illness, And Lowered Risks Of Hospitalization And Death**

The Hawaiian Defendants provided a Declaration and an expert report from their medical expert Dr. Frederick Ming Chen, M.D., M.P.H.[99]

In 2021 and 2022, Dr. Chen served as an advisor to the Hawaiian Defendants in their implementation of their vaccination policy and their review of accommodations requests.[100]  At that time, Dr. Chen served as a Professor of Family Medicine at the University of Washington and Chief of Family Medicine at Harborview Medical Center in Seattle.[101]  From July 2022 to January 2026, Dr. Chen served as the Chief Health and Science Officer at the American Medical Association.[102]

In his expert report, Dr. Chen explains that the consensus in the scientific community and by public health authorities in 2021 was that COVID-19 vaccination was necessary to protect the

---

[99] Chen Decl., attached to Def.'s CSF, ECF No. 405-26; Amended Expert Report of Dr. Frederick Chen, attached as Ex. FC-1 to Def.'s CSF, ECF No. 405-27.

[100] Chen Decl. at ¶¶ 8-10, ECF No. 405-26

[101] Id. at ¶¶ 2-3

[102] Id. at ¶ 1

public, reduce the severity of the illness, and lower the risk
and number of hospitalizations and deaths due to COVID-19.[103]

The Ninth Circuit Court of Appeals, en banc, has recognized
that the medical consensus from health experts, including the
U.S. Centers for Disease Control and Prevention, supported
vaccination mandates by employers during the height of the COVID-
19 pandemic in 2021.  Health Freedom Defense Fund, Inc. v.
Carvalho, 148 F.4th 1020, 1024 (9th Cir. 2025) (en banc), cert.
denied, __ S.Ct.__, 2026 WL 1377038, at *1 (U.S. May 18, 2026)
(No. 25-765).

The Ninth Circuit Appellate Court ruled that it is
reasonable for an employer to rely on the prevailing medical
consensus to implement a vaccination mandate for its employees.
Health Freedom Defense Fund, Inc., 148 F.4th at 1031 (finding "it
was more than reasonable for the LAUSD to conclude that COVID-19
vaccines would protect the health and safety of its employees and
students"); see Williams v. Legacy Health, __ F.4th __, 2026 WL
1239760, *4 (9th Cir. May 6, 2026) (finding the employer was
entitled to summary judgment where "[t]he statistical evidence
available to Legacy revealed that high vaccination rates, while

---

[103] Chen Expert Report at pp. 2-4, ECF No. 405-27; Chen Decl.
at ¶¶ 15-16, ECF No. 405-26.  Dr. Chen states that "COVID-19
vaccines are safe, effective, and associated with mild side
effects and a greatly reduced risk of severe illness or death.
Once administered, vaccines are a safety measure that cannot be
circumvented or subject to human error."  (Chen Decl. at ¶ 11,
ECF No. 405-26).

not a panacea, reduced overall transmission risk. Vaccination also proved highly effective at preventing infection in the healthcare setting").

### b. Risks To The Public, Employees, and Customer Health

In order for an employer to prevail on an undue hardship defense, it must demonstrate that accommodating the plaintiff would result in substantial costs, not just de minimis costs. Groff, 600 U.S. at 469.

The substantial costs required for an undue hardship defense include risks to the health and safety of the employer's staff and its clients.  Williams, __ F.4th __, 2026 WL 1239760, at *3. A risk of undue hardship is substantial when the risk is realistic and not merely conceivable or hypothetical.  Id. (citing Petersen, 150 F.4th at 1222).

In Williams v. Legacy Health, __ F.4th __, 2026 WL 1239760, *4 (9th Cir. May 6, 2026), the Ninth Circuit Appellate Court ruled that the employer was entitled to summary judgment because allowing its employees to be exempt from the employer's vaccination policy posed realistic health and safety risks.  The Appellate Court ruled that granting the employees' exemption requests posed three distinct risks to the employer, as follows:

> First, there was a risk that Employees would become ill and cause staffing issues from their absence.

34

> Second, much like the firefighters in <u>Petersen</u>,
> Employees' risk of infection posed concerns for other
> staff needed to treat patients.
>
> Finally, the transmission risk would also affect
> Legacy's patient population, many of whom had
> preexisting conditions—or comorbidities—which could
> cause an even greater strain on Legacy's services. At
> several points in the record, Legacy's expert examined
> alternative safety protocols—including masking, using
> other personal protective equipment, and regular
> testing—and concluded at each turn that those
> alternatives were not sufficient replacement[s] for
> vaccination.

<u>Id.</u> (internal quotations omitted).

Just as in <u>Williams</u>, the undisputed evidence in the record here demonstrates that allowing Plaintiffs to be exempt from the Hawaiian Defendants' vaccination policy posed realistic risks that: (1) Plaintiffs would become ill and cause staffing issues, (2) Plaintiffs' risk of infection posed concerns for the wellness of other staff, and (3) the transmission risk would also affect the Hawaiian Defendants' customers and the public in airports and aboard aircraft.

In August 2021, COVID-19 cases rose significantly in Hawaii.[104]  The Hawaii Department of Health reported a "tidal wave" of 10,817 infections between August 15, 2021 and August 29, 2021.[105]

---

[104]   Hawaii Department of Health Press Release entitled, "HAWAII SURPASSES 10,000 ACTIVE COVID-19 CASES," dated August 29, 2021, attached as Ex. JR-5 to Def.'s CSF, ECF No. 405-6

[105] <u>Id.</u>

Surges in positive cases due to variants of the virus
"convinced Hawaiian management that instituting the Vaccine
Policy was necessary to maintaining the safety of Hawaiian's
employees."[106]  By September 2021, it had been reported that three
of Defendants' employees had died as a result of COVID-19.[107]  One
of the employees who died was a flight attendant who tested
positive for COVID-19 along with 16 others after an in-person
training event held in the conference rooms at Hawaiian's
corporate headquarters.[108]

Just as the rise in cases from the Delta variant posed a
risk to the defendant employer in <u>Williams</u>,  __ F.4th __, 2026 WL
1239760, at *4, the rise in COVID-19 cases from the Delta variant
in August 2021 provided a realistic risk of harm to the Hawaiian
Defendants' business as they reasonably sought to ensure that
their employees were vaccinated.

Numerous courts have found that the possibility of an
unvaccinated individual getting others sick is a non-speculative
risk that supports a finding of undue hardship on an employer in

---

[106] Declaration of Defendant's Vice President of Human
Resources Robin Kobayashi at ¶ 12, ECF No. 405-39

[107] Chen Expert Report at p. 3, ECF No. 405-27; Kobayashi
Decl. at ¶ 8, ECF No. 405-39

[108] Kobayashi Decl. at ¶ 8, attached to Def.'s CSF, ECF No.
405-39; Corporate Communication dated July 22, 2020 from Chief
Executive Officer Peter Ingram to all Hawaiian employees
regarding the death of flight attendant Jeff Kurtzman, attached
as Ex. RK-1 to Def.'s CSF, ECF No. 405-40

the COVID-19 context.  Petersen, 150 F.4th at 1219; Hall v.

Sheppard Pratt Health Sys., 155 F.4th 747, 753-54 (4th Cir. 2025)

(finding that "[i]t is likely that granting even [a] single

religious exemption would have constituted an undue hardship for

the hospital system"); Melino v. Boston Med. Ctr., 127 F.4th 391,

397-98 (1st Cir. 2025); Bordeaux v. Lions Gate Entertainment,

Inc., 703 F.Supp.3d 1117, 1136 (C.D. Cal. Nov. 21, 2023)

(collecting cases), aff'd, 2025 WL 655065 (9th Cir. Feb. 28,

2025).

Just as in Williams, the undisputed evidence in the record

demonstrates a realistic risk of harm to the health and safety of

Defendants' employees, their business, and the public.

### c.   Testing and Masking Were Not Reasonable Alternatives To Vaccination

Dr. Chen explains in his expert report that alternatives to

vaccination were not reasonable in this case.[109]  Dr. Chen

explained why testing was an insufficient accommodation, as

follows:

> While vaccines are prophylactic measures meant to
> prevent the contraction and transmission of COVID-19,
> testing is a diagnostic tool that simply determines
> whether an individual has COVID-19 at a particular
> moment in time.  Therefore, it is possible for an
> employee to test negative on a given day, contract
> COVID-19 after the test is administered, and be
> contagious before the next test is administered.  In

---

[109] Chen Decl. at ¶ 12, ECF No. 405-26

the meantime, that employee could have exposed their colleagues, customers, or other members of the community to COVID-19.  Additionally, any lag time between obtaining a test swab from an employee to receiving a positive test result would enable an infected employee to expose those around them to COVID-19.  Finally, tests are not 100% accurate, further risking the possibility than an infected employee could expose others to COVID-19.[110]

Dr. Chen also explained why masking and social distancing were insufficient accommodations:

> Other measures like masking and social distancing are similarly insufficient.  As a preventative measure, masking requires that the employee properly wear a well-fitting mask at all relevant times....  Unfortunately, as I have observed, it can be difficult for individuals to remain consistently vigilant with mask-wearing, which reduces what protection masking does provide.  Similarly, social distancing requires constant attention to where an individual is situated as compared to others, and is therefore also subject to human discretion an error.[111]

Although Plaintiffs each submitted declarations that stated that they would have agreed to testing and masking, "Plaintiffs fail to provide any evidence that their proposed accommodation would have been a reasonable alternative to vaccination." Petersen, 150 F.4th at 1219.  Plaintiffs' general assertions that they could have safely performed their jobs with testing and masking are "unsupported by any medical evidence and would be impossible to prove at trial."  Id. at 1220.

Even if Plaintiffs would have agreed to testing and masking,

---

[110] Id.

[111] Chen Decl. at ¶ 13, ECF No. 405-26

Plaintiff provide no admissible evidence to dispute Dr. Chen's findings that testing, masking, and social distancing were subject to user error and less effective than vaccination. Testing was just a diagnostic tool, unlike vaccination which was a prophylactic means to control outbreaks.[112]

Plaintiffs argue that the Hawaiian Defendants were not motivated by health and safety costs. Plaintiffs' argument is not relevant and misplaced. See Oka v. United Airlines, Inc., 2026 WL 810815, *8 (N.D. Ill. Mar. 24, 2026) *8 (finding the possible, multiple motivations why the airline imposed a vaccination mandate were not relevant and did not undercut the evidence that accommodating the pilot posed an undue hardship).

Plaintiffs ask the Court to consider responses of other airlines and employers to the COVID-19 pandemic. As explained by the Ninth Circuit Court of Appeals, responses taken by other employers, especially with respect to the COVID-19 pandemic, are not relevant to the evaluation of reasonable accommodations and undue hardship to a particular defendant. Williams, __ F.4th __, 2026 WL 1239760, at *3-*4 (citing Groff, 600 U.S. at 470)). The undue hardship analysis is limited to the context of the particular business before the court, and not the decisions of any other employer. Id.

There is also undisputed evidence in the record that the

---

[112] Id. at ¶ 12

temporary testing program implemented by the Hawaiian Defendants was unduly burdensome.[113]  The testing program was not effective and resulted in financial burdens and operational disruptions due to non-compliance and untimely testing.[114]  Defendants issued over 150 non-compliance letters in two months and suffered unpredictable staffing shortages when it allowed testing in lieu of vaccination.[115]

Plaintiffs' requests to be exempt from the vaccination policy would have resulted in an undue hardship to Defendants because it would have jeopardized the safety of others, including Plaintiffs' co-workers, Defendants' customers, and the public. See Bhatia v. Chevron, 734 F.2d 1382, 1383-84 (9th Cir. 1984); Bordeaux, 2025 WL 655065, at *2 (9th Cir. Feb. 28, 2025); Efimoff v. Port of Seattle, 2024 WL 4765161, at *9 (W.D. Wash. Nov. 13, 2024) (finding proposed accommodation of masking, periodic testing, and social distancing would have resulted in an undue hardship on the employer in the context of COVID-19); White v. Columbia Sportswear Co., 2025 WL 4677360, *15-*19 (D. Or. Nov. 20, 2025), adopted in 2026 WL 967325, *1 (D. Or. Apr. 7, 2026).

---

[113] Kobayashi Decl. at ¶¶ 23-26, ECF No. 405-39

[114] Id.; Def.'s CSF at ¶¶ 21-25, ECF No. 405

[115] Def.'s CSF at ¶¶ 24-25, ECF No. 405

>        **d.    Plaintiffs' Job Positions Required Them To Be
>               Physically Present And Social Distancing Was
>               Not A Reasonable Alternative To Vaccination**

The Ninth Circuit Court of Appeals ruled in <u>Petersen</u> that courts should look to the United States Equal Employment Opportunity Commission ("EEOC") for guidance to determine if health and safety costs would have imposed an undue hardship on an employer.  <u>Petersen</u>, 150 F.4th at 1220 (citing <u>Groff</u>, 600 U.S. at 471).

The EEOC stated that when considering undue hardship in the context of COVID-19, employers should consider if the employee "works in a solitary or group setting," "has close contact with other employees or members of the public," and "works outdoors or indoors."[116]

Each of the EEOC's identified factors supports a finding of undue hardship in this case.

Plaintiffs do not dispute that each of their job roles required them to work in-person and could not be accommodated with remote work.  Pilots, customer service agents, maintenance workers, and corporate trainers all required interaction with co-workers and had to be physically present in public settings and

---

[116] <u>Petersen</u>, 150 F.4th at 1220 (citing <u>What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws</u>, EEOC (published Mar. 1, 2022), https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-an d-other-eeo-laws [https://perma.cc/CQ9C-JPNY]).

required travel through airports.  See Oka, 2026 WL 810815, at *8
(finding undue hardship based on risk of transmitting COVID-19 by
pilots because "pilots must walk to and from the airplane, often
through a crowded airport. They also spend time with the rest of
their flight crew between flights, for example, spending layovers
at a Union-approved hotel. United might have viewed its flights
as safe and nonetheless been concerned that unvaccinated pilots
could spread COVID elsewhere at work").

Ronald Lum, as a pilot, sat in close quarters in cockpits
and the physical dimensions of the cockpits in Hawaiian's
aircraft do not allow for social distancing.[117]

Sabrina Franks, as a customer service agent, required
interaction with customers regularly, even if she was assigned
light duty in one of the lounges.[118]

Erwin Young, as a lead aircraft mechanic, worked with other
mechanics in enclosed indoor spaces and held regular meetings in
a small office.[119]

---

[117] Jackson Decl. at ¶ 18, ECF No. 405-50; Deposition of
Ronald Lum at pp. 29-30, attached as Ex. JR-20 to Def.'s CSF, ECF
No. 405-21;

[118] Jackson Decl. at ¶ 19, ECF No. 405-50; Deposition of
Sabrina Franks at pp. 25-26, attached as Ex. JR-21 to Def.'s CSF,
ECF No. 405-22

[119] Jackson Decl. at ¶ 20, ECF No. 405-50; Deposition of
Erwin Young at pp. 26, 30-31, 36-38, attached as Ex. JR-22 to
Def.'s CSF, ECF No. 405-23; Declaration of Maintenance Manager
Brian Kirkpatrick at ¶¶ 1-4, attached to Def.'s CSF, ECF No. 405-
35; Photo of Sheet Metal Hangar, attached as Ex. BK-1 to Def.'s

Puanani Badiang was one of two corporate trainers by January 2022 who led training sessions of current and incoming employees in indoor group settings.[120]

Allowing Plaintiffs to work in airports unvaccinated in late 2021 would have come at a substantial cost to the Hawaiian Defendants. The objective, unrebutted medical evidence shows that Defendants would have faced significant health and safety risks by allowing unvaccinated employees to continue working and endangering co-workers, customers, and the public. It is well-established that public health experts at the time recommended that individuals receive COVID-19 vaccinations and had been reporting that such vaccinations were effective in preventing the spread of the disease. Health Freedom Defense Fund, Inc., 148 F.4th at 1024 (en banc); Williams, __ F.4th __, 2026 WL 1239760, at *3-*4.

The threat to the health and safety of Defendants' employees and the public at large in allowing unvaccinated employees to

_____

CSF, ECF No. 405-36; Photo of Maintenance Office, attached as Ex. BK-2 to Def.'s CSF, ECF No. 405-37; Photo of floor plan of the hangar attached to Def.'s BK-3 to Def.'s CSF, ECF No. 405-38

[120] Jackson Decl. at ¶ 21, ECF No. 405-50; Deposition of Puanani Badiang at pp. 28-29, 33-41, 45, 61, attached as Ex. JR-23 to Def.'s CSF, ECF No. 405-24; Declaration of Project Manager Rachelle Fushikoshi at ¶¶ 1-3, attached to Def.'s CSF, ECF No. 405-32; Photos of floor plans of corporate training classrooms, attached as Ex. RF-1 to Def.'s CSF, ECF No. 405-33; Photo of corporate training classroom, attached as Ex. RF-2 to Def.'s CSF, ECF No. 405-34

work in Defendants' aircraft, in airports, and in crowded public settings is undisputed.  "[I]t was more than reasonable for [the employer] to conclude that COVID-19 vaccines would protect the health and safety of its employees."  Health Freedom Defense Fund, Inc., 148 F.4th at 1031.

Permitting Plaintiffs to remain unvaccinated at work would have risked the health and safety of others in the workplace (even with mitigation measures such as masking, testing, and social distancing), and such health and safety risks amount to an undue hardship on Defendants in this case.  Petersen, 150 F.4th at 1219-20; Williams, __ F.4th __, 2026 WL 1239760, at *3-*4; Trusov v. Ore. Health & Sci. Univ., 2025 WL 2462782, at *5-*6 (D. Or. Aug. 26, 2025).

> ### e.    Plaintiffs' Partial Expert Report Relies On Hindsight Reasoning And Material That Was Published After The Employment Decisions Were Made

It is well-settled that an employer cannot be liable for failure to provide an accommodation based on information that was not known to the employer at the time of its decision-making. Cohen v. Fred Meyer, Inc., 686 F.2d 793, 798 (9th Cir. 1982).

The Ninth Circuit Court of Appeals has definitively ruled that an employer cannot be liable for failure-to-accommodate based on information regarding COVID-19 and COVID-19 vaccinations that did not exist at the time it denied an accommodation

44

request.  Petersen, 150 F.4th at 1222.

In Petersen, the Ninth Circuit ruled that an employer's accommodation decision cannot be evaluated in hindsight.  Id. Future medical studies and post-pandemic debates over COVID-19 are not relevant in evaluating a failure-to-accommodate claim and the undue hardship risk faced by the employer.  Id.; see Williams, __ F.4th __, 2026 WL 1239760, at *4 (explaining the undue hardship analysis is limited to the scientific evidence and COVID data that was then available to the employer).

Here, Plaintiffs have submitted excerpts of an expert report from Dr. Ram Durisetti.[121]  Dr. Durisetti disagrees with Dr. Chen and the prevailing medical consensus at the time of Defendants' accommodations decisions.  Dr. Durisetti has his own opinions about vaccination efficacy and COVID-19.  Dr. Durisetti's opinions, even if admissible, were not available to Defendants at the time Plaintiffs requested their accommodations.

Dr. Durisetti does not (and cannot) dispute that the prevailing medical consensus at the time of the Hawaiian Defendants' decision-making in 2021 was that vaccination would promote employee and public safety from COVID-19 and limit operational disruption.  In Health Freedom Defense Fund, Inc. v. Carvalho, 148 F.4th at 1031 (en banc), the Ninth Circuit Court of

---

[121] Excerpts of Revised Expert Report of Ram Durisetti, M.D., Ph.D., attached as Ex. 6 to Pl.'s CSF, ECF No. 412-7

Appeals recognized that CDC guidance in 2021 reported that COVID-19 vaccines were "highly effective at protecting vaccinated people against symptomatic and severe COVID-19," that "[f]ully vaccinated people are less likely to become infected," and "less likely to get and spread SARS-CoV-2," and that the CDC recommended that "everyone 5 years and older protect themselves from COVID-19 by getting fully vaccinated." (internal quotations and citations omitted).

Dr. Durisetti does not dispute that the Hawaiian Defendants relied on guidance from both the U.S. Centers for Disease Control and Prevention and Dr. Chen in implementing the vaccination policy and in reviewing Plaintiffs' accommodations requests.

Plaintiffs impermissibly attempt to rely on information and studies conducted after-the-fact.  See Williams, __ F.4th __, 2026 WL 1239760, at *4 (finding the employer was entitled to summary judgment where the employees pointed to no evidence that contradicted the employer's contemporary assessment regarding COVID-19 vaccines but rather attempted to rely on post-vaccine data and hindsight).

The only medical study evidence that was provided in Plaintiffs' Opposition was first issued on January 19, 2022,[122] well-after the date that the Defendants denied Plaintiffs'

---

[122] Morbidity and Mortality Weekly Report dated January 19, 2022, attached as Ex. 26 to Pl.'s CSF, ECF No. 412-27

46

requests for accommodations in 2021.

### f.    Plaintiffs' Partial Expert Report Is
###       Unreliable And Incomplete

Dr. Durisetti does not attach any medical evidence or studies to his report.  No other medical evidence has been provided by Plaintiffs in Opposition to Defendants' Motion for Summary Judgment.  It is difficult to evaluate the relevancy and reliability of Dr. Durisetti's partial report.  Engilis v. Monsanto Co., 151 F.4th 1040, 1048-50 (9th Cir. 2025); see Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993).

The evidence cited in Dr. Durisetti's partial report relies on website links that generally do not specify a publication date and do not prevent the information from being edited.  Dr. Durisetti's amended report, as provided in Opposition to Defendants' Motion, is incomplete as it is missing numerous paragraphs and pages.[123]  In the portion of the report provided with Plaintiffs' Opposition, Dr. Durisetti relies on non-peer reviewed information with little or no methodology and relies on information that was published after the accommodations decisions

---

[123] The report appears to be missing paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 33, 34, 35, 36, 37, 38, 39, 40, and 46 onward omitted from the exhibit, see Revised Expert Report of Ram Durisetti, M.D., Ph.D., attached as Ex. 6 to Pl.'s CSF, ECF No. 412-7; District of Hawaii Local Rule 56.1(b), (f)

were made.

The incomplete, partial report does not allow the Court to review whether the reasoning or methodology underlying Dr. Durisetti's opinions are reliable and whether the reasoning or methodology can properly be applied to the facts at issue.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 157 (1999) (nothing requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert).

The information in Dr. Durisetti's partial report does not create any genuine issues of material fact.  It is necessary to confine the evidence regarding the availability of reasonable accommodations and the undue hardship defense to the information that was available to the employer when it made its adverse employment decision.  See Williams, __ F.4th __, 2026 WL 1239760, at *4.[124]

Dr. Durisetti's opinions disagreeing with the vaccination policy and critiquing the efficacy of COVID-19 vaccines in hindsight do not raise genuine issues of material fact. Richardson v. National Basketball Association, 2025 WL 2402614 at *11-13 (S.D.N.Y. Aug. 18. 2025) (plaintiff's expert's

---

[124] See also Lavelle-Hayden v. Legacy Health, 744 F.Supp.3d 1135, 1152 (D. Or. 2024); Efimoff, 2024 WL 4765161, at *9 (collecting cases).  The First Circuit Court of Appeals has held, just like the Ninth Circuit Court of Appeals, that an employer may permissibly rely on the prevailing public health medical consensus in implementing a vaccination policy.  Rodrique v. Hearst Communications, Inc., 126 F.4th 85, 91-92 (1st Cir. 2025).

"disagreements with public health management of the pandemic are irrelevant to the particular issues that created hardship for the NBA and the reasonableness of the NBA's reliance on its experts in 2021 and 2022"); see Rosa v. City of Issaquah, 2025 WL 2733672, at *14-*19 (W.D. Wash. Sept. 25, 2025); Parker v. PeaceHealth, 2024 WL 4993472, at *3-*5 (D. Or. Dec. 5, 2024).

The Hawaiian Defendants were permitted to rely on the public health consensus as it existed at the time of the employment decisions.  Health Freedom Defense Fund, Inc., 148 F.4th at 1031. Dr. Durisetti's disagreement with the medical consensus does not create a dispute of fact for the jury.  See Oka, 2026 WL 810815, at *6 (finding that United Airlines properly relied on the prevailing medical consensus at the time that vaccination was the most effective way of containing COVID-19 and that the expert's reliance on other studies did not create a genuine issue of material fact); see also Carlson v. City of Redmond, 2025 WL 3496535, at *10-*11 (W.D. Wash. Dec. 5, 2025); Nilsen v. Univ. of Wash. Med. Ctr., 2024 WL 4723233, at *13 (W.D. Wash. Nov. 8, 2024); Zimmerman, 2025 WL 2458051, at *18.

### 2.    Operational Burdens

#### a.    Cumulative Hardship Given The Numerosity Of The Accommodations Requests

It is appropriate for the court to consider the aggregate or cumulative effects of providing accommodations when multiple,

49

similarly situated employees request accommodations in the same time period.  Petersen, 150 F.4th at 1220 ("The cost of accommodating nearly twenty-five percent of its firefighters is substantial....And given the circumstances, there can be no doubt that granting that many exemptions would have hamstrung [defendant's] operations."); see Lavelle-Hayden, 744 F.Supp.3d at 1152.

The Hawaiian Defendants typically received between five and ten religious accommodations requests in a given year.[125]  In the two months between August 1, 2021 and October 1, 2021, the Hawaiian Defendants received 496 religious accommodations requests and 72 medical accommodations requests for a total of 568 accommodations requests.[126]

The accommodations requests came from all of Defendants' major operational groups including 71 pilots, 268 flight attendants, 138 airport operations employees, and 22 maintenance and technical operations employees.[127]

According to Plaintiffs, the Hawaiian Defendants had approximately 7,000 employees in 2021 and that nearly 8% of their

---

[125] Def.'s CSF at ¶ 20, ECF No. 405

[126] Id.

[127] Jackson Decl. at ¶ 4, ECF No. 405-50

50

employees requested accommodations from the vaccination policy.[128]

There can be no dispute that the Hawaiian Defendants faced a serious operational burden if they had to accommodate a significant percentage of their workforce across all of their major operational groups.  See Petersen, 150 F.4th at 1220; Buss v. Peacehealth, 2026 WL 1256912, at *14 (D. Or. May 7, 2026) (finding the defendant employer could not have accommodated the plaintiff and the hundreds of other employees who sought exemption from the employer's vaccination policy without undue hardship).

Plaintiffs' evidence submitted in Opposition to Defendants' Motion for Summary Judgment primarily consists of e-mail correspondence between Hawaiian management employees.[129]  The e-mails discuss the burden of Defendants' handling the more than 550 accommodations requests at the same time and the difficulty of administering the testing program.  Plaintiffs argue that the e-mails show there were summary denials of their accommodations requests.  Even if true, the evidence does not create a genuine issue of material fact.  As explained in Williams, individualized consideration was not required because no accommodation was

---

[128] Plaintiffs do not cite to any evidence to support the claimed number of Defendants' employees but the Court construes the record in Plaintiffs' favor.

[129] See Pl.'s Exs. 1-3, 7-11, 13, 15, 21, 22, 28, attached to Pl.'s CSF in Opp., ECF Nos. 412-2, 412-3, 412-4, 412-8, 412-9, 412-10, 412-11, 412-12, 412-14, 412-16, 412-22, 412-29

possible without undue hardship.  2026 WL 1239760, *5 (citing

Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 68-69 (1986)

(explaining that undue hardship is at issue only where the

employer cannot "offer any reasonable accommodation without such

hardship").

The evidence does not undercut Defendants' undue hardship

defense.  In addition to the administrative burden, the sheer

number of accommodations requests compounded the risk of

unvaccinated employees spreading COVID-19.  See Kather v. Asante

Health Sys., 2025 WL 1788267, at *7 (D. Or. June 25, 2025)

(finding receipt and review of 690 accommodations requests from

13% of its employees between September and October 2021 placed an

undue hardship on the employer).  The cumulative risk would have

been much greater than the individual impact of a single

unvaccinated employee given the numerosity of the requests at the

same time.

> **b.    Allowing Unvaccinated Employees To Work On
> Aircraft And In And Around Airports Created
> An Unreasonable Risk Of Continued Operational
> Disruptions**

The Hawaiian Defendants were negatively affected by the

COVID-19 pandemic and were forced to cancel flights and lost

revenue due to employee illness.[130]  Chief Operations Officer

---

[130] Snook Decl. at ¶¶ 3-8, attached to Def.'s CSF, ECF No.
405-43

Jonathan Snook stated that there was continued concern during the pandemic of possible outbreaks and further operational disruption.[131]

Defendant Hawaiian Airlines, Inc.'s routes were all to or from locations in the Hawaiian Islands.[132]  Crew shortages were a major concern because of the location in Hawaii.[133]  The Hawaiian Defendants had a harder time than major network carriers in diverting aircraft and personnel from other locations.[134]

The Hawaiian Defendants were in a unique position as they employed more staff in Hawaii than any other carrier and were the only carrier headquartered in Hawaii.[135]  Many of Defendants' employees were unionized and staffing options and replacements were limited by contractual restrictions such that any cluster of COVID-19 cases had significant operational impact on the Defendants.[136]

Allowing Plaintiffs to work in the airports unvaccinated posed a substantial risk of further operational disruption.  The

---

[131] Id. at ¶¶ 4-5

[132] Id. at ¶ 3

[133] Id. at ¶¶ 3-5

[134] Id.

[135] Snook Decl. at ¶ 5, ECF No. 405-43; Deposition of Jonathan Snook at pp. 78-79 ("Snook Depo."), attached to Def.'s CSF as Ex. JR-2, ECF No. 405-3

[136] Snook Decl. at ¶ 5, ECF No. 405-43

availability of employees was a constraint on Defendant Hawaiian Airlines, Inc.'s ability to fly and the airline had already faced issues with outbreaks of COVID-19 among co-workers that caused operational disruption and canceled flights.[137]

There are no genuine disputes of material fact that allowing unvaccinated employees to fly Defendants' aircraft, interact with their customers, interface with their other employees, and engage with the public would have created a risk of further operational disruptions.  There is no dispute that outbreaks of COVID-19 cases continued in Hawaii following the announcement of the Hawaiian Defendants' vaccination policy.[138]

Allowing unvaccinated employees to potentially spread illness during the height of the COVID-19 pandemic constituted an undue hardship because the Hawaiian Defendants "could not afford to have substantial numbers of [their employees] on sick leave." Petersen, 150 F.4th at 1220.

---

[137] Kobayashi Decl. at ¶ 3, ECF No. 405-39; Snook Decl. at ¶ 6, ECF No. 405-43

[138] Hawaii Department of Health Press Release entitled, "HAWAII SURPASSES 10,000 ACTIVE COVID-19 CASES," dated August 29, 2021, attached as Ex. JR-5 to Def.'s CSF, ECF No. 405-6; Hawaii Department of Health Press Release entitled, "SURGING COVID-19 CASE COUNTS & TEST VOLUME FORCE CHANGES TO DATA REPORTING AND CASE INVESTIGATION," dated January 15, 2022, attached as Ex. JR-6 to Def.'s CSF, ECF No. 405-7

### 3.    Financial Burdens

Undue hardship is shown when a burden is substantial in the overall context of an employer's business.  Groff, 600 U.S. at 468.  An undue hardship is more than a de minimis cost and must result in substantial expenditures or substantial additional costs.  Id.; Petersen, 150 F.4th at 1221 (finding the employer risked incurring substantial financial costs in allowing unvaccinated employees to work because it would result in absenteeism, scheduling issues, potential liability, and potential loss of a lucrative contract).

        a.    **The Hawaiian Defendants Faced Massive Passenger Decline During The Pandemic And Lost Approximately $896 Million Dollars And Took On Over $1 Billion Dollars In Debt**

Travel restrictions and stay-at-home orders severely impacted the airline industry during the COVID-19 pandemic.[139]

In 2019, Defendant Hawaiian Airlines, Inc. transported approximately 11,737,000 passengers on its routes.[140]

In 2020, as COVID-19 hit, the Defendant airline's number of passengers dropped exponentially to just 3,353,000.[141]  The vast

---

[139] Snook Decl. at ¶¶ 7-8, ECF No. 405-43

[140] Snook Depo. at p. 111, attached to Def.'s CSF as Ex. JR-2, ECF No. 405-3

[141] Id.

majority of those 3 million passengers flew in January, February, and early March of 2020, prior to the lockdown and government-ordered restrictions.[142]

In 2021, Defendant Hawaiian Airlines, Inc.'s passenger traffic started to increase and Defendant transported approximately 6,515,000 passengers.[143]

During the height of the pandemic between 2020 and 2022, the Hawaiian Defendants lost approximately $896,000,000.00 dollars and took on over $1,000,000,000.00 dollars in debt.[144]

There is no genuine dispute of material fact that the Hawaiian Defendants suffered significant financial losses and faced continued risks of further financial hardship during the COVID-19 pandemic when they announced their vaccine policy in August 2021.

The Hawaiian Defendants reviewed their policies and procedures in an attempt to minimize financial loss during the pandemic.[145]

Unvaccinated employees and absenteeism imposed real and substantial costs to the Hawaiian Defendants and also threatened real costs to the community.  Petersen, 150 F.4th at 1221.  The

---

[142] Id.

[143] Id. at p. 112

[144] Def.'s CSF at ¶ 2, ECF No. 405

[145] Kobayashi Decl. at ¶ 3, ECF No. 405-39

financial risks faced by the Hawaiian Defendants were substantial and allowing employees to work unvaccinated posed a realistic threat of continued substantial costs on the operation of their business.  <u>Williams</u>, __ F.4th __, 2026 WL 1239760, at *3-*4.

> **b.    The Hawaiian Defendants Considered It Necessary To Follow The Federal Contractor Mandate To Prevent Further Financial Hardship**

As explained in <u>Petersen</u>, financial burdens such as the loss of a lucrative contract are "a textbook economic hardship" and the type of costs that constitutes an undue hardship for purposes of Title VII claims.  <u>Petersen</u>, 150 F.4th at 1221 (citing <u>Lavelle-Hayden</u>, 744 F.Supp.3d at 1151).

On September 9, 2021, President Biden signed Executive Order 14042, known as the Federal Contractor Mandate, which required contractors such as Defendants to ensure that their employees were vaccinated for COVID-19 except in limited circumstances.[146] When vaccination was not possible, masking and social distancing in compliance with CDC Guidance were required in order to comply with the Federal Contractor Mandate.[147]

---

[146] Jackson Decl. at ¶ 5, attached to Def.'s CSF, ECF No. 405-50; Guidance for Federal Contractors and Subcontractors, dated November 10, 2021, attached as Ex. WJ-2 to Def.'s CSF, ECF No. 405-52

[147] Guidance for Federal Contractors and Subcontractors, dated November 10, 2021, attached as Ex. WJ-2 to Def.'s CSF, ECF No. 405-52; Def.'s CSF at ¶ 8, ECF No. 405

The Hawaiian Defendants followed the requirements of the Federal Contractor Mandate even though they were aware there was federal court litigation challenging it.  They "determined that in order to best protect its employees, it would continue to comply with the Federal Contractor Mandate's guidelines."[148]

The Hawaiian Defendants faced potential loss of federal government contracts if they failed to comply with the Federal Contractor Mandate.  COO Jonathan Snook explained that "[d]uring the pandemic, Hawaiian's contracts with the federal government, including contracts with the Department of Defense and the U.S. Postal Service, were a critical source of revenue for the company."[149]  "Hawaiian's financial survival during the pandemic depended on its status as a federal contractor."[150]

The Hawaiian Defendants were concerned that any potential accommodation for Plaintiffs would jeopardize their contract with the United States Government pursuant to the Federal Contractor Mandate because masking and social distancing were not feasible for Plaintiffs' positions.[151]  As explained earlier, Plaintiffs refused to comply with the vaccination policy, their jobs prevented them from being able to socially distance, and

---

[148] Def.'s CSF at ¶ 9, ECF No. 405

[149] Snook Decl. at ¶ 14, ECF No. 405-43

[150] Id.

[151] Jackson Decl. at ¶ 13, ECF No. 405-50

58

Plaintiffs could not be continuously monitored through the administration of testing and masking.  Potential loss of Defendants' federal contractor status presented a realistic risk of substantial financial hardship to the Hawaiian Defendants. Petersen, 150 F.4th at 1221.

### c.     The Hawaiian Defendants Incurred Substantial Expenditures In Implementing Their Testing Program

The Hawaiian Defendants also suffered financial costs in implementing their Transitional Period Testing Program that proved to be unduly burdensome and expensive.[152]  The testing program cost $320,000 for two months of testing.[153]  The testing program was not effective and resulted in financial burdens and operational disruptions due to untimely testing and non-compliance.[154]

In addition to vendor costs, the testing program required additional staffing costs, and the testing program was ineffective with more than 1,300 tests producing no results that resulting in employees being held out of service and requiring Defendants to pay overtime to others.[155]  Defendants issued over

---

[152] Kobayashi Decl. at ¶¶ 23-26, ECF No. 405-39

[153] Id. at ¶ 24

[154] Id.

[155] Def.'s CSF at ¶¶ 21-25, ECF No. 405

150 non-compliance letters in two months and suffered
unpredictable staffing shortages when they allowed testing in
lieu of vaccination.[156]

Plaintiffs' arguments that they individually always complied
with testing and that the Hawaiian Defendants should have made
different arrangements for testing do not create a genuine
dispute of material fact that alters the undue hardship analysis.
Plaintiffs have provided no evidence regarding the availability
of testing in 2021, the suitability of different vendors, or the
reliability of any of their proposed testing methods.  Plaintiffs
also have provided no evidence to dispute the financial burdens
imposed on Defendants in implementing their testing program and
the costs that they would have incurred if they continued to
implement a testing program as an accommodation.

**C.    The Undisputed Evidence Demonstrates That The Hawaiian
       Defendants Could Not Reasonably Accommodate Plaintiffs
       Without Undue Hardship On The Conduct Of Their Business**

In sum, construing the record in a light most favorable to
the Plaintiffs, there are no genuine disputes of material fact
that any method of accommodating Plaintiffs' objections to
vaccination while maintaining their conditions of employment
would have resulted in undue hardship to the Hawaiian Defendants.
The undue hardship includes: (1) the health and safety risks to

---

[156] Def.'s CSF at ¶ 25, ECF No. 405

the public, Defendants' customers, and Defendants' own employees;
(2) the risk to the Defendants' operations and the cost of
widespread absences; (3) the financial losses caused by continued
business disruption, the costs of the testing program, and the
potential loss of lucrative contracts with the United States
federal government.

The Hawaiian Defendants provided medical evidence that
showed the inadequacy of masking, testing, and social distancing
as alternatives to vaccination.  Plaintiffs' attempts to rely on
hindsight reasoning and after-the-fact studies and information
are irrelevant and do not create genuine disputes of material
fact.  Oka, 2026 WL 810815, at *7-*9.  No reasonable juror could
conclude that a reasonable accommodation existed that would not
cause undue hardship on Defendants.  Williams, __ F.4th __, 2026
WL 1239760, at *5.  The Hawaiian Defendants could not have
accommodated Plaintiffs without undue hardship in the form of
substantial health and safety costs, operational burdens, and
financial burdens and costs on the employer.  See Groff, 600 U.S.
at 469; Petersen, 150 F.4th at 1221-22.

Defendants' Motion for Summary Judgment as to Count I for
Failure to Accommodate Plaintiffs' Religious Beliefs (ECF No.
406) is **GRANTED.**

61

## II.  Plaintiff Lum's Claim For Disability Discrimination Based On Failure To Accommodate

Title I of the ADA prohibits employment discrimination against a qualified individual because of the disability of such individual.  42 U.S.C. § 12112(a).

To demonstrate a prima facie claim pursuant to the Americans With Disabilities Act, Plaintiff Lum must establish:

(1)  he is disabled within the meaning of the Americans With Disabilities Act;

(2)  he is a qualified individual who can perform the essential functions of his job either with or without reasonable accommodations and;

(3)  he suffered an adverse employment action because of his disability.

Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1237 (9th Cir. 2012) (citing 42 U.S.C. § 12112(a), (b)(5)(A)).

If a defendant establishes a prima facie ADA claim, the burden shifts to the defendant who may invoke affirmative defenses: (1) that the accommodation "would impose an undue hardship on the operation of the business" or (2) that the plaintiff would "pose a direct threat to the health or safety of other individuals in the workplace."  42 U.S.C. §§ 12112(b)(5)(A), 12113(b); see Echazabal v. Chevron USA, Inc., 336 F.3d 1023, 1028 (9th Cir. 2003).

A direct threat under the ADA is a significant risk of substantial harm to the health or safety of the individual or

62

others that cannot be eliminated or reduced by reasonable accommodation.  Echazabal, 336 F.3d at 1028 (citing 29 C.F.R. § 1630.2(r)).  "[T]he views of public health authorities, such as the U.S. Public Health Service, CDC, and the National Institutes of Health, are of special weight and authority."  Bragdon v. Abbott, 524 U.S. 624, 650 (1998).

## A.   Disabled

A disability is "a physical or mental impairment that substantially limits one or more major life activities of [an] individual."  42 U.S.C. § 12102(1)(A).

The record demonstrates that Plaintiff Lum submitted a letter from Philip Suh, M.D. to Defendants stating that, "[b]ecause of patient's medical condition, I would recommend that he not get the covid vaccine at this time."[157]  The letter is insufficient to demonstrate Plaintiff Lum was disabled within the meaning of the Americans With Disabilities Act at the time he sought accommodation.

Plaintiff Lum asserts in his Affidavit dated January 4, 2022, that he has coronary artery disease.[158]

---

[157] Letter dated Sept. 23, 2021, attached to Ex. JR-20 at p. 16, ECF No. 405-21

[158] Unnotarized Affidavit of Ronald Lum, dated January 4, 2022, at ¶ 8, attached as Ex. 33 to Pl.'s CSF in Opp., ECF No. 412-34

The Court assumes, without deciding, that Plaintiff Lum was disabled within the meaning of the Americans With Disabilities Act for purposes of this Motion.

## B.    Qualified Individual

To determine if an individual is a qualified individual for a position, the Court examines if the individual satisfied the requisite skill, experience, education, and other job-related requirements of the position.  42 U.S.C. § 12111(8).

The Court again assumes, without deciding, that despite his medical condition, Plaintiff Lum was a qualified individual.

## C.    Undue Hardship

Even if Plaintiff could demonstrate that he was a qualified individual, an employer is not required to accommodate an employee if doing so will pose an undue hardship.  Dark v. Curry Cnty., 451 F.3d 1078, 1088 (9th Cir. 2006); see Townley Eng'g & Mfg. Co., 859 F.2d at 615, n.7.

The record demonstrates that Plaintiff was granted an accommodation in the form of a 12-month leave of absence.  No additional accommodation was required.  Indefinite paid leave is not a reasonable accommodation.  Makor v. Burlington No. Santa Fe Railway Co., 680 Fed. Appx. 542, 544 (9th Cir. 2017); Larson v. United Natural Foods West, Inc., 518 Fed. Appx. 589, 591 (9th

64

Cir. 2013) (citing <u>Wood v. Green</u>, 323 F.3d 1309, 1314 (11th Cir. 2003)).

As explained above, there are no disputes of material fact that the Hawaiian Defendants could not have allowed Plaintiff to fly their aircraft unvaccinated without undue hardship given the health and safety costs, operational burdens, and financial burdens on the Defendants.  <u>See</u> 42 U.S.C. § 12111(10); <u>Dark</u>, 451 F.3d at 1088; <u>Buss</u>, 2026 WL 1256912, at *14-*15.

### D.    Direct Threat To Health And Safety

The record also demonstrates that allowing Plaintiff Lum to fly unvaccinated would pose a "direct threat" to the safety of others.  42 U.S.C. § 12113(b).

There is no liability under the ADA if an employer subjects an employee to an adverse employment action because the individual poses a direct threat to the health or safety of other individuals in the workplace.  <u>See</u> <u>Dark</u>, 451 F.3d at 1091; <u>Gemmrig v. Asante Three Rivers Med. Ctr., LLC</u>, 2025 WL 2555337, *9 (D. Or. Sept. 5, 2025) (finding employer was entitled to summary judgment where evidence demonstrated that an employee who refused to be vaccinated for COVID-19 posed a direct threat to health and safety of others); <u>Echazabal</u>, 336 F.3d at 1028; <u>Bragdon</u>, 524 U.S. at 650.

Defendants' Motion for Summary Judgment as to Count IV for

65

Failure to Accommodate Plaintiff Lum's Disability (ECF No. 406) is **GRANTED**.

## CONCLUSION

Defendant Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc.'s Motion for Summary Judgment (ECF No. 406) is **GRANTED**.

Defendants' Motion for Summary Judgment as to Count I for Failure to Accommodate Plaintiffs' Religious Beliefs (ECF No. 406) is **GRANTED**.

Defendants' Motion for Summary Judgment as to Count IV for Failure to Accommodate Plaintiff Lum's Disability (ECF No. 406) is **GRANTED**.

There are no remaining claims or parties in this case.

The Clerk of Court is **ORDERED** to enter Judgment in favor of Defendants Hawaiian Airlines, Inc. and Hawaiian Holdings, Inc. and to **CLOSE THE CASE.**

IT IS SO ORDERED.

Dated: May 20, 2026, Honolulu, Hawaii.



Helen Gillmor
United States District Judge

Erwin Young, Puanani Badiang Sabrina Franks, Ronald Lum, v. Hawaiian Airlines, Inc.; Hawaiian Holdings, Inc., Civ. No. 22-00532 HG-WRP; **ORDER GRANTING DEFENDANTS HAWAIIAN AIRLINES, INC. AND HAWAIIAN HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT (ECF No. 406)**   66